1  Scott F. Gautier (State Bar No. 211742)
   *sgautier@pwkllp.com*
2  Lauren N. Gans (State Bar No. 247542)
   *lgans@pwkllp.com*
3  Kathryn F. Russo (State Bar No. 274042)
   *krusso@pwkllp.com*
4  PEITZMAN, WEG & KEMPINSKY LLP
   2029 Century Park East, Suite 3100
5  Los Angeles, CA  90067
   Telephone: (310) 552-3100
6  Facsimile: (310) 552-3101

7  Proposed Attorneys for Debtor and Debtor in Possession

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  SANTA ANA DIVISION

12  In re:                              | Case No.:  8:11-21690-ES

13  RITZ INTERACTIVE, INC.,             | Chapter 11

14         Debtor and Debtor-in-Possession.  | SMALL BUSINESS CASE UNDER FRBP 1020
    .
15                                       | **EMERGENCY MOTION OF DEBTOR-IN-
                                          POSSESSION FOR ORDER APPROVING
16                                        THE STIPULATION CONSENTING TO
                                          DEBTOR'S USE OF CASH COLLATERAL BY
17                                        AND BETWEEEN THE DEBTOR AND RITZ
                                          CAMERA & IMAGE, LLC; MEMORANDUM
18                                        OF POINTS AND AUTHORITIES**

19
                                         [Declaration of Fred H. Lerner filed separately]
20
                                                    **Hearing:**
21
                                         Date:   August 24, 2011
22                                       Time:   9:30 a.m
                                         Place:  Courtroom 5A
23                                               411 West Fourth Street
                                                 Santa Ana, CA 92701
24

25      Ritz Interactive, Inc. (the "Debtor") hereby moves for an order approving the Stipulation

26  Consenting to Debtor's Use of Cash Collateral (the "Stipulation") by and between the Debtor and Ritz

27  Camera & Image, LLC ("RCI") attached hereto as Exhibit 1, and to the Declaration of Fred H. Lerner

28  as Exhibit F (the "Motion") on an interim and final basis.  In support of the Motion, the Debtor hereby

                                         1

submits the attached Memorandum of Points and Authorities, the separately filed Declaration of Fred H. Lerner in Support of First Day Motions (the "Lerner Declaration") and hereby states the following:

### EMERGENCY RELIEF IS REQUIRED

Pursuant to Local Bankruptcy Rules 2081-1(a), 4001-2(e) and 9075-1, the Debtor requests that the Court consider the Debtor's Motion on an emergency basis so that any relief granted may take effect as soon as possible, thereby authorizing the Debtor immediately upon Court approval to use its cash collateral, which will allow the Debtor to continue its business operations in the ordinary course. If the Debtor is not authorized to use cash collateral, the Debtor's operations may be interrupted, resulting in irreparable harm to the Debtor's business and the estate.

### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter relates to obtaining credit and the use of property of the estate and is, accordingly, a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D) and (M).  Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 361, 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local Bankruptcy Rule 4001-2.

### RELIEF REQUESTED

By this Motion, the Debtor requests that the court approve the Stipulation attached hereto as Exhibit 1 on an interim basis and if no objection is received within twenty-one (21) days, on a final basis without further hearing. A proposed order approving the Stipulation on an interim basis is attached hereto as Exhibit 2 (the "Proposed Order").   In addition, the Debtor requests that, given the speed at which this case is expected to proceed, the Court set a final hearing on the Motion

///

///

///

1    approximately twenty-one (21) days after the service of this motion, or such other time as is convenient

2    to the Court.

3

4    Dated:  August 19, 2011                    PEITZMAN, WEG & KEMPINSKY LLP

5

6                                               By:  _____/s/ Scott F. Gautier_____
                                                        Scott F. Gautier
7                                                       Lauren N. Gans
                                                        Kathryn F. Russo
8
                                               Proposed Attorneys for
9                                              the Debtor and Debtor in Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**FACTUAL BACKGROUND**

**A.    GENERAL BACKGROUND**

Ritz Interactive, Inc. (the "Debtor") is an e-commerce network of interactive websites including: RitzCamera.com, WolfCamera.com, BoatersWorld.com, CameraWorld.com, PhotoAlley.com, eAngler.com, ScrapbookingAlley.com, NeedleCraftsEtc.com, CeilingFansandMore.com, and Greg Norman's ShopAtShark.com, that provides online shoppers with a wide selection of branded products at competitive prices.  The Debtor has thirty-one employees, twenty-seven of whom work from its headquarters in Irvine, California, three work from leased space in Beltsville, Maryland and one warehouseman works from leased space in a Topeka, Kansas warehouse.  The Debtor's headquarters have been located in Irvine, California since it was founded in 1999.  The Debtor grew from just $2.4 million in sales in its first year of operations in 1999 to $111 million in sales in 2007 and $107 million in 2008.  During that time span of revenue growth, the Debtor experienced seven consecutive years of profitability from 2002 through 2008.  In 2008, Internet Retailer, the leading industry publication, ranked the Debtor as the country's 32nd largest internet only e-commerce website.

The Debtor's primary asset is an exclusive, worldwide, nontransferable license to use and reproduce certain names, trademarks, service marks, and/or tradenames owned by Ritz Camera & Image, L.L.C. ("RCI"), (which acquired substantially all of the assets of Ritz Camera Centers, Inc. ("RCC") in July of 2009 out of RCC's bankruptcy), in conjunction with its internet business, and the right to purchase and sell inventory  provided by RCI on Debtor's websites, pursuant to the Second Amended and Restated Agreement dated as of August 1, 2005, by and between RCC and the Debtor as amended by that certain Amendment to the Second Amended and Restated Agreement dated as of May 10, 2010 by and between RCI and the Debtor and that certain Second Amendment to the Second Amended and Restated Agreement dated as of December 23, 2010 (collectively the "Operations Agreement") and the Perpetual License Agreement dated as of August 1, 2005, by and between RCC

and the Debtor, as later acquired by RCI (the "License Agreement").  RCI is the Debtor's principal

secured creditor.

In 2005, the Debtor agreed to repurchase a $10 million equity stake of America Online, Inc.

("AOL") and in connection therewith issued a note payable ("AOL Note").  The AOL Note originally

matured in December 2006, was amended to extend the maturity date until December 2007 and was

later further amended to provide for a November 2012 maturation.

The Debtor began to experience a downturn in revenue in the second half of 2008 in

conjunction with the U.S. economic recession.  Then, in February 2009, the Debtor's primary supplier

at the time, RCC, filed for bankruptcy under Chapter 11 of the Bankruptcy Code (the "RCC

Bankruptcy").  As a result of the RCC Bankruptcy, inventory availability from RCC became greatly

impaired, and inventory from RCI has been below appropriate levels from mid 2009 to the current

date.  Aside from reduced availability from major manufacturers, Canon U.S.A. Inc. ("Canon") --

whose product historically accounted for over 15% of the Debtor's sales, generating $16.4 million in

2008 revenue -- refused to do business with RCI after having lost significant funds in connection with

the RCC Bankruptcy.  As a result, RCI and thus the Debtor lost access to Canon product.  In addition,

RCC liquidated its Boaters World stores and warehouse and, as a result, the Debtor lost its main

supplier for Boatersworld.com which in 2008 accounted for 13% of its sales, generating revenues of

approximately $13.5 million with a gross profit margin of nearly 40%.    The U.S. economic

recession, dramatic changes in Debtor's revenue from Canon products and Boatersworld.com and

impaired inventory availability from RCC and RCI have resulted in operating losses in 2009, 2010

and year-to-date 2011.

As of November 2009, the Debtor was not able to pay all of its obligations, stopped making

payments on the AOL Note and is in default thereon.  The Debtor does not have any ability to make

further payments on the AOL Note.  Moreover, the Debtor has been unable to fund the purchase of

inventory on a continuing basis.  In May and December 2010, the Debtor's principal supplier, RCI,

offered to make further financial accommodations including  amending the Operations Agreement,

distinguishing between payment terms on pre-existing debt and future balances and eliminating

handling and licensor fees and mark-ups on inventory.  Despite these accommodations, the Debtor has not been able to remain current on its payments to RCI and continues to experience financial difficulty.

Following significant discussion and investigation of several alternatives, the Debtor has elected to pursue a voluntary restructuring of its debt.  On August 19, 2011 (the "Petition Date"), the Debtor filed a voluntary petition commencing its chapter 11 case.  The Debtor has continued the management and control of its business and property as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.  To date, no trustee or official committee of creditors has been appointed in the case.

## B.    FACTS SPECIFIC TO THE MOTION

RCI asserts a lien on and perfected security interest in all personal property of the Debtor including, as the term is defined in section 363(a) of the Bankruptcy Code, in all "Cash Collateral" of the Debtor. The Debtor and Ritz Camera & Image, LLC ("RCI") have negotiated a stipulation providing for the Debtor's use of RCI's Cash Collateral during its Chapter 11 case (the "Stipulation") attached hereto as Exhibit 1, and to the Declaration of Fred Lerner as Exhibit F.

## C.    SUMMARY OF THE STIPULATION

The Stipulation is straightforward and contains none of the provisions highlighted in LBR 4001-2(b).  The material provisions of the Stipulation are summarized as follows:

- **Term**:  Pursuant to 11 U.S.C. §363, the Debtor will be authorized to use Cash Collateral for the period August 19, 2011 through November 30, 2011 (the "Authorization Period").  The Debtor's authority to use Cash Collateral shall terminate immediately and automatically upon the earlier of (a) order of this Court; (b) the conversion of this case to a Chapter 7 case or the appointment of a Chapter 11 trustee without the consent of RCI; (c) the Debtor ceasing to operate all or substantially all of its business; (d) the entry of an order granting relief from the automatic stay that allows any entity to proceed against any material assets of the Debtor in which RCI asserts a lien and security interest; or (e) dismissal of this Chapter 11 case.

- **Budget and Variances:**  The Debtor's use of Cash Collateral will be limited to the specific items and amounts for each item as set forth in the Budget attached to the Stipulation as Exhibit "A" (the "Budget"), except that the Debtor may exceed the budgeted sum in any single month for any itemized expense category by no more than

15% plus any prior period expense item that was incurred but not paid in such prior period (subject to the same 15% limitation).  If actual expenditures for any line items are less than set forth in the Budget, the difference shall carry over to the following month(s) until exhausted.

- **Adequate Protection:**  In the event that the Debtor uses Cash Collateral in which RCI holds a properly perfected security interest, RCI will granted a replacement lien and security interest in, and to, the assets to which its pre-petition lien would have attached but for the filing of the Debtor's bankruptcy case.  The priority of any post-petition lien granted to RCI shall be in the same priority, nature, extent, and subject to the same infirmities as any such lien that existed pre-petition.  The lien granted by this order shall be valid, enforceable, attached, and perfected effective as of the date of the hearing on this matter, without any further act, and without regard to any federal, state, or local requirement or law requiring notice, recordation, filing, registration, or possession of the collateral.

- **Reporting:**  During the Authorization Period and as additional adequate protection of RCI's interest in the Cash Collateral, the Debtor shall: (a) deliver to RCI (i) all monthly operating reports and interim operating statements as and when filed by the Debtor with the Office of the United States Trustee, (ii) within 15 days after the end of each month, a reconciliation of actual receipts and expenditures in comparison to the approved Budget, (iii) copies of the bank statements and check registers for the Debtor's bank accounts for the preceding month; (b) make available for review and copying by RCI upon delivery by RCI to the Debtor of a reasonable written request therefor, copies of any and all other books and records of the Debtor.

- **Miscellaneous Provisions:** The Debtor shall not use Cash Collateral for the payment of any pre-petition debt without the consent of RCI. The Debtor shall maintain in full force and effect all insurance on all assets in which RCI claims to hold a lien and security interest.  RCI's consent to the incurrence by the Debtor, the Debtor's counsel or any other person, party or entity any of the costs, expenses, fees or charges contemplated under Bankruptcy Code §506(c) shall not be implied from any action, inaction or acquiescence of RCI. The entry of an order approving the Stipulation shall deem the provisions of the Stipulation to be binding on the Debtor, RCI and any creditors who may hereafter extend credit to the Debtor or its estate, and any successors in interest to the same post-petition, including any trustee appointed in this case and in any superseding case under Chapter 7 of the Bankruptcy Code. If necessary, the parties shall set a further hearing on continued use of Cash Collateral for such time and date as is convenient to the Court prior to the expiration of the Authorization Period.

## II.

## ARGUMENT

**A.    The Court Should Approve The Stipulation For The Use Of Cash Collateral**

The Court should approve the Stipulation for the Debtor's use of Cash Collateral because RCI has consented to such use in the ordinary course of the Debtor's business.  Section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into transactions and to use property of the estate in the ordinary course of business.  Section 363(c)(2), however, prohibits a debtor-in-possession's use of cash collateral under subsection (c)(1) unless each entity that has an interest in such cash collateral consents or the Bankruptcy Court authorizes such use, sale, or lease after notice and a hearing.

The Debtor has obtained the consent of RCI to use the Cash Collateral pursuant to the terms of the Stipulation and in accordance with the Budget.  *See* Lerner Declaration filed concurrently herewith. Because RCI has consented to the Debtor's use of the Cash Collateral in the ordinary course of business, such use is allowed and should be approved pursuant to section 363(c)(2).

The Court may authorize the Debtor's interim use of Cash Collateral to avoid immediate and irreparable harm to the Debtor's business and estate.  Pursuant to FRBP 4001(b)(2), the Court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion, but, before the 14 day period expires, the court may conduct a preliminary hearing to authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. *See generally, In re Center Wholesale, Inc.*, 759 F.2d 1440, 1449 n.21 (9th Cir. 1985) (discussion of importance of emergency relief granting use of cash collateral at the commencement of a case).

As set forth above, it is critical that the Debtor be authorized to pay its expenses, pursuant to the Budget, immediately and uninterrupted in the ordinary course of its business.  Most significantly, the Debtor has a payroll due on September 2, 2011, and must continue to pay for inventory to generate new accounts receivable.  This includes payment for the purchase and packaging of inventory and goods that are direct shipped to customers.  Without the use of Cash Collateral, the shipment of goods and

inventory will cease.  If the Debtor is not permitted to pay its employees and the other critical expenses immediately and in the ordinary course of its business, the Debtor likely will be required to cease operations temporarily, which will be extremely damaging to the Debtor's business. Therefore, the Debtor's interim use of Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its bankruptcy estate.

Under the circumstances, the Debtor requests that the Court set a final hearing as soon as the Court's calendar permits on a date approximately twenty-one (21) days from the date of the service of the Motion, and authorize the Debtor to use Cash Collateral in accordance with the Budget on an interim basis pending a final hearing.

**C.**    **The Protections Afforded RCI Are Reasonable And Necessary**

The Stipulation provides RCI adequate protection of its interest in Cash Collateral in the form of replacement liens solely on assets that would have been subject to RCI's liens but for the bankruptcy filing.  These protections are minimal and reasonable and necessary to induce RCI to consent to the use of Cash Collateral for the benefit of the Debtor's Estate.  Section 363(e) provides that a court may condition the debtor-in-possession's use of cash collateral on the debtor-in-possession providing "adequate protection" of the secured party's interest in the collateral being used.  Section 361 states that, when adequate protection is required under section 363, such adequate protection may be satisfied by providing the lender with an additional or replacement lien to the extent that the proposed use of the estate's property results in a decrease in the value of the lender's interest in such property.  The type of adequate protection that is appropriate in a particular case will depend on the nature of the case.  *See In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987) ("Adequate protection [is] a concept which is to be decided flexibly on the proverbial case-by-case basis.").

Notably, the Debtor is not granting a lien replacement or additional lien in any chapter 5 "avoidance action" and is not validating or recognizing any pre-petition lien of RCI. The Stipulation merely provides that a replacement lien is granted "only to the extent" RCI's cash collateral is utilized and RCI's interest in such collateral is diminished.  Accordingly, the Debtor and all creditors are able, if appropriate, to challenge the nature, extent, validity and priority of any liens or security interests claimed by RCI.

Thus, in consideration for the use of the Cash Collateral, the Debtor requests that the Court enter an order providing the Stipulation in the form set forth in Exhibit 1.

## IV.

## CONCLUSION

**WHEREFORE**, the Debtor requests that the Bankruptcy Court enter an Order granting the Motion such other and further relief as may be appropriate under the circumstances.

Dated:  August 19, 2011                           PEITZMAN, WEG & KEMPINSKY LLP


By:  _____/s/ Scott F. Gautier____
                    Scott F. Gautier
                    Lauren N. Gans
                    Kathryn F. Russo

Proposed Attorneys for
the Debtor and Debtor in Possession

# EXHIBIT 1

1  Scott F. Gautier (State Bar No. 211742)
   *sgautier@pwkllp.com*
2  Lauren Gans (State Bar No. 247542)
   *lgans@pwkllp.com*
3  PEITZMAN, WEG & KEMPINSKY LLP
   2029 Century Park East, Suite 3100
4  Los Angeles, CA  90067
   Telephone: (310) 552-3100
   Facsimile: (310) 552-3101
5
   Attorneys for
6  Debtor and Debtor in Possession

7

8                    **UNITED STATES BANKRUPTCY COURT**
                      **CENTRAL DISTRICT OF CALIFORNIA**
9                       **SANTA ANA DIVISION**

10

11 In re:                                          Case No.:

12                                                 Chapter 11

13 RITZ INTERACTIVE, INC.,                         **SMALL BUSINESS CASE UNDER**
                                                   **CHAPTER 11**
14 a Delaware corporation
                                                   **STIPULATION CONSENTING TO**
15        Debtor and Debtor-in-Possession.         **DEBTOR'S USE OF CASH**
                                                   **COLLATERAL**
16

17

18

19 TO THE COURT AND ALL PARTIES IN INTEREST:

20        Ritz Interactive, Inc., as debtor in possession (the "Debtor") and Ritz Camera &

21 Image, LLC ("RCI"), subject to Court approval, hereby stipulate as follows:

22        A.      Wherefore, on August 19, 2011 (the "Petition Date"), the Debtor

23 commenced the above-captioned case as a small business case under Chapter 11 of Title

24 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code") and has

25 continued the management and control of its business and property as debtor in

26 possession pursuant to Bankruptcy Code §§ 1107 and 1108.  To date, no trustee or

27 official committee of creditors has been appointed in the case; and

28

LEGAL02/32810915v2

B.    Wherefore, RCI asserts a lien on and perfected security interest in all personal property of the Debtor including, as the term is defined in section 363(a) of the Bankruptcy Code, in all "Cash Collateral" of the Debtor;

IT IS HEREBY STIPULATED THAT:

1.    Pursuant to 11 U.S.C. §363, the Debtor is authorized to use Cash Collateral for the period August 19, 2011 through November 30, 2011 (the "Authorization Period"), or until further order of the Court, for payment of expenses for the specific purposes, in the amounts set forth for each such purpose, and for the time period identified in the budget attached hereto as Exhibit "A," (the "Budget").  The Debtor's use of Cash Collateral is expressly limited to the specific items and amounts for each item as set forth in the Budget, except that the Debtor may exceed the budgeted sum in any single month for any itemized expense category by no more than 15% plus any prior period expense item that was incurred but not paid in such prior period (subject to the same 15% limitation).  If actual expenditures for any line items are less than set forth in the Budget, the difference shall carry over to the following month(s) until exhausted.

2.    The Debtor's authority to use Cash Collateral shall terminate immediately and automatically upon the earlier of (a) order of this Court; (b) the conversion of this case to a Chapter 7 case or the appointment of a Chapter 11 trustee without the consent of RCI; (c) the Debtor ceasing to operate all or substantially all of its business; (d) the entry of an order granting relief from the automatic stay that allows any entity to proceed against any material assets of the Debtor in which RCI asserts a lien and security interest; or (e) dismissal of this Chapter 11 case.

5.    In the event that the Debtor uses Cash Collateral in which RCI holds a properly perfected security interest, RCI is hereby granted a replacement lien and security interest in, and to, the assets to which its pre-petition lien would have attached but for the filing of the Debtor's bankruptcy case.  The priority of any post-petition lien granted to RCI shall be in the same priority, nature, extent, and subject to the same infirmities as

- 2 -

any such lien that existed pre-petition.  The lien granted by this order shall be valid, enforceable, attached, and perfected effective as of the date of the hearing on this matter, without any further act, and without regard to any federal, state, or local requirement or law requiring notice, recordation, filing, registration, or possession of the collateral.

6.      During the Authorization Period and as additional adequate protection of RCI's interest in the Cash Collateral, the Debtor shall: (a) deliver to RCI (i) all monthly operating reports and interim operating statements as and when filed by the Debtor with the Office of the United States Trustee, (ii) within 15 days after the end of each month, a reconciliation of actual receipts and expenditures in comparison to the approved Budget, (iii) copies of the bank statements and check registers for the Debtor's bank accounts for the preceding month; (b) make available for review and copying by RCI upon delivery by RCI to the Debtor of a reasonable written request therefor, copies of any and all other books and records of the Debtor.

7.      The Debtor shall not use Cash Collateral for the payment of any pre-petition debt without the consent of RCI.

8.      The Debtor shall maintain in full force and effect all insurance on all assets in which RCI claims to hold a lien and security interest.

9.      RCI's consent to the incurrence by the Debtor, the Debtor's counsel or any other person, party or entity any of the costs, expenses, fees or charges contemplated under Bankruptcy Code §506(c) shall not be implied from any action, inaction or acquiescence of RCI.

10.     The entry of an order approving this Stipulation shall deem the provisions of this Stipulation to be binding on the Debtor, RCI and any creditors who may hereafter extend credit to the Debtor or its estate, and any successors in interest to the same post-petition, including any trustee appointed in this case and in any superseding case under Chapter 7 of the Bankruptcy Code.

- 3 -

1    11.    If necessary, the parties shall set a further hearing on continued use of cash

2    collateral for such time and date as is convenient to the Court prior to the expiration of

3    the Authorization Period.

4

5    IT IS SO STIPULATED.

6

7    ALSTON & BIRD, LLP                    PEITZMAN, WEG & KEMPINSKY LLP

8

9    By:_____          By:___/s/ Scott F. Gautier_____
     Leib Lerner                          Scott F. Gautier
10   Attorneys for RCI                    *Attorneys for Debtor and Debtor in*
     Date: August 22, 2011                *Possession*
11                                        Date: August 19, 2011

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

Exhibit 1
Page 15

**RITZ INTERACTIVE**
WEEKLY CASH BASIS P&L & ADJUSTMENTS TO WEEKLY CASH

| | PROJECTED P&L - WEEK BEGINNING | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 8/20/2011 | 8/27/2011 | 9/3/2011 | 9/10/2011 | 9/17/2011 | 9/24/2011 | 10/1/2011 | 10/8/2011 | 10/15/2011 | 10/22/2011 | 10/29/2011 | 11/5/2011 | 11/12/2011 |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| Total Income | 665,000 | 665,000 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 | 684,500 |
| Total COGS | 570,570 | 570,570 | 587,301 | 587,301 | 587,301 | 587,301 | 583,879 | 583,879 | 583,879 | 583,879 | 583,879 | 583,879 | 583,879 |
| Gross Profit | 94,430 | 94,430 | 97,199 | 97,199 | 97,199 | 97,199 | 100,622 | 100,622 | 100,622 | 100,622 | 100,622 | 100,622 | 100,622 |
| Total 6080 · Marketing Program | 30,375 | 30,375 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 | 31,253 |
| 6130 · Bank Charges | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| Total 6145 · Call Center Operations | 6,650 | 6,650 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 | 6,845 |
| 6150 · Consultants/Contractors | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Total 6170 · Credit Card Processing | 14,820 | 14,820 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 | 15,171 |
| 6181 · Charge Back-Fraud | 2,660 | 2,660 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 | 2,738 |
| 6255 · e Mail Automated Reply (AskIt) | 395 | 395 | 395 | 395 | 395 | 395 | 395 | 395 | 395 | 395 | 395 | 395 | 395 |
| Total 6280 · Employee Expense | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 | 49,022 |
| Total 6380 · Insurance | 732 | 732 | 732 | 732 | 732 | 732 | 732 | 732 | 732 | 732 | 732 | 732 | 732 |
| Total 6410 · Interest Expense | 462 | 462 | 462 | 462 | 462 | 462 | 462 | 462 | 462 | 462 | 462 | 462 | 462 |
| Total 6500 · Postage and Delivery | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Total 6600 · Professional Fees | 988 | 988 | 988 | 988 | 5,988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 | 988 |
| Total 6630 · Rent | - | 21,300 | - | - | - | 21,300 | - | - | - | 21,300 | - | - | - |
| Total 6660 · Repairs & Maintenance | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 | 53 |
| Total 6680 · Supplies & Temp Help | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 |
| Total 6750 · Telephone | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 | 1,675 |
| Total 6780 · Travel & Ent | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 | 740 |
| Total 6900 · Web Site Management | 120 | 120 | 34,120 | 120 | 120 | 120 | 34,120 | 120 | 120 | 120 | 34,120 | 120 | 120 |
| Implementation of Sales Tax Infrastructure | | | 33,400 | | 35,000 | | | | 35,000 | | | | 20,000 |
| Bankruptcy Expenses: | | | | | | | | | | | | | |
| Bankruptcy Counsel | | | | | | | | | | | | | 100,000 |
| U.S. Trustee Fees | | | | | | | | | 13,000 | | | | 13,000 |
| Total Expense | 110,666 | 131,966 | 179,568 | 112,168 | 152,168 | 133,468 | 146,168 | 112,168 | 160,168 | 133,468 | 146,168 | 112,168 | 245,168 |
| Cash Inflow net of Cash Outflow | (16,236) | (37,536) | (82,369) | (14,969) | (54,969) | (36,269) | (45,546) | (11,546) | (59,546) | (32,846) | (45,546) | (11,546) | (144,546) |
| Cash Flow Adjustments: | | | | | | | | | | | | | |
| Timing of Payments | | | | | | | | | | | | | |
| 7 day terms on COGS | 570,570 | - | 16,731 | - | - | - | (3,423) | - | - | - | - | - | - |
| 15 day terms on below the line expenses | 110,666 | 131,966 | 68,902 | (19,799) | (27,400) | 21,300 | (6,000) | (21,300) | 14,000 | 21,300 | (14,000) | (21,300) | 99,000 |
| Prepetition Receivables | 6,000 | 3,000 | 3,000 | | | | | | | | | | |
| Adjusted Weekly Cash | 671,000 | 97,430 | 6,264 | (34,767) | (82,369) | (14,969) | (54,969) | (32,846) | (45,546) | (11,546) | (59,546) | (32,846) | (45,546) |
| Beginning Cash Balance | 750,000 | 1,421,000 | 1,518,430 | 1,524,694 | 1,489,926 | 1,407,558 | 1,392,589 | 1,337,620 | 1,304,774 | 1,259,227 | 1,247,681 | 1,188,135 | 1,155,288 |
| Ending Cash Balance | 1,421,000 | 1,518,430 | 1,524,694 | 1,489,926 | 1,407,558 | 1,392,589 | 1,337,620 | 1,304,774 | 1,259,227 | 1,247,681 | 1,188,135 | 1,155,288 | 1,109,742 |

Exhibit 1
Page 16

# EXHIBIT 2

Scott F. Gautier (State Bar No. 211742)
*sgautier@pwkllp.com*
Lauren Gans (State Bar No.247542)
*lgans@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
2029 Century Park East, Suite 3100
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile: (310) 552-3101

Attorneys for
Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: |
| | Chapter 11 |
| RITZ INTERACTIVE, INC., | SMALL BUSINESS CASE UNDER FRBP 1020 |
| a Delaware corporation | **ORDER APPROVING STIPULATION CONSENTING TO DEBTOR'S USE OF CASH COLLATERAL** |
| Debtor and Debtor-in-Possession. | |

After considering the Stipulation Consenting to Debtor's Use of Cash Collateral (the "Stipulation") by and between Ritz Interactive, Inc., as debtor in possession (the "Debtor") and Ritz Camera & Image, LLC ("RCI"), and for good cause appearing therefore,

**IT IS HEREBY ORDERED THAT:**

A.      The Stipulation is APPROVED;

B.      Debtor is authorized to use Cash Collateral for the period August 15, 2011 through November 30, 2011 (the "Authorization Period"), or until further order of the Court, in accordance with the terms and conditions of the Stipulation; and

Exhibit 2
Page 17

1    C.    A further hearing on the continued use of cash collateral after the Authorization Period

2  shall be set for _____[Day], at _____ [Time].

3  IT IS SO ORDERED.

4

5                                      ###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 2
Page 18

EXHIBIT 3

**Exhibit 3**

**Disclosure Pursuant to Federal Rule of Bankruptcy 4001(b)**

Pursuant to Federal Rule of Bankruptcy Procedure 4001(b), the Proposed Order and Stipulation does not include any of the provisions set forth in LBR 4001-2(b).