Scott F. Gautier (State Bar No. 211742)
*sgautier@pwkllp.com*
Lauren N. Gans (State Bar No. 247542)
*lgans@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
2029 Century Park East, Suite 3100
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile: (310) 552-3101

Attorneys for Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>RITZ INTERACTIVE, INC.,<br><br>　　　　Debtor and Debtor-in-Possession. | Case No.:  8:11-21690-ES<br><br>Chapter 11<br><br>**MOTION OF THE DEBTOR FOR ORDER APPROVING DISCLOSURE STATEMENT AND SOLICITATION, VOTING, AND CONFIRMATION PROCEDURES; MEMORANUM OF POINTS AND AUTHORITIES; DECLARATION OF FRED H. LERNER**<br><br>**Disclosure Statement Hearing**<br>Date:  November 3, 2011<br>Time: 10:30 a.m.<br>Place: Courtroom 5A<br>　　　　411 West Fourth Street<br>　　　　Santa Ana, CA 92701<br><br>**Plan Confirmation Hearing**<br>**See Disclosure Statement for Voting and Objecting Procedures**<br>Date: December 6, 2011<br>Time: 10:30 a.m.<br>Place: Courtroom 5A<br>　　　　411 West Fourth Street<br>　　　　Santa Ana, CA 92701 |

　　　　Ritz Interactive, Inc. (the "Debtor") hereby moves the Court for an order approving (a)

the Debtor's disclosure statement describing the Debtor's proposed plan of reorganization dated

as of September 20, 2011 (the "Disclosure Statement"), (b) solicitation, voting, and confirmation

procedures concerning the Debtor's Plan; (c) approving the form of ballots and notice to be used in the solicitation of votes on the Debtor's Plan; and (d) setting the time and dates associated with the confirmation of the Debtor's proposed plan of reorganization dated as of September 20, 2011 (the "Plan"). In support of this Motion, the Debtor hereby submits the attached Memorandum of Points and Authorities and the Declaration of Fred H. Lerner (the "Lerner Declaration"). A copy of the Disclosure Statement, with the Plan attached as Exhibit A, is attached to the Lerner Declaration as Exhibit 1. Capitalized terms used but not otherwise defined herein have the meaning given to such terms in the Plan or the Disclosure Statement, as applicable.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and the confirmation of a plan and is, accordingly, a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein is section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002, 3017 and 3018, and 9007 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Local Bankruptcy Rules 3016-2, 3017-1, 3018-1.

### II.

### STATEMENT OF FACTS

## I.    GENERAL BACKGROUND

Ritz Interactive, Inc. (the "Debtor") is an e-commerce network of interactive websites including: RitzCamera.com, WolfCamera.com, BoatersWorld.com, CameraWorld.com, PhotoAlley.com, eAngler.com, ScrapbookingAlley.com, NeedleCraftsEtc.com, CeilingFansandMore.com, and Greg Norman's ShopAtShark.com, that provides online shoppers with a wide selection of branded products at competitive prices. The Debtor has twenty-three

employees.

The Debtor's primary asset is an exclusive, worldwide, nontransferable license to use and reproduce certain names, trademarks, service marks, and/or tradenames owned by Ritz Camera & Image, L.L.C. ("RCI"), (which acquired substantially all of the assets of Ritz Camera Centers, Inc. ("RCC") in July of 2009 out of RCC's bankruptcy), in conjunction with its internet business, and the right to purchase and sell inventory provided by RCI on Debtor's websites. RCI is the Debtor's principal secured creditor.

In 2005, the Debtor agreed to repurchase a $10 million equity stake of TW AOL Holdings, Inc. ("AOL") and in connection therewith issued a note payable ("AOL Note"). The AOL Note originally matured in December 2006, was amended to extend the maturity date until December 2007 and was later further amended to provide for a November 2012 maturation.

The Debtor began to experience a downturn in revenue in the second half of 2008 in conjunction with the U.S. economic recession. Then, in February 2009, the Debtor's primary supplier at the time, RCC, filed for bankruptcy under Chapter 11 of the Bankruptcy Code (the "RCC Bankruptcy"). As a result of the RCC Bankruptcy, inventory availability from RCC became greatly impaired, and inventory from RCI has been below appropriate levels from mid-2009 to the current date. The U.S. economic recession, dramatic changes in Debtor's revenue and impaired inventory availability from RCC and RCI have resulted in operating losses in 2009, 2010 and year-to-date 2011.

As of November 2009, the Debtor was not able to pay all of its obligations in the ordinary course of business. Moreover, the Debtor has been unable to fund the purchase of inventory on a continuing basis. In May and December 2010, the Debtor's principal supplier, RCI, offered to make further financial accommodations including amending the Operations Agreement, distinguishing between payment terms on pre-existing debt and future balances and eliminating handling and licensor fees and mark-ups on inventory. Despite these accommodations, the Debtor has not been able to remain current on its payments to RCI and continues to experience financial difficulty.

Following significant discussion and investigation of several alternatives, the Debtor elected to pursue a voluntary restructuring of its debt and on August 19, 2011 (the "Petition Date"), filed a voluntary petition commencing its chapter 11 case. The Debtor has continued the management and control of its business and property as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108. To date, no trustee or official committee of creditors has been appointed in the case.

## II.    FACTS SPECIFIC TO THE MOTION

The Debtor has negotiated the proposed Plan with RCI to allow the Debtor to continue its business as a going concern and to provide significant value to the Estate's creditors. Without the cooperation and consent of RCI, the Debtor's only viable option would likely be to liquidate its assets with an attendant loss of jobs and with little, if any, value returned to the Estate's creditors. Since the Court has expressed doubt as to whether the Debtor is a small business debtor as defined in 11 U.S.C. § 101, the Debtor hereby moves for approval of its Disclosure Statement and its proposed solicitation and voting procedures under the procedures set forth in LBR 3017-1. The Debtor anticipates that this will prevent any delay, conserve the Debtor's limited resources and maximize distributions to creditors.

### III.

### ARGUMENT

#### A.   THE DISCLOSURE STATEMENT SHOULD BE APPROVED

The Debtor seeks an order of the Bankruptcy Court approving the Disclosure Statement as containing "adequate information," pursuant to section 1125(a)(1) of the Bankruptcy Code. Section 1125(b) of the Bankruptcy Code provides that

"[a]n acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing

1  adequate information."

2  11 U.S.C. § 1125(b).  "The purpose of a disclosure statement is to give all creditors a source of

3  information which allows them to make an informed choice regarding the approval or rejection

4  of a plan." *Duff v. U.S. Trustee (In re California Fidelity, Inc.)*, 198 B.R. 567, 571 (9th Cir.

5  B.A.P. 1996).  Section 1125(b) of the Bankruptcy Code "seeks to guarantee that a creditor

6  receives adequate information about a plan before the creditor is asked for a vote." *Id.*  The

7  Bankruptcy Code defines "adequate information" as follows:

8       "adequate information" means information of a kind, and in sufficient detail,

9       as far as is reasonably practicable in light of the nature and history of the debtor and

10      the condition of the debtor's books and records, including a discussion of the potential

11      material Federal tax consequences of the plan to the debtor, any successor to the

12      debtor, and a hypothetical investor typical of the holders of claims or interests in the

13      case, that would enable such a hypothetical investor of the relevant class to make an

14      informed judgment about the plan, but adequate information need not include such

15      information about any other possible or proposed plan and in determining whether a

16      disclosure statement provides adequate information, the court shall consider the

17      complexity of the case, the benefit of additional information to creditors and other

18      parties in interest, and the cost of providing additional information.

19  U.S.C. § 1125(a)(1).

20      The determination of whether a particular disclosure statement provides adequate

21  information is "subjective and made on a case by case basis . . . [and] . . . is largely within the

22  discretion of the bankruptcy court." *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir.),

23  *cert. denied*, 488 U.S. 926 (1988); *accord Computer Task Group, Inc., v. Brotby*, 303 B.R. 177

24  (9th Cir. BAP 2003).  The Disclosure Statement was prepared using optional Form B25B,

25  available on the website for the U.S. Trustee Region 16.

26      The Disclosure Statement provides information about the Debtor's chapter 11 cases, and

27  a detailed explanation of the Plan and the financial information and assumptions that underlie the

28

Plan.  The Debtor has attempted to ensure that the information in the Disclosure Statement is complete and accurate to the best of the Debtor's knowledge, information and belief.  Among other things, the Disclosure Statement provides the following information, which courts generally look to in determining whether a disclosure statement contains "adequate information" to enable a creditor or interest holder to make an informed decision with respect to a chapter 11 plan.  *See, e.g., In re Metrocraft Pub. Servs. Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

1.  A description of the events leading to the commencement of these cases (Section II.D);

2.  Descriptions of the Debtor's assets and their estimated value (Section II.A & H, Exhibit B);

3.  A discussion of the anticipated future of the Debtor (III.D.2);

4.  Disclaimers regarding the Plan (Section I.C);

5.  A summary of significant events that occurred during this bankruptcy case and the Debtor's present condition (Section II.E & II.H);

6.  A discussion of the scheduled claims against the Debtor's estate (Section III.B & C);

7.  A comparison of the estimated return to impaired classes of creditors in a hypothetical chapter 7 liquidation to estimated returns under the Plan (Section IV.C, Exhibit E);

8.  A discussion of the Reorganized Debtor's future organization and management (Section III.D.2);

9.  A detailed summary of the Plan's operative provisions (Section III);

10. The Debtor's estimated administrative expenses and professional fees (Section III.B.1);

11. Financial information, data, and valuations relevant to a creditor's decision to accept or reject the Plan (Section II. H & III, Exhibits B-G);

12. A discussion of the potential risks under the Plan (Section III.E);

13. A discussion of potential preferential or otherwise voidable transfers and other potential claims and causes of action (Section II.F); and

6

14. A discussion of the Plan's tax consequences (Section III.G).

As demonstrated above, the Disclosure Statement provides creditors and interest holders with adequate information to make an informed judgment regarding whether to vote to accept or reject the Plan.  Accordingly, the Debtor requests that the Bankruptcy Court approve the Disclosure Statement as containing "adequate information," as defined in section 1125(a) of the Bankruptcy Code.

**B.  THE PROPOSED SOLICITATION AND VOTING PROCEDURES SHOULD BE APPROVED**

1. **Proposed Solicitation, Voting and Confirmation Dates**

The Debtor requests that the Bankruptcy Court approve the following procedures and fix the following dates to enable the solicitation, voting and confirmation process to proceed in a timely manner:

(a) <u>Confirmation Hearing Date</u>.  The Debtor requests that the Court schedule the Confirmation Hearing for December 6, 2011 at 10:30 a.m.  In accordance with FRBP 2002(b), the Debtor shall serve a copy of the Disclosure Statement and Plan (the "Solicitation Package") and Confirmation Hearing Notice on all necessary parties, and shall provide a ballot to those entities allowed to vote on the Plan, no later than November 8, 2011, which is twenty-eight (28) days before the Confirmation Hearing.

(b) <u>Last Day to Vote</u>.  Pursuant to FRBP 3017(c), the Debtor request that the Court fix November 25, 2011, at 5:00 p.m. Los Angeles time, as the last date and time to complete and deliver a ballot so as it is actually received by the Debtor's bankruptcy counsel.

(c) <u>Last Day to Object to Confirmation</u>.  Pursuant to Rule 3020(b)(1), the Debtor requests that the Court fix November 25, 2011 as the last date to file objections to confirmation of the Plan with the Bankruptcy Court and to serve the objections on counsel for the Debtor, any counsel for the Official Committee of Unsecured Creditors and the Office of the United States Trustee.

(d) <u>Last Day to Reply and File Ballot Summary</u>.  The Debtor also requests that the Court fix December 2, 2011 as that the last date to file and serve on objecting parties a

memorandum in support of confirmation of the Plan and declarations in support thereof, and as

the last date to file and serve on all parties a ballot summary.

For convenience, the proposed key dates and deadlines are summarized in the following table:

| *PROPOSED CONFIRMATION DEADLINES* | |
|---|---|
| *Deadline for Service of Solicitation Package, Ballot and Confirmation Hearing Notice* | November 8, 2011 |
| *Deadline for Filing Any Objection to Confirmation* | November 25, 2011 |
| *Voting Deadline* | 5:00 p.m., Los Angeles time November 25, 2011 |
| *Deadline for Filing Reply Memorandum in Support of Plan Confirmation* | December 2, 2011 |
| *Deadline for Filing Ballot Summary* | December 2, 2011 |
| **Confirmation Hearing** | **10:30 a.m., Los Angeles time December 6, 2011** |

### 2.   Proposed Form of Ballots

FRBP 3017(d) generally requires that ballots for accepting or rejecting a plan conform with

Official Form No. 14.  In accordance with Rule 3017(d), the Debtor proposes to utilize ballots in

the form of Official Form No. 14 as modified to fit the circumstance of the Plan.  Copies of each

of the Ballots to be utilized are set forth in Exhibit 2 to the Lerner Declaration.  With respect to

the tabulation of ballots, the Debtor requests that the Court approve the following procedures:

i.    The amount of claim for voting purposes shall be the claim amount as listed in the

Debtor's schedule of assets and liabilities ("Schedules") if such claim is not listed as contingent,

unliquidated or disputed and no proof of claim has been timely filed;

ii.    If a proof of claim in a specified liquidated amount has been timely filed and is

neither subject of an objection to claim filed before the confirmation hearing nor has been

disallowed prior to the confirmation hearing, nor designated as a disputed claim in the Plan or

the Disclosure Statement, the amount of the claim for voting purposes shall be such specified

liquidated amount;

iii.    If a creditor submits a ballot for a claim for which a proof of claim has not been timely filed, or which is listed on the Schedules as contingent, unliquidated or disputed, or against which an objection has been timely filed and is not resolved or which is designated in the Plan or Disclosure Statement as disputed, then the ballot should not be counted in accordance with Rule 3018, unless the Court temporarily allows the claim for voting purposes in accordance with Rule 3018(a);

iv.    If a creditor casts more than one ballot voting the same claim, the last ballot received prior to the deadline for submitting ballots shall supersede any prior ballot(s), even if the dollar amount of the earlier claim was greater;

v.    Votes cast by a creditor pursuant to a ballot that is not signed or is not timely received shall not be counted; and

vi.    Signed ballots that are timely received but which do not indicate any vote on the Plan shall be treated as a vote to accept the Plan.

### 3.  Proposed Solicitation Package

The Debtor proposes to send, by first-class mail, to creditors entitled to vote to accept or reject the Plan under Bankruptcy Code section 1126 and FRBP 3018, the following items (the "Solicitation Package"): (a) the Disclosure Statement; (b) the Plan (as an Exhibit to the Disclosure Statement);  and (c) a Ballot (only to creditors entitled to vote to accept or reject the Plan).

The Debtor proposes to send, by first-class mail, to each creditor and equity security holder and the United States Trustee a notice of the dates and times set by the Court with respect to final approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Notice"). A proposed form of the Confirmation Notice is attached to the Lerner Declaration as Exhibit 3.

//

//

**THE COURT SHOULD GRANT THE PROTECTION OF 11 U.S.C. § 1125(e)**

In accordance with section 1125(e) of the Bankruptcy Code, the Debtor is also requesting that the Bankruptcy Court order that any person who solicits acceptance of the Plan in accordance with the procedures set forth in this Motion, or that participates in the offer, issuance, sale, or purchase of any securities offered or sold under the Plan, shall not be liable on account of such solicitation or participation for violation of any applicable law, rule, or regulation governing solicitation or acceptance of a plan or the offer, issuance, sale, or purchase of securities. This limitation on liability is afforded to any person acting in good faith and in compliance with the applicable provisions of the Bankruptcy Code. Because all parties have acted, and intend to continue to act, in good faith and in compliance with the Bankruptcy Code with respect to the solicitation of the Plan, the Court should grant the protections of Bankruptcy Code section 1125(e).

## IV.

### CONCLUSION

**WHEREFORE** the Debtor respectfully requests that the Court enter an order:

(a) approving the Disclosure Statement on a final basis;

(b) authorizing the Debtor immediately to distribute the Plan and Disclosure Statement and to solicit acceptance of the Plan;

(c) approving the solicitation and voting procedures set forth in the Motion;

(d) approving the form of ballot to accompany the Solicitation Package;

(e) approving the form of notice of the Confirmation Hearing;

//

//

//

//

//

//

(f) fixing the dates in connection with the solicitation, voting and confirmation process, as requested in the Motion;

(g) granting the protections afforded under 11 U.S.C. § 1125(e); and

(h) granting to the Debtor such other and further relief as is just.


Dated:  September 27, 2011                    PEITZMAN, WEG & KEMPINSKY LLP


                                             By:   /s/ Scott F. Gautier
                                                   Scott F. Gautier
                                                   Lauren N. Gans
                                                   Kathryn F. Russo

                                             Attorneys for
                                             Debtor and Debtor in Possession

### Declaration of Fred H. Lerner

I, Fred H. Lerner, declare as follows:

1.      I am the President and CEO of Ritz Interactive, Inc. (the "Debtor"). The facts and matters set forth herein are true and based upon my own personal knowledge and, if called to testify, I could and would competently testify thereto.

2.      I make this Declaration in support of the Motion of the Debtor For Order Approving Disclosure Statement and Solicitation, Voting, and Confirmation Procedures (the "Motion").

3.      Attached hereto as Exhibit 1 is a true and correct copy of the Disclosure Statement, with the Plan attached as Exhibit A.

4.      Attached hereto as Exhibit 2 is a true and correct copy of each of the proposed form of Ballots to be utilized.

5.      Attached hereto as Exhibit 3 is a true and correct copy of the proposed Confirmation Notice.

6.      All capitalized terms that are used, but not defined, herein, shall have the meanings ascribed to such terms in the Motion.

7.      Ritz Interactive, Inc. (the "Debtor") is an e-commerce network of interactive websites including: RitzCamera.com, WolfCamera.com, BoatersWorld.com, CameraWorld.com, PhotoAlley.com, eAngler.com, ScrapbookingAlley.com, NeedleCraftsEtc.com, CeilingFansandMore.com, and Greg Norman's ShopAtShark.com, that provides online shoppers with a wide selection of branded products at competitive prices.  The Debtor has twenty-three employees.

8.      The Debtor's primary asset is an exclusive, worldwide, nontransferable license to use and reproduce certain names, trademarks, service marks, and/or tradenames owned by Ritz Camera & Image, L.L.C. ("RCI"), (which acquired substantially all of the assets of Ritz Camera Centers, Inc. ("RCC") in July of 2009 out of RCC's bankruptcy), in conjunction with its internet business, and the right to purchase and sell inventory  provided by RCI on Debtor's websites. RCI is the Debtor's principal secured creditor.

9.      In 2005, the Debtor agreed to repurchase a $10 million equity stake of TW AOL

Holdings, Inc. ("AOL") and in connection therewith issued a note payable ("AOL Note").  The

AOL Note originally matured in December 2006, was amended to extend the maturity date until

December 2007 and was later further amended to provide for a November 2012 maturation.

10.     The Debtor began to experience a downturn in revenue in the second half of 2008

in conjunction with the U.S. economic recession.  Then, in February 2009, the Debtor's primary

supplier at the time, RCC, filed for bankruptcy under Chapter 11 of the Bankruptcy Code (the

"RCC Bankruptcy").  As a result of the RCC Bankruptcy, inventory availability from RCC

became greatly impaired, and inventory from RCI has been below appropriate levels from mid-

2009 to the current date.  The U.S. economic recession, dramatic changes in Debtor's revenue

and impaired inventory availability from RCC and RCI have resulted in operating losses in 2009,

2010 and year-to-date 2011.

11.     As of November 2009, the Debtor was not able to pay all of its obligations in the

ordinary course of business.  Moreover, the Debtor has been unable to fund the purchase of

inventory on a continuing basis.  In May and December 2010, the Debtor's principal supplier,

RCI, offered to make further financial accommodations including  amending the Operations

Agreement, distinguishing between payment terms on pre-existing debt and future balances and

eliminating handling and licensor fees and mark-ups on inventory.  Despite these

accommodations, the Debtor has not been able to remain current on its payments to RCI and

continues to experience financial difficulty.

12.     Following significant discussion and investigation of several alternatives, the

Debtor elected to pursue a voluntary restructuring of its debt and on August 19, 2011 (the

"Petition Date"), filed a voluntary petition commencing its chapter 11 case.  The Debtor has

continued the management and control of its business and property as debtor in possession

pursuant to Bankruptcy Code §§ 1107 and 1108.  To date, no trustee or official committee of

creditors has been appointed in the case.

13.     The Debtor has negotiated the proposed Plan with RCI to allow the Debtor to

continue its business as a going concern and to provide significant value to the Estate's creditors.

1    Without the cooperation and consent of RCI, the Debtor's only viable option would likely be to

2    liquidate its assets with an attendant loss of jobs and with little, if any, value returned to the

3    Estate's creditors.

4

5    I declare under penalty of perjury under the laws of the United States of America that the

6    foregoing is true and correct.

7

8    Executed this 27 th day of September, 2011 at ___Irvine___, California.

9

10

11                                        Fred H. Lerner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1  Scott F. Gautier (State Bar No. 211742)
   *sgautier@pwkllp.com*
2  Lauren Gans (State Bar No. 247542)
   *lgans@pwkllp.com*
3  PEITZMAN, WEG & KEMPINSKY LLP
   2029 Century Park East, Suite 3100
4  Los Angeles, CA  90067
   Telephone: (310) 552-3100
5  Facsimile: (310) 552-3101

6  Attorneys for
   Debtor and Debtor in Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SANTA ANA DIVISION**

11

12  In re:                               Case No.: 8:11-21690-ES

13  RITZ INTERACTIVE, INC.,              Chapter 11
    a Delaware corporation
14
         Debtor and Debtor-in-Possession.
15
                                         **DISCLOSURE STATEMENT FOR
16                                       DEBTOR'S PLAN OF
                                         REORGANIZATION, DATED AS
17                                       OF SEPTEMBER 20, 2011**

18

19

20

21

22

23

24

25

26

27

28

Exhibit 1
Page 15

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................... 1

   A.   PURPOSE OF THIS DOCUMENT ..................................................................... 1
   B.   DEADLINES FOR VOTING AND OBJECTING; DATE OF PLAN CONFIRMATION HEARING ........ 2
     1.   Time and Place of the Hearing to Confirm the Plan ................................... 2
     2.   Deadline For Voting to Accept or Reject the Plan ..................................... 2
     3.   Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan ................................................................................................ 2
     4.   Identity of Person to Contact for More Information ................................... 3
   C.   DISCLAIMER ................................................................................................ 3

II.  BACKGROUND ..................................................................................................... 3

   A.   DESCRIPTION AND HISTORY OF THE DEBTOR'S BUSINESS ........................... 3
   B.   INSIDERS OF THE DEBTOR ........................................................................... 5
   C.   MANAGEMENT OF THE DEBTOR BEFORE AND DURING THE BANKRUPTCY ........ 5
   D.   EVENTS LEADING TO CHAPTER 11 FILING ................................................... 6
   E.   SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE ............................... 7
   F.   PROJECTED RECOVERY OF AVOIDABLE TRANSFERS ...................................... 8
   G.   CLAIMS OBJECTIONS .................................................................................. 11
   H.   CURRENT AND HISTORICAL FINANCIAL CONDITIONS ................................. 11

III. SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ........................................................................ 11

   A.   WHAT IS THE PURPOSE OF THE PLAN OF REORGANIZATION? ..................... 11
   B.   UNCLASSIFIED CLAIMS .............................................................................. 11
     1.   Administrative Expenses ......................................................................... 11
     2.   Priority Tax Claims ................................................................................. 12
   C.   CLASSES OF CLAIMS AND EQUITY INTERESTS ........................................... 13
     1.   Classes of Secured Claims ...................................................................... 13
     2.   Classes of Priority Unsecured Claims ..................................................... 14
     3.   Classes of General Unsecured Claims ..................................................... 15
     4.   Classes of Equity Interest Holders .......................................................... 16
   D.   MEANS OF IMPLEMENTING THE PLAN ......................................................... 17
     1.   Source of Payments ................................................................................ 17
     2.   Post-confirmation Management .............................................................. 17
   E.   RISK FACTORS ........................................................................................... 17
   F.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................... 19
   G.   TAX CONSEQUENCES OF PLAN ................................................................... 19
     1.   Tax Consequences to Holders of Claims ................................................. 19
     2.   Allocation of Plan Distributions between Principal and Interest ............... 20
     3.   Character of Gain or Loss ....................................................................... 21
     4.   Backup Withholding ............................................................................... 21

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES ......................................... 22

   A.   WHO MAY VOTE OR OBJECT ...................................................................... 22
     1.   What Is an Allowed Claim or an Allowed Equity Interest? ...................... 22
     2.   What Is an Impaired Claim or Impaired Equity Interest? ......................... 23
     3.   Who is Not Entitled to Vote .................................................................... 23
     4.   Who Can Vote in More Than One Class .................................................. 24
   B.   VOTES NECESSARY TO CONFIRM THE PLAN ............................................... 24
     1.   Votes Necessary for a Class to Accept the Plan ...................................... 24
     2.   Treatment of Nonaccepting Classes ........................................................ 24
   C.   LIQUIDATION ANALYSIS ............................................................................ 25
   D.   FEASIBILITY .............................................................................................. 25
     1.   Ability to Initially Fund Plan .................................................................. 25
     2.   Ability to Make Future Plan Payments And Operate Without Further Reorganization ...................................................................................... 25

i

Exhibit 1
Page 16

V.    EFFECT OF CONFIRMATION OF PLAN...................................................................26

      A.    DISCHARGE OF THE DEBTOR ..............................................................26
      B.    MODIFICATION OF PLAN .....................................................................26
      C.    FINAL DECREE .....................................................................................26

VI.   OTHER PLAN PROVISIONS .....................................................................................26

      A.    SETTLEMENT OF DISPUTED CLAIMS ..................................................26
      B.    RCI CONTRIBUTIONS ...........................................................................27
      C.    EXEMPTION FROM TRANSFER TAXES ................................................27
      D.    EXCULPATION, RELEASES, DISCHARGE AND INJUNCTIONS ..............28

ii

Exhibit 1
Page 17

**I.**

**INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in the chapter 11 case of Ritz Interactive, Inc. (the "Debtor" or "Plan Proponent").  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization of Ritz Interactive, Inc. dated September 20, 2011 (the "Plan"[1]).   A full copy of the Plan is attached to this Disclosure Statement as Exhibit A.  Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.

The proposed distributions under the Plan are discussed at pages 11 through 17 of this Disclosure Statement.  General unsecured creditors are classified in Class 5, and will receive a distribution of approximately 20% of their allowed claims, to be distributed in cash upon the later of (a) the Effective Date of the Plan and (b) the date upon which the last disputed Class 5 claim has been resolved by order of the court or settlement as permitted under the Plan.  The Plan also contains a "convenience class", Class 4, for those allowed unsecured claims less than $15,000, or creditors that voluntarily elect to reduce their claims to $15,000.  Class 4 will receive distributions equal to approximately 99% of the allowed unsecured claims in such class.

**A.**     **Purpose of This Document**

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,

- How the Plan proposes to treat claims or equity interests of the type you hold (i.e., what you will receive on your claim or equity interest if the plan is confirmed),

- Who can vote on or object to the Plan,

- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Plan.

1

Exhibit 1
Page 18

- Why the Proponent believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and

- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

*1.    Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether or not to confirm the Plan will take place on December 6 2011, at 10:30.m., in Courtroom 5A, at the Ronald Reagan Federal Courthouse, 411 West Fourth Street, Santa Ana, CA 92701.

*2.    Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to: Peitzman, Weg & Kempinsky LLP, attn. Ritz Interactive, Inc., Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles, CA 90067. See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by November 25, 2011 at 5:00 p.m. or it will not be counted.

*3.    Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon (i) the Office of the United States Trustee at: Frank Cadigan, Office of the U.S. Trustee, 411 West Fourth Street, Suite 9041, Santa Ana, CA 92701-8000, fax: (714) 338-3422; (ii) the Debtor at: Peitzman, Weg & Kempinsky LLP, attn. Ritz Interactive, Inc., Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles, CA 90067; and (iii) RCI at: Adam M. Starr, Greenberg Traurig, LLP, 2450 Colorado Avenue, Suite 400E, Santa Monica, CA 90404.

2

Exhibit 1
Page 19

The deadline for filing an Objection to the adequacy of this Disclosure Statement is October 20, 2011.  The deadline for filing an Objection to Confirmation is November 25, 2011.

### 4.    Identity of Person to Contact for More Information

If you want additional information about the Plan, you should contact Peitzman, Weg & Kempinsky LLP, attn. Ritz Interactive, Inc., Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles, CA 90067.

## C.    Disclaimer

The Court has approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.

## II.

## BACKGROUND

## A.    Description and History of the Debtor's Business

The Debtor is an e-commerce network of interactive websites including: RitzCamera.com, WolfCamera.com, BoatersWorld.com, CameraWorld.com, PhotoAlley.com, eAngler.com, ScrapbookingAlley.com, NeedleCraftsEtc.com, CeilingFansandMore.com, and Greg Norman's ShopAtShark.com, that provides online shoppers with a wide selection of branded products at competitive prices.  The Debtor has twenty- three employees, twenty- two work from its headquarters in Irvine, California, one who works from leased space in Beltsville.  The Debtor's headquarters have been located in Irvine, California since it was founded in 1999.  The Debtor grew from just $2.4 million in sales in its first year of operations in 1999 to $111 million in sales in 2007 and $107 million in 2008.  During that time span of revenue growth, the Debtor experienced seven consecutive years of profitability from 2002 through 2008.  In 2008, Internet Retailer, the leading industry publication, ranked the Debtor as the country's 32nd largest internet only e-commerce website.

3

Exhibit 1
Page 20

The Debtor's primary asset is an exclusive, worldwide, nontransferable license to use and reproduce certain names, trademarks, service marks, and/or tradenames owned by Ritz Camera & Image, L.L.C. ("RCI"), (which acquired substantially all of the assets of Ritz Camera Centers, Inc. ("RCC") in July of 2009 out of RCC's bankruptcy), in conjunction with its internet business, and the right to purchase and sell inventory provided by RCI on the Debtor's websites, pursuant to the Second Amended and Restated Agreement dated as of August 1, 2005, by and between RCC and the Debtor as amended by that certain Amendment to the Second Amended and Restated Agreement dated as of May 10, 2010 by and between RCI and the Debtor and that certain Second Amendment to the Second Amended and Restated Agreement dated as of December 23, 2010 (collectively the "Operations Agreement") and the Perpetual License Agreement dated as of August 1, 2005, by and between RCC and the Debtor, as later acquired by RCI (the "License Agreement").  RCI is the Debtor's principal secured creditor.

In 2005, the Debtor agreed to repurchase a $10 million equity stake of TW AOL Holdings, Inc. ("AOL") and in connection therewith issued a note payable ("AOL Note").  The AOL Note originally matured in December 2006, was amended to extend the maturity date until December 2007 and was later further amended to provide for a November 2012 maturation.

///
///
///
///
///
///
///
///
///

4

Exhibit 1
Page 21

**B.    Insiders of the Debtor**

| Name (Position) | Compensation Paid in 2 years prior to the Petition Date | Compensation (estimated) Projected to Be Paid During the Chapter 11 Case (Approx. 90 days) |
|---|---|---|
| Fred Lerner (Director, President, CEO) | $ 651,000 | $ 75,000 |
| Scott Neamand (Officer, Executive VP, CFO) | $ 508,000 | $ 60,000 |
| Steve LaMastra (Director) | $ 0 | $ 0 |
| David Ritz (Director) | $ 0 | $ 0 |

**C.    Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were Fred Lerner (CEO/President/Director), Scott Neamand (CFO/Executive VP/Officer), Steve LaMastra (Director), and David Ritz (Director).

The Managers of the Debtor during the Debtor's chapter 11 case will be: Fred Lerner (CEO/President/Director), Scott Neamand (CFO/Executive VP/Officer), Steve LaMastra (Director), and David Ritz (Director).

After the Effective Date of the Plan, the Reorganized Debtor will be a Delaware limited liability company and it will be managed by its sole member, RCI.  RCI's senior management is set forth below:

**Stephen M. LaMastra** -- Mr. LaMastra is the President and CEO of Ritz Camera & Image, and joined RCI upon its inception in July 2009.  Mr. LaMastra has spent over 15 years in the retail, franchise, and related industries, including over a decade in the retail photo and imaging business.

**Tom Hermann** -- Mr. Hermann is the Chief Financial Officer of RCI, where he has been since its inception in July 2009.  Prior to joining RCI, Mr. Hermann served as the CFO of Raving Brands Holdings, where he helped to engineer its turnaround, and has served as CFO before at several companies in turnaround, transition and rapid growth mode.

5

Exhibit 1
Page 22

**Jeff Israel** -- Mr. Israel is Vice President and General Counsel of RCI, where he oversees all legal and real estate matters, and has served in that role since January 2010.  Prior to his involvement with RCI, Mr. Israel spent over a decade with Home Depot, during the period when that company went from $25 billion to $75 billion in annual sales.

**D.    Events Leading to Chapter 11 Filing**

The Debtor began to experience a downturn in revenue in the second half of 2008 in conjunction with the U.S. economic recession.  Then, in February 2009, the Debtor's primary supplier at the time, RCC, filed for bankruptcy under Chapter 11 of the Bankruptcy Code (the "RCC Bankruptcy").  As a result of the RCC Bankruptcy, inventory availability from RCC became greatly impaired, and inventory from RCI has been below appropriate levels from mid 2009 to the current date.  Aside from reduced availability from major manufacturers, Canon U.S.A. Inc. ("Canon") -- whose product historically accounted for over 15% of the Debtor's sales, generating $16.4 million in 2008 revenue -- refused to do business with RCI after having lost significant funds in connection with the RCC Bankruptcy.  As a result, RCI and thus the Debtor lost access to Canon product.  In addition, RCC liquidated its Boaters World stores and warehouse and, as a result, the Debtor lost its main supplier for Boatersworld.com which in 2008 accounted for 13% of its sales, generating revenues of approximately $13.5 million with a gross profit margin of nearly 40%.   The U.S. economic recession, dramatic changes in the Debtor's revenue from Canon products and Boatersworld.com and impaired inventory availability from RCC and RCI have resulted in operating losses in 2009, 2010 and year-to-date 2011.

Since November 2009, the Debtor has been unable to pay all of its obligations, stopped making payments on the AOL Note and is in default thereon.  The Debtor does not have any ability to make further payments on the AOL Note.  Moreover, the Debtor would have been unable to fund the purchase of inventory on a continuing basis but for financial accommodations from RCI in May and December 2010 which included amending the Operations Agreement, distinguishing between payment terms on pre-existing debt and future balances and eliminating handling and licensor fees and mark-ups on inventory.  Despite these accommodations, the Debtor

6

Exhibit 1
Page 23

has not been able to remain current on its payments to RCI and continues to experience financial difficulty.

Following significant evaluation and investigation of several alternatives, the Debtor elected to pursue a voluntary restructuring of its debt. On August 19, 2011 (the "Petition Date"), the Debtor filed a voluntary petition commencing its chapter 11 case. The Debtor has continued the management and control of its business and property as debtor in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

**E.    Significant Events During the Bankruptcy Case**

The Debtor moved for the following "first day" relief that was granted at a hearing on August 24, 2011 and subject to subsequent orders entered by the Court:

1.    Emergency Motion of Debtor-In-Possession for Order Establishing Notice Procedures and Permitting Service on Insured Depository Institutions by First-Class Mail, which limits the parties to whom certain notices in the bankruptcy case must be sent;

2.    Emergency Motion of Debtor-In-Possession for Order Authorizing Debtor to Maintain Prepetition Lockbox Accounts, which permits the Debtor to maintain three lockbox accounts that receive automatically and credit to the Debtor's operating account, regular payments from the Debtor's customers, in order to avoid disrupting the Debtor's business;

3.    Emergency Motion of Debtor-In-Possession For Order Authorizing Debtor To Pay Accrued Priority Wages and Other Employee Benefits, which allows the Debtor to satisfy its obligations to its current employees with respect to wages and benefits;

4.    Emergency Motion of Debtor-In-Possession for Order Authorizing Debtor to Honor Certain Prepetition Obligations to Customers and to Otherwise Continue, in the Ordinary Course of Business, Customer Programs and Practices, which continues, and modifies as necessary, the Debtor's customer policies that are essential to the continuity of the Debtor's business and its relationships with its customers;

5.    Emergency Motion of Debtor-In-Possession for Order Establishing Bar Dates For Filing Proofs of Claim and Approving Form and Manner of Notice Thereof, which provides October 7, 2011 as the date by which the Debtor will know the full extent of the claims made against the estate so that the Debtor and other parties in interest can turn their full attention to proposing and gaining approval of a plan of reorganization expeditiously, at

Exhibit 1
Page 24

the lowest cost and the maximum benefit for all creditors.; and

6. Emergency Motion of Debtor-In Possession for Order Approving the Stipulation
Consenting to Debtor's Use of Cash Collateral By and Between the Debtor and Ritz
Camera & Image, LLC ("RCI"), by which the Bankruptcy Court approved the stipulation
negotiated between the Debtor and RCI providing for the Debtor's use of RCI's Cash
Collateral during its Chapter 11 case. The Court granted the relief sought in this motion
on a final basis on September 15, 2011.

The Court has approved the Debtor's application to employ Peitzman, Weg & Kempinsky

LLP as bankruptcy counsel in this case. No committee has been appointed.

Upon filing its petition, the Debtor elected to treat this chapter 11 as a small business case

pursuant to Federal Rule of Bankruptcy Procedure  ("FRBP")1020 and sought an expedited

proceeding under Local Bankruptcy Rule 3017-2 that would combine the hearing on approval of

the Disclosure Statement with the confirmation of the Plan.  Upon the objection of a creditor,

Customer Focus, the Court denied the Debtor's *ex parte* motion for conditional approval of the

Disclosure Statement and solicitation procedures (the "*Ex Parte* Motion") and expressed concerns

regarding the status of the case as a small business case.  Accordingly, the Debtor sought approval

of the Disclosure Statement on regular notice and will solicit the Plan pursuant to the time periods

set forth in FRBP 2002(b).

**F.      Projected Recovery of Avoidable Transfers**

In consideration of the treatment afforded claims under the Plan, as well as the

contributions provided by certain creditors (including RCI) thereunder, the Debtor will waive

preference, fraudulent conveyance, or other avoidance actions as to those creditors and persons that

support the Plan and an efficient reorganization process.

Based upon a cursory review of the Debtor's payment practices over the past years, the

Debtor believes that a relatively minor number of preference claims could be successfully

prosecuted against vendors that have received payments on trade receivables from the Debtor in the

90 days preceding the Petition Date ("Trade Preference Claims").  During the 90 day pre-Petition

Date period, payments to the Debtor's ordinary trade vendors, in the amount of approximately $8

million, have been made to vendors.  However, virtually all of such payments were made on terms

8

Exhibit 1
Page 25

that are significantly the same as the payment terms historically made by the Debtor.  In almost all instances, the Debtor's recent trade payment schedule is consistent with the regular payment intervals (i.e. 20 – 30 day terms) that the Debtor was able to adhere to in past years.

The Debtor believes that there may be grounds to avoid certain payments, totaling approximately $4.5 million, that were made to equity participant, AOL, in connection with an agreement by the Debtor to repurchase AOL's equity interest ("AOL Avoidance Claims").  In May 2005, the Debtor entered into a "Securities Purchase Agreement" with AOL by which the Debtor agreed to repurchase AOL's shares of the Debtor's Series A Convertible Redeemable Preferred Stock ("AOL Preferred Stock") with the AOL Note.  The Debtor has made approximately $2 million in principal payments and approximately $2.5 million in interest payments on the AOL Note in the past five years.  The Debtor believes that there is a basis to seek to avoid and recover any payments to AOL on account of its equity interest because such equity interest was acquired from the Debtor in a transaction that appears to fall in line with what the SEC has labeled an improper "round-trip transaction."  Although no courts have explicitly held that "round-trip" transactions are illegal *per se*, there are arguments that support the proposition that such transactions are voidable and/or unenforceable.

Finally, the Debtor may have the ability to avoid RCI's security interest and to treat RCI's claim with other unsecured creditors ("RCI Avoidance Claims").  RCI perfected a security interest in "all assets of the Debtor" by the filing of a UCC-1 financing statement in December 2010.  If RCI were deemed to be an insider of the Debtor, because the perfection occurred within one-year of the Petition Date, the Debtor might be able to avoid such security interest.  If the Debtor were successful in such litigation against RCI, the likely result would be that RCI's claims of approximately $3.5 million would be re-classified as unsecured claims (exclusive of any portion of RCI's claims entitled to priority under Section 503(b)(9) of the Bankruptcy Code which is estimated at nearly $300,000). One of the Debtor's creditors, Customer Focus, LLC, has argued that RCI is not an insider of the Debtor in connection with its objection to the Debtor's *Ex Parte* Motion.  In denying the *Ex Parte* Motion, the Court noted that no evidence on the record shows

Exhibit 1
Page 26

that RCI is an affiliate or insider of the Debtor within the meaning of 11 U.S.C. §101(2) or 101(31)(B), respectively.

Pursuant to the Plan, the Debtor proposes to waive, among other claims and causes of action, all claims and causes of action related to the Trade Preference Claims, AOL Avoidance Claims and the RCI Avoidance Claim (collectively, the "Avoidance Actions") in exchange for the respective support of the Plan by trade creditors, AOL and RCI.  The Debtor believes that the benefits provided to creditors under the Plan far outweigh the cost and likely recovery from pursuing the Avoidance Actions.  For example, under the Plan, RCI will subordinate or waive approximately $3.5 million in claims in exchange for 100% of the equity in the Reorganized Debtor.  As well, RCI will insure that up to $150,000 in allowed administrative priority claims are paid in full (to the extent that the Debtor's cash on hand on the Effective Date is insufficient to pay such claims) and will provide Reorganized Debtor's payment of approximately $1 million of allowed unsecured trade claims.  Accordingly, under the Plan, the Debtor will satisfy, at a minimum, over $4.5 million in claims.

Moreover, if the Debtor were to engage in litigation with trade vendors and RCI, RCI would not support the Plan and the Debtor's assets would have to be liquidated.  Because the Debtor's principal asset is a license that cannot be assumed without RCI's consent, it is unlikely that the value of the Debtor's assets would be more than $2 million, consisting of approximately $1 million in physical assets (cash, furniture and equipment) and approximately $1 million in expected litigation recoveries (e.g. the Avoidance Actions described above).  It is expected that the bulk of such recoveries would be consumed by the costs of litigation.  Moreover, any recoveries from the Trade Preference Claims would need to be set-off against the increased claims from trade vendors. It should be noted, however, that if the litigation with AOL were unsuccessful, it is likely that AOL's interest (or claim arising from equity) would be equitably subordinated to other creditors' claims and AOL would receive nothing on account of such claim or interest.

Accordingly, the Debtor believes that waiver of all Avoidance Actions against consenting and cooperating creditors is in the best interest of the Debtor's estate.

10

Exhibit 1
Page 27

**G.    Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.  The procedures for resolving disputed claims are set forth in Article V of the Plan.

**H.    Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in Exhibit B.  The fair market value of the assets has been estimated by the Debtor's CEO and CFO.

The Debtor's most recent financial statements issued before bankruptcy, each of which was filed with the Court, are set forth in Exhibit C.

The Debtor will file periodic financial reports as required by the Court.

**III.**

**SUMMARY OF THE PLAN OF REORGANIZATION**

**AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**A.    What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive.  The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.    Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has not placed the following claims in any class:

***1.    Administrative Expenses***

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the

11

Exhibit 1
Page 28

value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
| --- | --- | --- |
| Expenses Arising in the Ordinary Course of Business After the Petition Date | $0 (all expenses shall be paid in the Ordinary Course) | Paid in full on the Effective Date of the Plan, or upon such other terms as may be agreed upon by the holder of the claim and the Reorganized Debtor |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | $500,000 (excluding claims of RCI) | Paid in full upon the later of  (1) the Effective Date, or (2) the date on which such claim is allowed by a final non-appealable order. |
| Professional Fees, as approved by the Court. | $200,000 | Paid in full on the later of (1) the Effective Date, or (2) the date the Court allows such fees and expenses pursuant to a final order. |
| Clerk's Office Fees | $0 | Paid in full on the Effective Date of the Plan |
| Other administrative expenses | $0 | Paid in full on the Effective Date of the Plan or upon such other terms as may be agreed upon by the holder of the claim and the Reorganized Debtor |
| Office of the U.S. Trustee Fees | $13,000 | Paid in full on the Effective Date of the Plan |
| TOTAL | $713,000 | |

### 2.    *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.  Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

The following chart lists the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

Exhibit 1
Page 29

| Description (name and type of tax) | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| None | $0 | | Pmt interval = <br> [Monthly] payment = <br> Begin date = <br> End date = <br> Interest Rate % = <br> Total Payout Amount = $ 0 |

C.    **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

1.    *Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as an unsecured claim and classified in either Class 4 or Class 5, depending upon the nature of the claim.

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

///

///

///

///

///

///

///

///

///

13

Exhibit 1
Page 30

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 2 | *Secured claim of*: Ritz Camera & Image, LLC<br><br>Collateral description: All assets of the Debtor<br><br>Allowed Secured Amount: Approx. $3.5 million<br><br>Priority of lien: First priority<br><br>Principal owed: Approx. $3.5 million<br><br>Pre-pet. Arrearage: Approx. $3.5 million<br><br>Total claim: Approx. $3.5 million | NO | Impaired | The Holder of the Allowed Class 2 Claim shall receive, on account of its Class 2 Claim and the RCI Contributions as are set forth in the Plan, in complete satisfaction of all Class 2 Claims, 100% of the equity interests in the Reorganized Debtor. |
| 3 | *Secured claim of*: "Other Secured Creditors" - Western Finance & Lease Inc. And - U.S. Bancorp Business Equipment Finance Group<br><br>Collateral description: Certain computer hardware and software licenses<br><br>Allowed Secured Amount: $168,000 (combined)<br><br>Priority of lien: First<br><br>Principal owed: $168,000<br><br>Pre-pet. Arrearage: $0<br><br>Total claim: $168,000 (combined) | NO | Unimpaired | On the Effective Date, the Reorganized Debtor will either (i) assume any valid and allowed obligations owed to any Holder of an allowed Class 3 Claim or (ii) shall surrender the collateral subject to any valid first-priority liens (after giving effect to the Plan and any discharges thereunder) to the lien holder of the particular allowed Class 3 Claim. |

2.    ***Classes of Priority Unsecured Claims***

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes.  The Code requires that each holder of such a claim receive

14

Exhibit 1
Page 31

cash on the effective date of the Plan equal to the allowed amount of such claim.  However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§ 507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 1 | Priority unsecured claim pursuant to Section 507(a)(4)<br><br>Total amt of claims:<br>Approx. $200,000 | Unimpaired | Paid in the ordinary course of the Reorganized Debtor's business |

3.    ***Classes of General Unsecured Claims***

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

15

Exhibit 1
Page 32

The following chart identifies the Plan's proposed treatment of Classes 4 and 5, which contain general unsecured claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 4 | Convenience Class Unsecured Claims | Impaired | Each Holder of a Class 4 Claim shall receive cash payments from the Reorganized Debtor equal to the full amount of its Class 4 claim (but in no event more than $15,000) no later than the later of (a) 60 days from the Effective Date of the Plan and (b) the time at which such obligations would have been due and payable pursuant to any agreement between the holder of such claim and the Debtor.<br><br>Estimated percent of claims paid 99% |
| 5 | General Unsecured Claims | Impaired | If Class 5 accepts the Plan, then each holder of a Class 5 Claim shall receive, in complete satisfaction of its allowed Class 5 Claim, a *pro rata* portion of an aggregate cash payment of $100,000 to all such holders of Class 5 Claims on the Effective Date of the Plan; otherwise, each holder of a Class 5 Claim shall receive no distributions under the Plan on account of any Class 5 Claim.<br><br>Estimated percent of claims paid 20% |

4.    ***Classes of Equity Interest Holders***

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holder.

///

///

///

16

Exhibit 1
Page 33

The following chart sets forth the Plan's proposed treatment of the classes of equity interest holders:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| 6 | Converted Equity Security Interests holders | Impaired | Class 6 shall retain no interest and shall receive no distributions under the Plan |
| 7 | Equity Interests | Impaired | Class 7 shall retain no interest and shall receive no distributions under the Plan |

D.    **Means of Implementing the Plan**

    1.    ***Source of Payments***

Payments and distributions under the Plan will be funded by the Debtor's cash on hand on the Effective Date, from the operation of the Debtor's business during the pendency of the Chapter 11 Case, from contributions from RCI on the Effective Date up to the RCI Contribution Cap (to the extent cash on hand is insufficient) and from the continued operation of the Reorganized Debtor's business.

    2.    ***Post-confirmation Management***

Upon the Effective Date, the Reorganized Debtor shall become a Delaware limited liability company and the sole member, RCI, shall be the managing member of the Reorganized Debtor.

E.    **Risk Factors**

The proposed Plan is based primarily upon a compromise with the Debtor's largest creditor, RCI, which is owed approximately $3.5 million on a secured basis as of the Petition Date. Pursuant to the compromise embodied in the Plan, RCI has agreed to accept 100% of the equity in the Reorganized Debtor and to continue to operate the Reorganized Debtor and pay the allowed claims of the vast majority of the Debtor's trade vendors in full in the ordinary course of business.

17

Exhibit 1
Page 34

Barring RCI's support, the Debtor does not believe that any distribution to creditors would be possible.

The value of the Debtor's business is largely dependent upon the use of the trademarks, tradenames and intellectual property owned by RCI and licensed to the Debtor under a licensing agreement (the "RCI Licensing Agreement").  The Debtor may already be in default under the RCI Licensing Agreement and, if the RCI Licensing Agreement were terminated, the Debtor would be unable to operate most of the websites that make up its e-commerce business.

The Debtor believes that there are two primary risks to the confirmation of the Plan.  First, certain general unsecured creditors that are not receiving full payment on their claims may object to confirmation of the Plan on the grounds that the Plan unfairly discriminates against them.  However, there is significant caselaw that supports the proposition that the Plan may discriminate as between creditors of similar priority if such discrimination is reasonable and necessary and in the best interest of the Estate.  In the present case, because general unsecured creditors will receive distributions under the Plan as high as 20% of claims (depending on the value of claims filed) and would likely receive nothing if the Plan were to fail, a court could find that there is no "unfair" discrimination under the Plan.  Under the Plan, the convenience class mechanism pays the majority, in number, of unsecured claimants in full on their prepetition claims.  Almost all of these claims are undisputed and are held by trade vendors that the Reorganized Debtor intends to continue to do business with.  These claims are relatively modest in amount when compared to the large unsecured, and mostly disputed, claims in Class 5.  If Class 4 claims were not paid in full, RCI would not be willing to support the Plan.

Second, the interest of AOL has been classified as a "converted equity interest" because the interest arises from an agreement by which the Debtor was to repurchase AOL's equity interest in the Debtor.  It should also be noted that AOL has made no efforts to collect any payments from the Debtor for over a year.  AOL may assert that (a) the classification of its interest is incorrect because it has a claim against, not an interest in, the Debtor and (b) the Plan unfairly discriminates against its claim *vis-à-vis* other general unsecured creditors.  Because (i) AOL's interest relates

18

Exhibit 1
Page 35

entirely to an equity interest in the Debtor and (ii) the acquisition of such equity interest was a result of a type of transaction that has been skeptically regarded by the SEC as "round-tripping"—a transaction aimed at improperly seeking to mislead the public about a company's operating performance—the Debtor believes that, at best, AOL's claim would be equitably subordinated to those of other creditors.  Moreover, if either general unsecured creditors or AOL successfully opposes the Plan, the Debtor will likely have no choice but to convert its Chapter 11 Case to a liquidation under chapter 7 of the Bankruptcy Code and it is likely that there will be little or no value for any creditor constituency.

**F.    Executory Contracts and Unexpired Leases**

The Plan provides that, unless otherwise rejected, the Debtor will assume all executory contracts and unexpired leases listed in Schedule "G" of the Debtor's Schedules.  Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

**G.    Tax Consequences of Plan**

Creditors and equity interest holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

The following are the anticipated tax consequences of the Plan:

***1.    Tax Consequences to Holders of Claims***

Each Holder of a Claim that receives a distribution pursuant to the Plan generally will recognize gain or loss in an amount equal to the difference between the amount realized in respect of its Claim and its adjusted tax basis in such Claim.  The amount realized for this purpose should generally equal the amount of cash and the fair market value of any other assets received or deemed received for federal income tax purposes under the Plan in respect of such Holder's Claim.

19

Exhibit 1
Page 36

See below regarding the allocation of distributions received between principal and interest and the character of any gain or loss realized.  A Holder that receives or is deemed to receive for U.S. federal income tax purposes a non-cash asset under the Plan in respect of its Claim should generally have a tax basis in such asset in an amount equal to the fair market value of such asset on the date of receipt.

The tax book value of any assets received by creditors shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Tax Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

**2.     *Allocation of Plan Distributions between Principal and Interest***

In general, to the extent that consideration received pursuant to the Plan by a holder of an Allowed Claim is received in satisfaction of accrued interest or original issue discount ("OID") including imputed interest (if any) during its holding period, such amount will be taxable to the Holder as interest income (to the extent such accrued interest or OID was not previously included in the Holder's gross income).  Conversely, a Holder generally recognizes a deductible loss to the extent any accrued interest claim or amortized OID was previously included in its gross income and not paid in full.  The Plan provides that any distribution received pursuant to the Plan in satisfaction of Claims shall, to the extent permitted by applicable law, be allocated for U.S. federal income tax purposes first to the principal amount of the Claim and second, to the extent the distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.  Current U.S. federal income tax law is unclear on this point, and no assurance can be given that the IRS will not challenge the allocation set forth in the Plan.  If, contrary to the intended position, such a distribution were treated as allocated first to accrued but unpaid interest, a Holder would realize ordinary income with respect to such distribution in an amount equal to any accrued but unpaid interest not already taken into income under the Holder's method of accounting, regardless of whether the Holder would otherwise realize a loss as a result of the Plan.

20

Exhibit 1
Page 37

If a Holder holds Claims acquired at a market discount, any gain recognized by the Holder pursuant to the Exchange normally would be recharacterized as ordinary income to the extent of the accrued market discount that has not been previously included as ordinary income.  In general, the Claims will have accrued market discount if they were acquired after their original issuance at a discount to their adjusted issue price.

### 3.    *Character of Gain or Loss*

Assuming that a Holder of a Claim holds its Claim as a capital asset, gain or loss will be treated as long-term or short-term capital gain or loss depending on the Holder's holding period for the Claim.  The deductibility of capital losses is subject to limitations under the Tax Code.  If a Claim is not held as a capital asset, any gain or loss normally will be treated as ordinary income.  Holders are urged to consult their own tax advisors regarding the character of any gain or loss realized.

### 4.    *Backup Withholding*

Under certain circumstances, a Holder (other than an exempt recipient, such as a corporation) may be subject to backup withholding with respect to "reportable payments".  Backup withholding is not an additional tax.  Any amount withheld from a payment to a Holder under the backup withholding rules is allowable as a credit against such Holder's U.S. federal income tax liability (and may entitle such Holder to a refund), provided that the required information is furnished to the IRS on a timely basis.  Holders should consult their own tax advisors regarding the application of backup withholding to their particular situation, the availability of an exemption from backup withholding and the procedure for obtaining such exemption, of available.

Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming of a loss in excess of certain thresholds.  Holders are urged to consult their own tax advisors regarding these regulations and whether the transactions contemplated under the Plan would be subject to these regulations and require disclosure on such Holders' tax return.

21

Exhibit 1
Page 38

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

## A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2, 4 and 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that classes 1 and 3 are unimpaired and that holders of claims in each of these classes, therefore, do not have the right to vote to accept or reject the Plan. Classes 6 and 7 do not retain or receive any distributions under the Plan and are deemed to reject the Plan.

### 1.    What Is an Allowed Claim or an Allowed Equity Interest?

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity

22

Exhibit 1
Page 39

interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

The deadline for filing a proof of claim in this case is October 7, 2011.

The deadline for filing objections to claims is the earlier of (i) sixty (60) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court.

**2.        *What Is an Impaired Claim or Impaired Equity Interest?***

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

**3.        *Who is Not Entitled to Vote***

The holders of the following five types of claims and equity interests are not entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;
- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.
- holders of claims or equity interests in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and
- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;
- administrative expenses.

Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.

23

Exhibit 1
Page 40

### 4.    *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.    Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section B.2.

### 1.    *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2.    *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity  interest, as the variations on this general rule are numerous and complex.

24

Exhibit 1
Page 41

**C.      Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit E.

**D.      Feasibility**

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

*1.      Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date.  Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibit F.

*2.      Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information.  Those projections are listed in Exhibit G.

The Plan Proponent's financial projections show that the Debtor will have an aggregate annual average cash flow, after paying operating expenses and post-confirmation taxes, of approximately $ 1.7 million. The final Plan payment is expected to be paid on or about December 31, 2011.

YOU SHOULD CONSULT WITH YOUR ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE PROJECTIONS.

25

Exhibit 1
Page 42

# V.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge of the Debtor**

On the confirmation date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code and as otherwise provided in this Plan, including in Section 12.05 thereof.  After the Effective Date of the Plan your claims against the Debtor and the Reorganized Debtor will be limited as specified in the preceding sentence.

**B.    Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**C.    Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

# VI.

## OTHER PLAN PROVISIONS

**A.    Settlement of Disputed Claims**

Prior to and after the Effective Date of the Plan, the Debtor and the Reorganized Debtor shall have the power and authority to settle and compromise a disputed Claim.  If the settlement of such disputed Claim will result in an allowed claim or value paid to the holder of such Claim in an amount less than $5,000, then the Debtor and the Reorganized Debtor may settle such Claim

26

Exhibit 1
Page 43

without further court approval; in all other cases, settlement of a disputed Claim shall require court

approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**B.    RCI Contributions**

In consideration, among other things, of the treatment afforded to Class 2 Claims under the

Plan, and solely to the extent necessary to make distributions required under the Plan, on the

Effective Date:  (a) RCI will either (in its sole and absolute discretion): (i) provide sufficient cash

to pay all Allowed Administrative Claims that exceed the Debtor's available cash on hand on the

effective date, in an amount not to exceed $150,000 (the "RCI Administrative Contribution Cap");

or (ii) assume all allowed and unpaid Administrative Claims that exceed the Debtor's available

cash on hand on the Effective Date of the Plan, up to the RCI Contribution Cap, which claims shall

be paid on terms agreed to by the Reorganized Debtor and the holder of such allowed and unpaid

Administrative Claims; and (b) as part of the settlement of RCI's claims against the Debtor, on the

Effective Date of the Plan, RCI may (in its sole and absolute discretion) subordinate or waive

payment of some or all of: (i) any unsecured deficiency claim; (ii) payments of any outstanding

priority section 503(b)(9) claims, (iii) payment of its Allowed Class 5 Claims; (iv) the amount to be

reimbursed by Debtor to RCI on account of the cash provided by RCI to RII to pay all Allowed

Administrative Claims that exceed the Debtor's available cash on hand up to the RCI Contribution

Cap; or (v) any post-petition credit advanced by RCI to RII (collectively (a) and (b), the "RCI

Contributions").

**C.    Exemption from Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange

of notes or equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien,

pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the

making or delivery of any deed or other instrument of transfer under the Plan, will not be subject to

any stamp tax or other similar tax.

27

Exhibit 1
Page 44

**D.      Exculpation, Releases, Discharge and Injunctions**

*The Plan provides for customary exculpation, releases, discharge and injunctions for the Debtor and those working in concert with the Debtor, creditors and plan supporters to make possible the distributions provided for under the Plan.  The Plan provides for the following:*

*(a)      Exculpation.  From and after the Effective Date, the Released Parties, as set forth in the Plan, shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating or implementing the Plan, the Disclosure Statement, or any of the transactions contemplated under the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or administration of the Plan, the property to be distributed under the Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Case; provided, however, that this section shall not apply to (i) obligations under, and the contracts, instruments, releases, agreements, and documents delivered, reinstated or assumed under the Plan, Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

*(b)      Releases by the Debtor.  As of the Confirmation Date, but subject to occurrence of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, the Reorganized Debtor, and any person seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor to the Debtor or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Released Parties of and from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities of*

28

Exhibit 1
Page 45

*any nature whatsoever (other than for gross negligence, willful misconduct, intentional fraud, or*

*criminal conduct as determined by a Final Order) in connection with or related to the Debtor,*

*the Chapter 11 Case, or the Plan (other than the rights of the Reorganized Debtor to enforce the*

*Plan and the contracts, instruments, indentures, and other agreements or documents delivered*

*or assumed thereunder), whether liquidated or unliquidated, fixed or contingent, matured or*

*unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in*

*law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event,*

*or other occurrence taking place on or prior to the Effective Date in any way relating to the*

*Debtor, the Reorganized Debtor, the Chapter 11 Case, or the Plan, and that may be asserted by*

*or on behalf of the Debtor or the Reorganized Debtor against the Released Parties; provided,*

*however, that nothing in Section 12.04 and 12.05 of the Plan shall be deemed to prohibit the*

*Debtor or the Reorganized Debtor from asserting and enforcing any Claims, obligations, suits,*

*judgments, demands, debts, rights, causes of action or liabilities they may have against any*

*employee (other than any director or officer) that is based upon an alleged breach of a*

*confidentiality, non-compete or any other contractual or fiduciary obligation owed to the Debtor*

*through the Effective Date.*

*(c)    Releases by Holders of Claims and Equity Interests. As of the Effective Date, for*

*good and valuable consideration, the adequacy of which is hereby confirmed, (i) each Holder of*

*a Claim that votes in favor of the Plan, or is deemed to accept the Plan, or abstains from voting*

*on the Plan and (ii) to the fullest extent permissible under applicable law, as such law may be*

*extended or integrated after the Effective Date, each Holder of a Claim or Equity Interest that*

*does not vote to accept the Plan or is deemed to reject the Plan, as applicable, shall and shall be*

*deemed to completely and forever release, waive, void, extinguish and discharge unconditionally*

*each of the Released Parties, from any and all Claims, obligations, suits, judgments, damages,*

*demands, debts, rights, causes of action and liabilities whatsoever in connection with or related*

*to the Debtor, the Chapter 11 Case, or the Plan whether liquidated or unliquidated, fixed or*

*contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or*

29

Exhibit 1
Page 46

*thereafter arising, in law, equity or otherwise, that are based in whole or part on any act,*

*omission, transaction, event, or other occurrence taking place on or prior to the Effective Date*

*in any way relating to the Debtor, the Reorganized Debtor, the Chapter 11 Case, or the Plan.*

    *(d)    Injunction Related to Exculpation and Releases.  As of the Effective Date, (i) all*

*Persons that hold, have held or may hold a Claim or any other obligation, suit, judgment,*

*damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any*

*Equity Interest or other right of a Holder of an Equity Interest, relating to the Debtor, or the*

*Reorganized Debtor or any of their respective assets, property and/or Estate that is released or*

*enjoined pursuant to Section 12.04 and 12.05 of the Plan and (ii) all other parties in interest in*

*this Chapter 11 Case are, and shall be, permanently, forever and completely stayed, restrained,*

*prohibited, barred and enjoined from taking any of the following actions against any Released*

*Party or its property on account of such released liabilities, whether directly or indirectly,*

*derivatively or otherwise, on account of or based on the subject matter of such discharged*

*Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action*

*or liabilities, and of all Equity Interests or other rights of a Holder of an Equity Interest: (i)*

*commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or*

*other proceeding (including, without limitation, any judicial, arbitral, administrative or other*

*proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any*

*prejudgment attachment), collecting, or in any way seeking to recover any judgment, award,*

*decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or*

*indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or*

*subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount*

*against any liability or obligation that is discharged under Sections 9.01 and 12.04  of the Plan;*

*and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or*

*administrative proceeding in any forum, that does not comply with or is inconsistent with the*

*provisions of the Plan or the Confirmation Order.*

30

Exhibit 1
Page 47

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*(e)      Discharge of Claims and Termination of Equity Interests.  As of the Effective Date, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Equity Interests of any nature whatsoever against the Debtor or its Estate, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests.  On the Effective Date, the Debtor shall be deemed discharged and released under Section 1141(d)(l)(A) of the Bankruptcy Code from any and all Claims and Equity Interests, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the Equity Interests shall be terminated.*

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

31

Exhibit 1
Page 48

*As of the Effective Date, except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities shall be precluded from asserting against the Debtor or the Reorganized Debtor and their respective assets, property and/or Estate, any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a Holder of an Equity Interest, relating to the Debtor or Reorganized Debtor or any of their respective assets, property and/or Estate, based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and any Equity Interest or other rights of a Holder of an Equity Interest and termination of all rights of any Holder of an Equity Interest in the Debtor pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtor or the Reorganized Debtor, or any of their respective assets, property and/or Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated Equity Interest in the Debtor.*

_____

[Signature of the Plan Proponent]

_____

[Signature of the Attorney for the Plan Proponent]

32

Exhibit 1
Page 49

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**
Copy of Proposed Plan of Reorganization

34

Exhibit 1
Page 50

Scott F. Gautier (State Bar No. 211742)
*sgautier@pwkllp.com*
Lauren Gans (State Bar No. 247542)
*lgans@pwkllp.com*
PEITZMAN, WEG & KEMPINSKY LLP
2029 Century Park East, Suite 3100
Los Angeles, CA  90067
Telephone: (310) 552-3100
Facsimile: (310) 552-3101

Proposed Attorneys for
Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>RITZ INTERACTIVE, INC.,<br>a Delaware corporation<br><br>      Debtor and Debtor-in-Possession. | Case No.: 8:11-bk-21690-ES<br><br>Chapter 11<br><br>**DEBTOR'S PLAN OF REORGANIZATION,<br>DATED AS OF SEPTEMBER 20, 2011** |

Exhibit 1
Page 51

1

**TABLE OF CONTENTS**

2 | ARTICLE I.  SUMMARY ................................................................................. 1

3 | ARTICLE II.  CLASSIFICATION OF CLAIMS AND INTERESTS ............................. 1

4 | 2.01    Class 1 ...................................................................................... 1

5 | 2.02    Class 2 ...................................................................................... 1

6 | 2.03    Class 3 ...................................................................................... 1

7 | 2.04    Class 4 ...................................................................................... 2

8 | 2.05    Class 5 ...................................................................................... 2

9 | 2.06    Class 6 ...................................................................................... 2

10 | 2.07    Class 7 ...................................................................................... 2

11 | ARTICLE III  .  TREATMENT OF ADMINISTRATIVE EXPENSE
CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS ................. 2

12 | 3.01    Unclassified Claims. ...................................................................... 2

13 | 3.02    Administrative Expense Claims........................................................ 2

14 | 3.03    Priority Tax Claims....................................................................... 3

15 | 3.04    United States Trustee Fees ............................................................. 3

16 | ARTICLE IV  .  TREATMENT OF CLAIMS AND INTERESTS UNDER
THE PLAN ................................................................................................. 3

18 | ARTICLE V.  ALLOWANCE AND DISALLOWANCE OF CLAIMS ........................ 6

19 | 5.01    Disputed Claim.. .......................................................................... 6

20 | 5.02    Delay of Distribution on a Disputed Claim.. ..................................... 6

21 | 5.03    Settlement of Disputed Claims. ...................................................... 6

22 | ARTICLE VI  .  PROVISIONS FOR EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ................................................................................ 6

23 | 6.01    Assumed Executory Contracts and Unexpired Leases. ...................... 6

24 | ARTICLE VII.  MEANS FOR IMPLEMENTATION OF THE PLAN ........................ 7

25 | 7.01    Effect of Distribution to Creditors.. ................................................ 7

26 | 7.02    Sources of Consideration for Plan Distributions. ............................... 7

27 | 7.03    RCI Contributions.:...................................................................... 7

28

i

Exhibit 1
Page 52

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7.04    Issuance and Distribution of the Reorganized Debtor Equity Interests. .................. 8

7.05    Section 1145 Exemption. ................................................................................. 8

7.06    Corporate Existence. ..................................................................................... 9

7.07    Vesting of Assets in the Reorganized Debtor. ................................................ 9

7.08    Cancellation of Equity Securities and Related Obligations ........................... 9

7.09    Corporate Action. ....................................................................................... 10

7.10    Effectuating Documents, Further Transactions. .......................................... 10

7.11    Exemption from Certain Transfer Taxes and Recording Fees. ..................... 10

7.12    Management of the Reorganized Debtor. ..................................................... 11

ARTICLE VIII.  GENERAL PROVISIONS ........................................................... 11

8.01    Definitions and Rules of Construction. ....................................................... 11

8.02    Effective Date of Plan. ............................................................................... 14

8.03    Severability. .............................................................................................. 14

8.04    Binding Effect. .......................................................................................... 14

8.05    Captions. ................................................................................................... 14

8.06    Controlling Effect. ..................................................................................... 14

8.07    Corporate Governance. .............................................................................. 14

ARTICLE IX  .  DISCHARGE ............................................................................. 15

9.01.    Discharge. ................................................................................................ 15

ARTICLE X.  DISTRIBUTIONS AND DISPUTED CLAIMS ............................... 15

10.01    Distributions. ........................................................................................... 15

10.02    Date of Distributions. ............................................................................... 15

10.03    Postpetition Interest on Claims. ................................................................ 15

10.04    Disbursing Agent. .................................................................................... 15

10.05    Powers of Disbursing Agent. .................................................................... 16

10.06    Delivery of Distributions. ......................................................................... 16

10.07    Setoffs. ..................................................................................................... 16

10.08    Objections to Claims. ............................................................................... 16

ii

Exhibit 1
Page 53

10.09    Payments and Distributions with Respect to Disputed Claims................................ 17

10.10    Estimation of Claims......................................................................................... 17

10.11    Distributions Relating to Disputed Claims.. ........................................................ 17

10.12    Distributions after Allowance. ........................................................................... 17

10.13    Preservation of Rights to Settle Claims. ............................................................. 18

10.14    Disallowed Claims.. .......................................................................................... 18

ARTICLE XI  .  CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................ 18

11.01    Conditions to Effective Date............................................................................. 18

ARTICLE XII.  EFFECT OF CONFIRMATION .................................................... 19

12.01    Compromise of Controversies. .......................................................................... 19

12.02    Binding Effect. ................................................................................................. 19

12.03    Vesting of Assets.. ............................................................................................ 19

12.04    Exculpation, Releases and Discharge. ................................................................ 20

12.05    Injunction. ....................................................................................................... 24

12.06    Retention of Causes of Action/Reservation of Rights. ......................................... 24

12.07    Waiver of Section 547 Claims. ........................................................................... 25

12.08    Solicitation of this Plan. .................................................................................... 25

12.09    Retention of Jurisdiction. .................................................................................. 26

ARTICLE XIII.  MISCELLANEOUS PROVISIONS ............................................... 28

13.01    Cramdown.. ...................................................................................................... 28

13.02    Dissolution of Statutory Committee of Unsecured Creditors. ............................... 28

13.03    Substantial Consummation.. .............................................................................. 28

13.04    Amendments. ................................................................................................... 28

13.05    Effectuating Documents and Further Transactions................................................ 29

13.06    Revocation or Withdrawal of this Plan. ............................................................... 29

13.07    Severability.. .................................................................................................... 29

13.08    Time.. .............................................................................................................. 29

13.09    Binding Effect.. ................................................................................................ 30

iii

Exhibit 1
Page 54

13.10   Notices.. ........................................................................................... 30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

Exhibit 1
Page 55

**ARTICLE I**

**SUMMARY**

This Plan of Reorganization (the "<u>Plan</u>") under chapter 11 of the Bankruptcy Code (the "<u>Code</u>") proposes to pay creditors of Ritz Interactive, Inc. (the "<u>Debtor</u>" or "<u>Plan Proponent</u>") from its cash on hand, cash flow from operations, certain contributions described herein and future income.  This Plan provides for 2 classes of secured claims; 2 classes of unsecured claims; and 2 classes of equity security holders.  Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at 20 cents on the dollar, except for those creditors in the convenience class who may receive up to 100 cents on the dollar, except for certain claims that may be voluntarily subordinated.  This Plan also provides for the payment of administrative and priority claims in full on the Effective Date of this Plan with respect to any such claim, except that professionals appointed in the case shall be required to file a fee application and have their fees approved by the Court before their administrative claims are paid.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.01    <u>Class 1</u>.  All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02    <u>Class 2</u>.  The Allowed Claim of Ritz Camera & Image, LLC ("<u>RCI</u>"), to the extent allowed as a secured claim under § 506 of the Code.

2.03    <u>Class 3</u>.  The Allowed Claims of any creditors, other than RCI, that hold a claim that is allowed as a secured claim under § 506 of the Code ("<u>Other Secured Claims</u>").

**1**

Exhibit 1
Page 56

2.04    Class 4.  All Allowed unsecured Claims either : (a) of a creditor that holds Allowed unsecured Claims, in an aggregate amount, that are equal to or less than $15,000; or (b) of a creditor that voluntarily agrees to reduce the aggregate amount of Allowed unsecured Claims held by such creditor to $15,000, which claims have been allowed under § 502 of the Code ("Convenience Class Claims").  For the purpose of determining whether a creditor's claims are placed in Class 4, the "aggregate claims" of every creditor shall include all outstanding unsecured claims on the Petition Date that originated as owing from the Debtor to such creditor whether such claims have been transferred or assigned before or after the Petition Date.

2.05    Class 5.  All Allowed unsecured Claims that are not Convenience Class Claims allowed under § 502 of the Code ("General Unsecured Claims").

2.06    Class 6.  All equity interests of the Debtor that have been converted or reduced to claims for a sum certain prior to the Petition Date allowed under § 502 of the Code ("Converted Equity Interests").

2.07    Class 7.  Equity interests of the Debtor not classified in Class 6.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims.

(a) Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Reorganized Debtor.

(b) Notwithstanding anything in (a) above, an estimate of professional fees shall be provided by the Reorganized Debtor (in an amount not to exceed the Debtor's cash on hand on the Effective Date plus the RCI Contribution Cap) on the Effective Date until such fees are paid to professionals and (i) professionals appointed in the case shall be required to file a fee application within 30 days of the Effective Date and have their fees approved by the Court before

2

Exhibit 1
Page 57

their administrative claims are paid and (ii) all other holders of an administrative expense claim must file a request for payment of their administrative expense claim by no later than 14 days before the Plan confirmation hearing, with the hearing set for the same date and time as the Plan confirmation hearing.

       3.03    <u>Priority Tax Claims</u>.  Each holder of an Allowed priority tax claim will be paid either in cash on the Effective Date of this Plan, or, at the election of the Reorganized Debtor, on such other terms of treatment consistent with § 1129(a)(9)(C) of the Code, which alternate terms, if any, shall be set forth in any order approving confirmation of this Plan.

       3.04    <u>United States Trustee Fees</u>.  All fees required to be paid by 28 U.S.C. §1930(a)(6) ("<u>U.S. Trustee Fees</u>") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.  Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.  Thereafter all U.S. Trustee Fees will be timely paid by the Reorganized Debtor.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

       4.01    Claims and interests shall be treated as follows under this Plan:

| CLASS | IMPAIRMENT | TREATMENT |
| --- | --- | --- |
| Class 1 - Priority Claims | Unimpaired | Class 1 is unimpaired by this Plan, and deemed to accept the Plan.  Each Holder of an Allowed Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date, or the date on which such claim is allowed by a final non-appealable order. |
| Class 2 – Secured Claim of RCI | Impaired | Class 2 is impaired by this Plan and entitled to vote.  The Holder of the Allowed Class 2 Claim shall receive, on account of its Class 2 Claim and the RCI Contributions as are set |

3

Exhibit 1
Page 58

| | | |
|---|---|---|
| | | forth in this Plan, in complete satisfaction of all Class 2 Claims, 100% of the equity interests in the Reorganized Debtor. |
| Class 3 – Other Secured Claims | Unimpaired | Class 3 is unimpaired by this Plan and deemed to accept the Plan.  On the Effective Date, the Reorganized Debtor will either (i) assume any valid and allowed obligations owed to any Holder of an allowed Class 3 Claim or (ii) shall surrender the collateral subject to any valid first-priority liens (after giving effect to the Plan and any discharges thereunder) to the lien holder of the particular allowed Class 3 Claim. |
| Class 4 – Unsecured Convenience Class Claims | Impaired | Class 4 is impaired under this Plan and entitled to vote.  Each Holder of a Class 4 Claim shall receive cash payments from the Reorganized Debtor equal to the full amount of its Class 4 claim (but in no event more than $15,000) no later than the later of (a) 60 days from the Effective Date of this Plan and (b) the time at which such obligations would have been due and payable pursuant to any agreement between the holder of such claim and the Debtor. |
| Class 5 – General Unsecured Claims | Impaired | Class 5 is impaired under this Plan and entitled to vote.  Class 5 shall be treated as follows:<br>(i)     if Class 5 accepts this Plan, then each holder of a Class 5 Claim shall receive, |

4

Exhibit 1
Page 59

| | | |
|---|---|---|
| | | in complete satisfaction of its allowed Class 5 Claim, a *pro rata* portion of an aggregate cash payment of $100,000 to all such holders of Class 5 Claims on the Effective Date of this Plan; (ii) otherwise, each holder of a Class 5 Claim shall receive no distributions under this Plan on account of any Class 5 Claim. |
| Class 6 – Converted Equity Security Interests | Impaired | Class 6 is impaired under this Plan and all equity interests and claims of each holder of a Class 6 Interest shall be cancelled on the Effective Date of this Plan. Holders of Class 6 Interests shall neither receive any distribution nor retain any interests on account of their Class 6 Interest under this Plan. Class 6 is deemed to reject the Plan, and is not entitled to vote. |
| Class 7 – Equity Interests | Impaired | Class 7 is impaired under this Plan and all equity interests of each holder of a Class 7 Interest shall be cancelled on the Effective Date of this Plan. Holders of Class 7 Interests shall neither receive any distribution nor retain any interests on account of their Class 7 Interest under this Plan. Class 7 is deemed to reject the Plan, and is not entitled to vote. |

5

Exhibit 1
Page 60

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim.  A "Disputed Claim" is a Claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed Filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been Filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated.  If no proof of claim has been Filed by the Claims Bar Date, a Disputed Claim shall be forever discharged on the Effective Date.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a Disputed Claim unless such claim is allowed by a Final Order.

5.03    Settlement of Disputed Claims.  The Debtor and the Reorganized Debtor shall have the power and authority to settle and compromise a Disputed Claim.  If the settlement of such Disputed Claim will result in an allowed Claim or value paid to the holder of such Claim in an amount less than $5,000, then the Debtor and the Reorganized Debtor may settle such Claim without further court approval; in all other cases, settlement of a Disputed Claim shall require court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VI**

**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    Unless either (i) previously rejected pursuant to an order of the court or (ii) a motion to reject such executory contract or lease has been filed by the Debtor prior to the Effective Date of this Plan, the Debtor assumes all of the executory contracts and/or unexpired leases to which the Debtor is a party, effective upon the Effective Date of this Plan as provided in Article VII.

(b)    A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than the later of (i) 30 days after the date of the order confirming this Plan and (ii) 15 days after the Effective Date of this Plan.

6

Exhibit 1
Page 61

(c)　　All insurance policies pursuant to which the Debtor has any obligations in effect as of the date of the Confirmation Order shall be deemed and treated as executory contracts pursuant to this Plan and shall be assumed and shall continue in full force and effect on and after the Effective Date and shall revest in the Reorganized Debtor.

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

7.01　　Effect of Distribution to Creditors.  Except as specifically provided herein, all Plan distributions made to Creditors holding Allowed Claims in any Class are intended to be and shall be final.

7.02　　Sources of Consideration for Plan Distributions.  Except as otherwise provided in this Plan or the Confirmation Order, all consideration necessary for the Reorganized Debtor to make payments pursuant to this Plan shall be obtained from the existing cash balances of the Debtor, the operations of the Debtor or the Reorganized Debtor and from the RCI Contributions, as defined herein.

7.03　　RCI Contributions.  In consideration, among other things, of the treatment afforded to Class 2 Claims under this Plan, and solely to the extent necessary to make distributions required under this Plan, on the Effective Date of this Plan:

(a)　　RCI will either (in its sole and absolute discretion): (i) provide sufficient cash to pay all Allowed Administrative Claims that exceed the Debtor's available cash on hand, in an amount not to exceed $150,000 (the "RCI Contribution Cap"); or (ii) assume all allowed and unpaid Administrative Claims that exceed the Debtor's available cash on hand on the Effective Date of this Plan, up to the RCI Contribution Cap, which Claims shall be paid on terms agreed to by RCI and the holder of such allowed and unpaid Administrative Claim; and

(b)　　as part of the settlement of RCI's Claims against the Debtor, on the Effective Date of this Plan, RCI may (in its sole and absolute discretion) subordinate or waive payment of some or all of: (i) any unsecured deficiency claim; (ii) payments of any outstanding priority section 503(b)(9) claims, (iii) payment of its Allowed Class 5

7

Exhibit 1
Page 62

Claims; (iv) the amount to be reimbursed by Debtor to RCI on account of the cash provided by RCI to RII to pay all Allowed Administrative Claims that exceed the Debtor's available cash on hand on the Effective Date up to the RCI Contribution Cap; or (v) any post-petition credit advanced by RCI to RII (collectively (a) and (b), the "RCI Contributions").

7.04    Issuance and Distribution of the Reorganized Debtor Equity Interests. On the Effective Date or promptly thereafter, the Reorganized Debtor shall issue the Reorganized Debtor Equity Interests to the holder of the Class 2 Claims or its designee. The Reorganized Debtor Equity Interests, when issued or distributed as provided in this Plan, will be duly authorized, validly issued, and, if applicable, fully paid and non-assessable. Each distribution and issuance shall be governed by the terms and conditions set forth in this Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

7.05    Section 1145 Exemption. Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities contemplated by this Plan and any and all settlement agreements incorporated therein, including the Reorganized Debtor Equity Interests, shall, to the fullest extent permitted by applicable law, be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities. In addition, under section 1145 of the Bankruptcy Code any Securities contemplated by this Plan, including the Reorganized Debtor Equity Interests will be freely tradable and transferable by the recipients thereof, subject to (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (ii) the restrictions, if any, on the transferability of such Securities and instruments set forth in the Stockholders Agreement; and (iii) applicable regulatory approval.

8

Exhibit 1
Page 63

7.06    <u>Corporate Existence</u>.  Except as otherwise provided in this Plan, the Debtor shall be replaced entirely and only the Reorganized Debtor shall exist after the Effective Date and the Reorganized Debtor shall be a Delaware limited liability company that shall exist and operate in accordance with its Operating Agreement.

7.07    <u>Vesting of Assets in the Reorganized Debtor</u>.  Except as otherwise provided in this Plan or any agreement, instrument, or other document incorporated herein, on the Effective Date, all property of the Estate, all Causes of Action, and any property acquired by the Debtor pursuant to this Plan shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

7.08    <u>Cancellation of Equity Securities and Related Obligations</u>.  On the Effective Date, except as otherwise specifically provided for in this Plan: (1) any certificate, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such certificates, notes, other instruments or documents evidencing indebtedness or obligations of the Debtor that are Reinstated pursuant to this Plan), shall be cancelled and the Reorganized Debtor shall not have any continuing obligations thereunder; and, (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Debtor's former equity interests and any other certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements or certificates, notes or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated or assumed by the Reorganized Debtor pursuant to this Plan) shall be released and discharged; provided, however, that notwithstanding confirmation of

9

Exhibit 1
Page 64

the Plan, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of allowing Holders to receive distributions under this Plan and governing the rights and obligations of non-Debtor parties to such agreements vis-à-vis each other; provided, further, however, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or this Plan, or result in any expense or liability to the Reorganized Debtor.

7.09    Corporate Action.  On the Effective Date, the conversion of the Reorganized Debtor to a Delaware limited liability company, the filing of its Operating Agreement, and each of the matters provided for by this Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided in this Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Interests, directors of the Debtor, or any other entity.  Without limiting the foregoing, such actions shall include the adoption and filing of the Reorganized Debtor's Certificate of Conversion and its Operating Agreement.

7.10    Effectuating Documents, Further Transactions.  On and after the Effective Date, the Reorganized Debtor, and the officers and members of the boards of directors (or other governing bodies) thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan and the securities issued pursuant to this Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required pursuant to this Plan.

7.11    Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, the transfer from the Debtor to the Reorganized Debtor or to any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in

10

Exhibit 1
Page 65

the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, or recording

of any mortgage, deed of trust, or other security interest, or the securing of additional

indebtedness by such or other means; (3) the making, assignment, or recording of any lease or

sublease; or (4) the making, delivery, or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, this Plan, including any deeds, bills of sale,

assignments, or other instrument of transfer executed in connection with any transaction arising

out of, contemplated by, or in any way related to this Plan, shall not be subject to any document

recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate

transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or

recording fee, or other similar tax or governmental assessment, and the appropriate state or local

governmental officials or agents shall forego the collection of any such tax or governmental

assessment and to accept for filing and recordation any of the foregoing instruments or other

documents without the payment of any such tax or governmental assessment.

     7.12   <u>Management of the Reorganized Debtor</u>.  On the Effective Date, the Reorganized

Debtor shall exist as a Delaware limited liability company which shall have RCI as its sole

member.

**ARTICLE VIII**

**GENERAL PROVISIONS**

     8.01   <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction

set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code

are used in this Plan, and they are supplemented by the following definitions:

        a.  **Allowed Claim** – means, except as otherwise provided herein or by Final Order

of the Bankruptcy Court, a Claim, proof of which was timely and properly Filed

or, if no proof of claim was Filed, which has been or hereafter is listed by the

Debtor on its schedules as liquidated in amount and not disputed or contingent,

and, in either case, as to which no objection to the allowance thereof, or request

for estimation, has been interposed, and that is not otherwise a Disputed Claim.

11

Exhibit 1
Page 66

b.  **Affiliate** – means, as to any Person, any other Person which, directly or indirectly, controls, or is controlled by, or is under common control with, such Person (for this purpose "control" (including with its correlative meanings, "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of a Person, whether through the ownership of securities or partnership or other ownership interests, by contract or otherwise).

c.  **Avoidance Actions** – causes of action arising under, or that are authorized by, chapter 5 of title 11 of the United States Code.

d.  **Business Day** – means any day which is not a Saturday, a Sunday, or a "legal holiday" as defined in Bankruptcy Rule 9006(a).

e.  **Chapter 11 Case** – the Debtor's bankruptcy case, referenced in the caption to this Plan.

f.  **Claim** – has the meaning ascribed to such term under the Bankruptcy Code.

g.  **Classes** – means any class of Claim or Interest under the Plan.

h.  **Code** – when used without capitalized reference to another title or section of the United States Code, shall be read to refer to title 11 of the United States Code.

i.  **Confirmation Date** – the date on which the Court enters an order confirming this Plan.

j.  **Confirmation Order** – the Order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Code.

k.  **Creditors' Committee** – a statutorily appointed committee of unsecured creditors, if any, appointed pursuant to section 1102(a) of the Code.

l.  **Debtor** – Ritz Interactive, Inc.

m.  **Disbursing Agent** – means the Reorganized Debtor.

n.  **Disclosure Statement** – means the Disclosure Statement to Debtor's Plan Of Reorganization, Dated as of September 20, 2011.

12

Exhibit 1
Page 67

o.  **Distribution(s)** – means the cash (or other value) to be distributed to holders of allowed Administrative Expense Claims and Allowed Claims under (and in accordance with) this Plan.

p.  **Effective Date** – has the meaning set forth in Section 8.02 of this Plan.

q.  **Entity** – means any Person, estate, trust, governmental unit, and United States trustee.

r.  **Equity Interest** – an interest in a equity security of the Debtor.

s.  **Estate** – the estate created pursuant to section 541(a) of the Code.

t.  **File, Filed, Files,** or **Filing** – means properly and timely filed with the Bankruptcy Court in the Chapter 11 Case, as reflected on the official docket of the Bankruptcy Court for the Chapter 11 Case, and served on Persons, as such filing and service are required pursuant to the Bankruptcy Code, Bankruptcy Rules and/or order of the Bankruptcy Court.

u.  **Final Order** – an order from which no further appeal is permitted as of right.

v.  **Holder** – means an Entity holding a Claim against, or Equity Interest in, the Debtor.

w.  **Petition Date** – August 19, 2011.

x.  **Person** – means any individual, corporation, limited liability company, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or other Entity.

y.  **Professional** –an Entity that has been employed in this Chapter 11 Case pursuant to section 327 of the Code.

z.  **RCI** – Ritz Camera & Imaging, LLC

aa. **RCI Contributions** – has the meaning set forth in Section 7.03 of this Plan.

bb. **RCI Contribution Cap** – has the meaning set forth in Section 7.03 of this Plan.

13

Exhibit 1
Page 68

cc. **Released Parties** – means (a) the Debtor, (b) RCI, (c) the Reorganized Debtor, and (d) any present or former director, manager, officer, member, partner (and their respective Affiliates), agent, representative, counsel or financial advisor of the Persons or parties described in clauses (a) through (d) hereof or any Affiliate thereof.

dd. **Reorganized Debtor** – means the Entity under the Plan in which all of assets of the Debtor's Estate shall vest.

8.02    Effective Date of Plan. The Effective Date of this Plan is the first Business Day (a) on which no stay of the Confirmation Order is in effect and (b) that is at least one (1) Business Day after the date on which the conditions specified in Section 11.01 of the Plan have been satisfied or waived by the Debtor and RCI.

8.03    Severability.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07    Corporate Governance.  The Reorganized Debtor shall operate in accordance with its Operating Agreement.

///

///

///

14

Exhibit 1
Page 69

**ARTICLE IX**

**DISCHARGE**

9.01.  Discharge.  On the confirmation date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d)(1)(A) of the Code and as otherwise provided in this Plan, including in Section 12.04 hereof.

**ARTICLE X**

**DISTRIBUTIONS AND DISPUTED CLAIMS**

10.01  Distributions.   As of the close of business on the Effective Date, the Reorganized Debtor shall not be responsible for recognizing any further changes in the record holders of any of the Claims or Equity Interests. The Debtor or the Reorganized Debtor shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Effective Date.

10.02  Date of Distributions.  Except as otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

10.03  Postpetition Interest on Claims.  Except as specifically provided in this Plan, no interest shall accrue on or after the Petition Date on any Claims.

10.04  Disbursing Agent.  All distributions hereunder shall be made by the Reorganized Debtor (or such other entity designated by the Reorganized Debtor), as Disbursing Agent, on or after the Effective Date, as otherwise provided herein.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that the Disbursing Agent is so ordered, all costs and expenses of procuring any such bond or surety shall be deducted from the amount payable to the holders of Class 5 Claims.

15

Exhibit 1
Page 70

10.05  <u>Powers of Disbursing Agent</u>.  The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder, (ii) make all distributions contemplated hereby, and (iii) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to this Plan.

10.06  <u>Delivery of Distributions</u>.  Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made to the Disbursing Agent, who shall transmit such distribution to the applicable holders of Allowed Claims.  In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one (1) year from the Effective Date, after such date, all unclaimed property or interest in property shall revert to the Reorganized Debtor and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

10.07  <u>Setoffs</u>.  The Debtor and the Reorganized Debtor may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the holder of such Claim but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claim the Debtor or the Reorganized Debtor may have against the holder of such Claim.

10.08  <u>Objections to Claims</u>.  On and after the Effective Date, the Reorganized Debtor shall be entitled to and have the sole right to file objections to all Claims.  Any objections to claims shall be served and filed on or before the earlier of (i) sixty (60) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court.

16

Exhibit 1
Page 71

10.09    <u>Payments and Distributions with Respect to Disputed Claims</u>.    Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such claim unless and until such Disputed Claim becomes an Allowed Claim, except as otherwise permitted under this Plan.

10.10    <u>Estimation of Claims</u>.    The Debtor and the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent Claim or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection and make distributions under this Plan with respect to other Allowed Claims in the same class after making an appropriate reserve based on the estimated amount of such Disputed or contingent Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.

10.11    <u>Distributions Relating to Disputed Claims</u>.    At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, such holder's pro rata portion of the property distributable with respect to the Class in which such Claim belongs. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the holders of Allowed Claims in the same class.

10.12    <u>Distributions after Allowance</u>.    To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a

17

Exhibit 1
Page 72

Final Order, the Disbursing Agent shall provide to the holder of such Claim, the distribution to which such holder is entitled hereunder.

10.13   Preservation of Rights to Settle Claims.  In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its estate may hold against any person or entity without the approval of the Bankruptcy Court, the Confirmation Order and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. The Reorganized Debtor or its successor(s) may pursue such retained claims, rights, or causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Reorganized Debtor or its successor(s) who hold such rights.

10.14   Disallowed Claims.   All Claims held by persons or entities against whom the Debtor or the Reorganized Debtor has commenced a proceeding asserting a cause of action under sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code (other than those claims, causes of action and/or right to recover any avoided or avoidable transfer have been waived pursuant to this Plan) shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and shall continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order and any sums due to the Debtor or the Reorganized Debtor from such party have been paid.

**ARTICLE XI**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

11.01   Conditions to Effective Date.

(i)      The Confirmation Order shall be entered on the docket of the Bankruptcy Court for at least fourteen (14) days (as calculated in accordance with Bankruptcy Rule 9006(a)).

(ii)      the Confirmation Order, in form and substance satisfactory to the Debtor and the Holder of Class 2 Claims shall have been entered and shall be in full force and effect and there shall not be a stay or injunction in effect with respect thereto;

18

Exhibit 1
Page 73

(iii)    all actions, documents, and agreements necessary to implement this Plan, including, without limitation, all actions, documents, and agreements necessary to implement this Plan shall have been effected or executed in form and substance acceptable to the Holder of Class 2 Claims;

(iv)    the Debtor shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents necessary to implement this Plan and that are required by law, regulation, or order.

## ARTICLE XII.

### EFFECT OF CONFIRMATION

12.01    <u>Compromise of Controversies</u>.  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises and settlement provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlement are in the best interests of the Estate, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.

12.02    <u>Binding Effect</u>.  Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

12.03    <u>Vesting of Assets</u>.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's estate shall vest in the Reorganized Debtor

19

Exhibit 1
Page 74

free and clear of all Claims, liens, encumbrances, charges, and other interests.  The Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

12.04   Exculpation, Releases and Discharge.

(a)      Exculpation.  From and after the Effective Date, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating or implementing this Plan, the Disclosure Statement, or any of the transactions contemplated under this Plan, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan, or administration of this Plan, the property to be distributed under this Plan, or any other act taken or omitted to be taken in connection with or in contemplation of the Chapter 11 Case; provided, however, that this section shall not apply to (i) obligations under, and the contracts, instruments, releases, agreements, and documents delivered, reinstated or assumed under this Plan, Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b)      Releases by the Debtor.  As of the Confirmation Date, but subject to occurrence of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, the Reorganized Debtor, and any person seeking to exercise the rights of the Debtor's estate, including, without limitation, any successor to the Debtor or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy

20

Exhibit 1
Page 75

1   Code, shall and shall be deemed to, completely and forever release, waive, void, extinguish and

2   discharge unconditionally each and all of the Released Parties of and from any and all Claims,

3   obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities of

4   any nature whatsoever (other than for gross negligence, willful misconduct, intentional fraud, or

5   criminal conduct as determined by a Final Order) in connection with or related to the Debtor,

6   the Chapter 11 Case, or this Plan (other than the rights of the Reorganized Debtor to enforce this

7   Plan and the contracts, instruments, indentures, and other agreements or documents delivered or

8   assumed thereunder), whether liquidated or unliquidated, fixed or contingent, matured or

9   unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in

10   law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event,

11   or other occurrence taking place on or prior to the Effective Date in any way relating to the

12   Debtor, the Reorganized Debtor, the Chapter 11 Case, or this Plan, and that may be asserted by

13   or on behalf of the Debtor or the Reorganized Debtor against the Released Parties; provided,

14   however, that nothing in this Section 12.04(b) shall be deemed to prohibit the Debtor or the

15   Reorganized Debtor from asserting and enforcing any Claims, obligations, suits, judgments,

16   demands, debts, rights, causes of action or liabilities they may have against any employee (other

17   than any director or officer) that is based upon an alleged breach of a confidentiality, non-

18   compete or any other contractual or fiduciary obligation owed to the Debtor through the

19   Effective Date.

20          (c)       Releases by Holders of Claims and Equity Interests. As of the Effective

21   Date, for good and valuable consideration, the adequacy of which is hereby confirmed, (i) each

22   Holder of a Claim that votes in favor of this Plan, or is deemed to accept this Plan, or abstains

23   from voting on the Plan and (ii) *to the fullest extent permissible under applicable law, as such*

24   *law may be extended or integrated after the Effective Date*, each Holder of a Claim or Equity

25   Interest that does not vote to accept this Plan or is deemed to reject this Plan, as applicable, shall

26   and shall be deemed to completely and forever release, waive, void, extinguish and discharge

21

Exhibit 1
Page 76

unconditionally each of the Released Parties, from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtor, the Chapter 11 Case, or this Plan whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Reorganized Debtor, the Chapter 11 Case, or this Plan.

(d)    <u>Injunction Related to Exculpation and Releases</u>.  As of the Effective Date, (i) all Persons that hold, have held or may hold a Claim or any other obligation, suit, judgment, damages, debt, right, remedy, causes of action or liability of any nature whatsoever, or any Equity Interest or other right of a Holder of an Equity Interest, relating to the Debtor, or the Reorganized Debtor or any of their respective assets, property and/or Estate that is released or enjoined pursuant to this Section 12.04(d) of the Plan and (ii) all other parties in interest in this Chapter 11 Case are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Equity Interests or other rights of a Holder of an Equity Interest: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any lien; (iv) setting off, seeking reimbursement or contributions from, or

22

Exhibit 1
Page 77

1    subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount

2    against any liability or obligation that is discharged under Section 9.01 and 12.04 of this Plan;

3    and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or

4    administrative proceeding in any forum, that does not comply with or is inconsistent with the

5    provisions of the Plan or the Confirmation Order.

6            (e)     <u>Discharge of Claims and Termination of Equity Interests</u>. As of the

7    Effective Date, all consideration distributed under this Plan shall be in exchange for, and in

8    complete satisfaction, settlement, discharge and release of, all Claims and Equity Interests of

9    any nature whatsoever against the Debtor or its Estate, assets, properties or interest in property,

10    and regardless of whether any property shall have been distributed or retained pursuant to this

11    Plan on account of such Claims and Equity Interests. On the Effective Date, the Debtor shall be

12    deemed discharged and released under Section 1141(d)(l)(A) of the Bankruptcy Code from any

13    and all Claims and Equity Interests, including, but not limited to, demands and liabilities that

14    arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or

15    502(i) of the Bankruptcy Code, and the Equity Interests shall be terminated.

16            As of the Effective Date, except as otherwise expressly provided in the Plan or

17    the Confirmation Order, all Entities shall be precluded from asserting against the Debtor or the

18    Reorganized Debtor and their respective assets, property and/or Estate, any other or further

19    Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of

20    action or liabilities of any nature whatsoever, and all Equity Interests or other rights of a Holder

21    of an Equity Interest, relating to any of the Debtor or Reorganized Debtor or any of their

22    respective assets, property and/or Estate, based upon any act, omission, transaction or other

23    activity of any nature that occurred prior to the Effective Date. In accordance with the

24    foregoing, except as expressly provided in the Plan or the Confirmation Order, the Confirmation

25    Order shall constitute a judicial determination, as of the Effective Date, of the discharge of all

26    such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of

27

28

23

Exhibit 1
Page 78

action or liabilities, and any Equity Interest or other rights of a Holder of an Equity Interest and termination of all rights of any Holder of an Equity Interest in the Debtor pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtor or the Reorganized Debtor, or any of their respective assets, property and/or Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated Equity Interest in the Debtor.

12.05   Injunction.

(a)    As of the Effective Date all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor, are permanently enjoined from taking any of the following actions against the Reorganized Debtor or its property on account of such Claims or Equity Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.

(b)    By accepting Distributions pursuant to this Plan each Holder of an Allowed Claim shall be deemed to have specifically consented to the releases, exculpations and discharges set forth in Section 12.04 and the injunctions set forth in this section 12.05.

12.06   Retention of Causes of Action/Reservation of Rights.

(a)    Nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtor or the Reorganized Debtor may have or which the Reorganized Debtor may choose to assert on behalf of its estate under any provision of the Bankruptcy Code or any applicable non-bankruptcy law or rule, common law, equitable principle or other source of right or

24

Exhibit 1
Page 79

obligation, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor, the Reorganized Debtor, their officers, directors, or representatives; and (ii) the turnover of any property of the Debtor's Estate.

(b)     Nothing contained herein or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, cause of action, right of setoff, or other legal or equitable defense which the Debtor had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by this Plan. The Reorganized Debtor shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all of the Reorganized Debtor's legal and equitable rights respecting any Claim left unimpaired by this Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

12.07    Waiver of Section 547 Claims.  As of the Effective Date, the Debtor, the Reorganized Debtor shall and shall be deemed to have waived any and all claims causes of action and/or rights to recover any avoided or avoidable transfer under section 547 of the Bankruptcy Code against (i) any holder of a Class 2 or Class 4 Claim, (ii) any supplier of goods or services who would become a Holder of a Class 4 Claim if an action pursuant to section 547 of the Bankruptcy Code was successfully brought against it, and (iii) any Person employed by the Reorganized Debtor.

12.08    Solicitation of this Plan.  As of and subject to the occurrence of the Confirmation Date: (i) the Debtor shall be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation

25

Exhibit 1
Page 80

and (ii) the Debtor, the Reorganized Debtor and each of their respective directors, officers, employees, Affiliates, agents, financial advisors, investment bankers, Professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under this Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of any securities under this Plan.

12.09   <u>Retention of Jurisdiction</u>.  On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

(a)     to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)     to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     to ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

(d)     to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(e)     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

26

Exhibit 1
Page 81

(g)    to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the disclosure statement for this Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

(j)    to take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan or to maintain the integrity of this Plan following consummation;

(k)    to hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code;

(l)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)    to enter a final decree closing the Debtor's chapter 11 case;

27

Exhibit 1
Page 82

(p)   to recover all assets of the Debtor and property of the Debtor's Estate, wherever located; and

(q)   to hear and determine any rights, Claims, or causes of action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

13.01   Cramdown.  In the event that sufficient votes to confirm the Plan are not received, the Debtor reserves the right to request confirmation of the Plan pursuant to the provisions of section 1129(b) of the Bankruptcy Code with respect to any and all Classes.

13.02   Dissolution of Statutory Committee of Unsecured Creditors.   On the Effective Date, to the extent that one has been appointed, the Creditors' Committee shall be released and discharged from the rights and duties arising from or related to the Debtor's chapter 11 case, except with respect to its Professionals' interim and final applications for professionals' compensation.

13.03   Substantial Consummation.  On the Effective Date, this Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.04   Amendments.

(a)   Plan Modifications.  This Plan may be amended, modified, or supplemented by the Debtor or the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, and the Reorganized Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan.

(b)   Other Amendments.   Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to this Plan without further order or

28

Exhibit 1
Page 83

approval of the Bankruptcy Court, so long as such adjustments or modifications do not adversely impact the distributions hereunder.

13.05   Effectuating Documents and Further Transactions.  Each of the officers of the Reorganized Debtor is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the winks and conditions of this Plan.

13.06   Revocation or Withdrawal of this Plan.  The Debtor reserves the right to revoke or withdraw this Plan prior to the Effective Date.  If the Debtor takes such action, this Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in further proceedings involving the Debtor.

13.07   Severability.  If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.08   Time.  In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

29

Exhibit 1
Page 84

1     13.09   Binding Effect.  This Plan shall be binding upon and inure to the benefit of the

2   Debtor, the Reorganized Debtor, the holders of Claims and Equity Interests, and each of their

3   respective successors and assigns.

4     13.10   Notices.  All notices, requests, and demands to or upon the Debtor to be effective

5   shall be in writing (including by facsimile transmission) and, unless otherwise expressly

6   provided herein, shall be deemed to have been duly given or made when actually delivered or, in

7   the case of notice by facsimile transmission, when received and telephonically confirmed,

8   addressed as follows: Peitzman, Weg & Kempinsky, LLP, Attention: Scott F. Gautier, 2029

9   Century Park East, Suite 3100, Los Angeles, CA 90067.

10

11   September     , 2011                          Respectfully submitted,

12                                                By:  RITZ INTERACTIVE, INC.
                                                 Debtor and Debtor in Possession
13                                               The Plan Proponent

14

15                                                By _____

16

17                                                   Scott F. Gautier

18                                                   PEITZMAN, WEG & KEMPINSKY LLP
                                                    2029 Century Park East, Suite 3100
19                                                  Los Angeles, CA  90067
                                                    Telephone: (310) 552-3100
20                                                  Facsimile: (310) 552-3101

21                                                   Proposed Attorneys for the
                                                    Debtor and Debtor in Possession

22

23

24

25

26

27

28

30

Exhibit 1
Page 85

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

Exhibit 1
Page 86

**Exhibit B**
Identity and Value of Material Assets of Debtor

| Asset | Value (est. as of August 29, 2011) |
|---|---|
| Cash | $ 650,000 |
| Accounts Receivable | $ 50,000 |
| Professional Retainers | $ 110,000 |
| Furniture, Fixtures and Equipment | $ 40,000 |
| | |
| **TOTAL** | **$ 850,000** |

35

Exhibit 1
Page 87

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit C**
Prepetition Financial Statements
(to be taken from those filed with the court)

36

Exhibit 1
Page 88

**RITZ INTERACTIVE**

**BALANCE SHEETS**

**AS OF JUNE 30, 2011 & 2010**

**(Draft)**

|  | Jun 30, 11 | Jun 30, 10 |
|---|---|---|
| **ASSETS** | | |
| **Current Assets** | | |
| **Checking/Savings** | | |
| **1010 · Business Checking** | $    2,117 | $    - |
| **1012 · CNB Checking 402 141786** | -507,012 | 1,276,591 |
| **1013 · CNB Incoming Wire 402 150068** | 1,617 | 18,393 |
| **1020 · S-T Investments** | 10,001 | 10,001 |
| **1022 · CNB New Deposit-402150041** | 0 | -3,111 |
| **Total Checking/Savings** | -493,276 | 1,301,873 |
| | | |
| **Accounts Receivable** | | |
| **1200 · Accounts Receivable** | | |
| **1210 · A/R Cash (Mzrt)** | 4,090 | 4,135 |
| **Total 1200 · Accounts Receivable** | 4,090 | 4,135 |
| | | |
| **Total Accounts Receivable** | 4,090 | 4,135 |
| | | |
| **Other Current Assets** | | |
| **1120 · Inventory Asset** | 280,000 | 341,000 |
| **1205 · Other Receivable** | 133,319 | 133,801 |
| **1212 · Credit Card Clearing Accts** | | |
| **1215 · Credit Card Clearing Amex** | 59,993 | 56,291 |
| **1220 · Credit Card Clearing Visa/MC** | 110,542 | 158,276 |
| **1225 · Credit Card Clearing Discvr** | 3,251 | 10,511 |
| **Total 1212 · Credit Card Clearing Accts** | 173,787 | 225,079 |
| | | |
| **1310 · Deposits** | 32,666 | 32,666 |
| **1313 · Manual  Payroll Check** | 0 | 1,404 |
| **1320 · Prepaid Expenses** | 177,485 | 216,411 |
| **1325 · Short-Term Deferred Tax Asset** | 322,202 | 322,202 |
| **Total Other Current Assets** | 1,119,458 | 1,272,562 |
| | | |
| **Total Current Assets** | 630,272 | 2,578,571 |
| | | |
| **Fixed Assets** | | |
| **1500 · Fixed Asset** | | |
| **1510 · Computer Equipment** | 1,215,864 | 1,184,818 |
| **1515 · Office Equipment** | 219,998 | 218,569 |
| **1520 · Office Furniture** | 65,972 | 65,972 |
| **1525 · Software** | 832,272 | 832,272 |
| **1530 · Web Site Development** | 527,427 | 527,427 |

Exhibit 1
Page 89

(Draft)

| | Jun 30, 11 | Jun 30, 10 |
|---|---|---|
| **1540 · Leasehold Improvement** | 62,616 | 62,616 |
| **1590 · Accumulated Depreciation** | -1,523,728 | -1,480,569 |
| **1595 · Amortization** | -1,359,700 | -1,355,800 |
| **Total 1500 · Fixed Asset** | 40,722 | 55,307 |
| | | |
| **Total Fixed Assets** | 40,722 | 55,307 |
| | | |
| **Other Assets** | | |
| **1600 · Intangibles** | 671,000 | 671,000 |
| **1620 · Long-Term Deferred Tax Asset** | 3,186,163 | 3,186,163 |
| **Total Other Assets** | 3,857,163 | 3,857,163 |
| | | |
| **TOTAL ASSETS** | $ 4,528,158 | $ 6,491,041 |
| | | |
| **LIABILITIES & EQUITY** | | |
| **Liabilities** | | |
| **Current Liabilities** | | |
| **Accounts Payable** | | |
| **2000 · Trade Accounts Payable** | $ 3,340,860 | $ 3,452,495 |
| **2020 · Accrued Accounts Payable** | 1,338,716 | 583,767 |
| **Total Accounts Payable** | 4,679,576 | 4,036,262 |
| | | |
| **Other Current Liabilities** | | |
| **2015 · Unearned Revenue** | 450,750 | 540,000 |
| **2030 · Sales Taxes Payable (Mzrt)** | 43,025 | 43,846 |
| **2032 · Deferred Rent** | 54,875 | 122,049 |
| **2033 · Accrued Payroll** | 146,644 | 149,801 |
| **2035 · Payroll Taxes Payable** | 9,936 | 10,370 |
| **2045 · Gift Certificate Liability** | 291,869 | 276,681 |
| **2050 · Prepaid Order Liability (Mzrt)** | -245,164 | -180,485 |
| **2055 · Electronic Checks Refunds Due** | 13,841 | -8,989 |
| **2061 · Returns Reserve** | 75,000 | 50,000 |
| **2062 · Charge Back Reserve** | 60,000 | 50,000 |
| **2075 · Other Short Term Liability** | 2,646,517 | 2,646,517 |
| **Total Other Current Liabilities** | 3,547,294 | 3,699,790 |
| | | |
| **Total Current Liabilities** | 8,226,870 | 7,736,052 |
| | | |
| **Long Term Liabilities** | | |
| **2510 · Long-Term Note Payable** | 5,283,142 | 5,283,142 |
| **Total Long Term Liabilities** | 5,283,142 | 5,283,142 |
| | | |
| **Total Liabilities** | 13,510,011 | 13,019,194 |

Exhibit 1
Page 90

**(Draft)**

|  | Jun 30, 11 | Jun 30, 10 |
|---|---:|---:|
| **Equity** | | |
| **3100 · Common Stock** | 28,431 | 28,431 |
| **3200 · Additional Paid In Capital** | 4,390,139 | 4,386,276 |
| **3300 · Treasuary Stock** | -147,529 | -147,529 |
| **3500 · Retained Earnings** | -11,577,294 | -10,243,908 |
| **Net Income** | -1,675,600 | -551,422 |
| **Total Equity** | -8,981,854 | -6,528,153 |
| **TOTAL LIABILITIES & EQUITY** | $ 4,528,158 | $ 6,491,041 |

Exhibit 1
Page 91

**RITZ INTERACTIVE**

**INCOME STATEMENTS**

**FOR THE YEARS ENDING DECEMBER 31, 2010, 2009 & 2008**

(Unaudited)

| | Jan - Dec 10 | Jan - Dec 09 | Jan - Dec 08 |
|---|---:|---:|---:|
| **Ordinary Income/Expense** | | | |
| **Income** | | | |
| 4000 · Sales | $ 38,587,572 $ | 46,439,418 $ | 107,211,790 |
| **Total Income** | 38,587,572 | 46,439,418 | 107,211,790 |
| | | | |
| **Cost of Goods Sold** | | | |
| 5000 · Cost of Goods Sold | 32,694,320 | 40,203,857 | 89,060,988 |
| **Total COGS** | 32,694,320 | 40,203,857 | 89,060,988 |
| | | | |
| **Gross Profit** | 5,893,252 | 6,235,561 | 18,150,802 |
| | | | |
| **Expense** | | | |
| 6050 · Advertising | 2,932 | 68,078 | 86,163 |
| 6080 · Marketing Program | 1,737,167 | 2,345,088 | 5,140,514 |
| 6090 · Auction Fees | 4,045 | 24,401 | 84,971 |
| 6130 · Bank Charges | 4,757 | 3,415 | 8,505 |
| 6144 · Bad Debt | 0 | -359 | 139 |
| 6145 · Call Center Operations | 502,561 | 461,482 | 854,288 |
| 6150 · Consultants/Contractors | 92,872 | 108,534 | 177,256 |
| 6170 · Credit Card Processing | 689,594 | 844,734 | 1,931,708 |
| 6180 · Charge Back | 117,139 | 96,066 | 177,371 |
| 6200 · Depreciation Expense | 92,156 | 173,197 | 216,702 |
| 6220 · Dues and Subscriptions | 6,440 | 5,497 | 13,311 |
| 6250 · e Mail | 35,861 | 73,233 | 57,468 |
| 6280 · Employee Expense | 3,260,703 | 3,862,868 | 4,577,773 |
| 6340 · Equipment & Other Rental | 1,265 | 1,350 | 1,377 |
| 6380 · Insurance | 71,499 | 86,379 | 122,594 |
| 6410 · Interest Expense | 475,785 | 480,314 | 543,522 |
| 6440 · Licenses and Permits | 75 | 105 | 105 |
| 6450 · Miscellaneous | -649 | -138 | 0 |
| 6455 · RCC License Fee | 41,008 | 249,339 | 937,125 |
| 6500 · Postage and Delivery | 1,270 | 3,848 | 18,359 |
| 6600 · Professional Fees | 170,819 | 193,471 | 309,621 |
| 6620 · Public Relations | 1,640 | 2,740 | 2,320 |
| 6630 · Rent | 359,842 | 361,155 | 355,326 |
| 6660 · Repairs & Maintenance | 865 | 3,993 | 4,744 |
| 6679 · Stock Based Compensation | 7,727 | 44,833 | 107,800 |
| 6680 · Supplies | 26,015 | 31,734 | 46,727 |
| 6700 · Taxes (property & franchise) | 16,493 | 23,138 | 21,972 |
| 6750 · Telephone | 76,307 | 88,695 | 176,439 |
| 6780 · Travel & Ent | 25,157 | 27,422 | 83,807 |
| 6900 · Web Site Management | 456,889 | 481,607 | 500,849 |
| **Total Expense** | 8,278,232 | 10,146,218 | 16,558,855 |
| | | | |
| **Net Ordinary Income** | -2,384,980 | -3,910,657 | 1,591,947 |
| | | | |
| **Other Income/Expense** | | | |
| **Other Income** | | | |
| 7010 · Interest Income | 268 | 11,711 | 431,335 |
| 7030 · Other Income | 824,665 | 0 | 11 |
| **Total Other Income** | 824,933 | 11,711 | 431,346 |
| | | | |
| **Other Expense** | | | |
| 8020 · Taxes - Income | -226,661 | 75,639 | 705,408 |
| **Total Other Expense** | -226,661 | 75,639 | 705,408 |
| | | | |
| **Net Other Income** | 1,051,594 | -63,928 | -274,062 |
| | | | |
| **Net Income** | $ (1,333,386) $ | (3,974,585) $ | 1,317,885 |

Exhibit 1
Page 92

Financial Statements and Report of
Independent Certified Public Accountants

**RITZ INTERACTIVE, INC.**

December 31, 2007 and 2006

Exhibit 1
Page 93

## CONTENTS

|  | Page |
|---|---|
| REPORT OF INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS | 3 |
| FINANCIAL STATEMENTS | |
| BALANCE SHEETS | 4 |
| STATEMENTS OF OPERATIONS | 5 |
| STATEMENTS OF STOCKHOLDERS' DEFICIT | 6 |
| STATEMENTS OF CASH FLOWS | 7 |
| NOTES TO FINANCIAL STATEMENTS | 8 |

Exhibit 1
Page 94

# Grant Thornton ⬡

Accountants and Business Advisors

## REPORT OF INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS

Board of Directors
Ritz Interactive, Inc.

We have audited the accompanying balance sheets of Ritz Interactive, Inc. as of December 31, 2007 and 2006 (as restated), and the related statements of operations, stockholders' deficit and cash flows for the three years ended December 31, 2007, 2006 (as restated) and 2005. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with auditing standards generally accepted in the United States of America as established by the American Institute of Certified Public Accountants. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Ritz Interactive, Inc. as of December 31, 2007 and 2006 (as restated), and the results of its operations and its cash flows for the three years ended December 31, 2007, 2006 (as restated) and 2005, in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note 12 to the accompanying financial statements, the Company has restated previously issued financial statements as of and for the year ended December 31, 2006.

*Grant Thornton LLP*

Irvine, California
June 6, 2008

18400 Von Karman Avenue
Suite 900
Irvine, CA 92612-0525
T 949.553.1600
F 949.553.0168
W www.grantthornton.com

Grant Thornton LLP
US Member of Grant Thornton International

Exhibit 1
Page 95

Ritz Interactive, Inc.

BALANCE SHEETS
(in thousands)

| | December 31, | |
| --- | --- | --- |
| | 2006 (as restated) | 2007 |
| **Assets** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 24,534 | $ 12,268 |
| Marketable securities | — | 19,550 |
| Accounts receivable, net of allowance for doubtful accounts of $282 and $70 at December 31, 2006 and 2007 | 1,555 | 2,531 |
| Inventory | 736 | 818 |
| Prepaid expenses and other current assets | 630 | 590 |
| Deferred income taxes | 351 | 322 |
| Total current assets | 27,806 | 36,079 |
| Property and equipment, at cost: | | |
| Computer software and equipment | 2,056 | 2,497 |
| Furniture and fixtures | 272 | 272 |
| | 2,328 | 2,769 |
| Less accumulated depreciation | (2,220) | (2,378) |
| | 108 | 391 |
| Deferred income taxes | 4,563 | 3,816 |
| Intangibles | 171 | 171 |
| Total assets | $ 32,648 | $ 40,457 |
| **Liabilities and Stockholders' Deficit** | | |
| Current liabilities: | | |
| Accounts payable | $ 5,417 | $ 4,025 |
| Accounts payable to related party | 18,001 | 27,085 |
| Accrued liabilities | 1,205 | 1,386 |
| Deferred service obligation | 736 | 818 |
| Deferred revenue | 2,151 | 760 |
| Note payable, current portion | 143 | 1,777 |
| Total current liabilities | 27,653 | 35,851 |
| Note payable, long-term portion | 9,860 | 8,083 |
| Stockholders' deficit: | | |
| Common stock, $0.001 par value; 45,000,000 shares authorized; 28,420,589 and 28,420,589 shares issued; 27,491,178 shares outstanding at December 31, 2006 and 2007 | 28 | 28 |
| Additional paid-in capital | 4,083 | 4,230 |
| Treasury stock at cost — 929,411 shares at December 31, 2006 and 2007 | (148) | (148) |
| Accumulated deficit | (8,828) | (7,587) |
| Total stockholders' deficit | (4,865) | (3,477) |
| Total liabilities and stockholders' deficit | $ 32,648 | $ 40,457 |

See accompanying notes to financial statements.

4

Exhibit 1
Page 96

Ritz Interactive, Inc.

STATEMENTS OF OPERATIONS
(in thousands)

| | Year ended December 31, | | |
| | 2005 | 2006 (as restated) | 2007 |
|---|---|---|---|
| **Revenues (Note 1b):** | | | |
| Net revenues from product sales ...................................... | $     1,588 | $     4,727 | $    12,031 |
| Net service fee revenues.............................................. | 20,400 | 23,208 | 22,321 |
| Net revenues.................................................... | 21,988 | 27,935 | 34,352 |
| **Operating expenses:** | | | |
| Cost of goods sold from product sales........................... | 818 | 3,225 | 9,075 |
| Marketing, merchandising and selling............................. | 11,925 | 13,606 | 15,810 |
| General and administrative .......................................... | 4,209 | 4,435 | 4,011 |
| Customer support and fulfillment ................................. | 2,681 | 3,147 | 3,477 |
| IPO expenses .......................................................... | 1,174 | 77 | — |
| Non-employee stock-based compensation ..................... | 493 | 72 | — |
| Total operating expenses ........................................ | 21,300 | 24,562 | 32,373 |
| Income from operations ................................................. | 688 | 3,373 | 1,979 |
| **Other income (expense):** | | | |
| Interest and other income.............................................. | 179 | 450 | 698 |
| Interest expense ...................................................... | (358) | (600) | (601) |
| Other income (expense), net .................................... | (179) | (150) | 97 |
| Income before (provision) benefit for income taxes............ | 509 | 3,223 | 2,076 |
| (Provision) benefit for income taxes................................ | (27) | 4,822 | (835) |
| Net income................................................................ | $        482 | $     8,045 | $     1,241 |

See accompanying notes to financial statements.

5

Exhibit 1
Page 97

Ritz Interactive, Inc.

STATEMENTS OF STOCKHOLDERS' DEFICIT
(in thousands)

| | Common Stock | | Additional Paid-In Capital | Treasury Stock | Accumulated Deficit | Total Stockholders' Deficit |
|---|---|---|---|---|---|---|
| | Shares | Amount | | | | |
| **Balance, December 31, 2004**..................... | 28,283 | $ 28 | $ 3,465 | $ (148) | $ (17,355) | $ (14,010) |
| Non-employee stock-based compensation ..................... | — | — | 493 | — | — | 493 |
| Exercise of options................. | 113 | — | 33 | — | — | 33 |
| Net income ............................ | — | — | — | — | 482 | 482 |
| **Balance, December 31, 2005**..................... | 28,396 | $ 28 | $ 3,991 | $ (148) | $ (16,873) | $ (13,002) |
| Stock-based compensation... | — | — | 81 | — | — | 81 |
| Exercise of options................. | 25 | — | 11 | — | — | 11 |
| Net income (as restated)....... | — | — | — | — | 8,045 | 8,045 |
| **Balance, December 31, 2006 (as restated)** ............... | 28,421 | $ 28 | $ 4,083 | $ (148) | $ (8,828) | $ (4,865) |
| Stock-based compensation... | — | — | 147 | — | — | 147 |
| Net income ............................ | — | — | — | — | 1,241 | 1,241 |
| **Balance, December 31, 2007**..................... | 28,421 | $ 28 | $ 4,230 | $ (148) | $ (7,587) | $ (3,477) |

See accompanying notes to financial statements.

6

Exhibit 1
Page 98

Ritz Interactive, Inc.

STATEMENTS OF CASH FLOWS
(in thousands)

| | Year ended December 31, | | |
|---|---|---|---|
| | 2005 | 2006 | 2007 |
| | | (as restated) | |
| **Cash flows from operating activities:** | | | |
| Net income................................................................$ | 482 | $    8,045 | $    1,241 |
| Adjustments to reconcile net income to net cash provided by (used in) operating activities: | | | |
| Deferred income taxes................................................ | — | (4,912) | 776 |
| Provision for (recovery of) doubtful accounts ......................... | — | 275 | (156) |
| Depreciation............................................................... | 167 | 103 | 158 |
| Stock-based compensation ........................................... | 493 | 81 | 147 |
| Changes in operating assets and liabilities: | | | |
| Increase in accounts receivable .................................. | (643) | (423) | (820) |
| (Increase) decrease in inventory ................................. | (81) | 8 | (82) |
| (Increase) decrease in prepaid expenses and other current assets................................................................... | (140) | (259) | 40 |
| Increase (decrease) in accounts payable ............................. | 136 | 3,733 | (1,392) |
| Increase (decrease) in accounts payable to related party...... | (1,877) | 1,044 | 9,084 |
| Increase (decrease) in deferred service obligation................. | 81 | (8) | 82 |
| Increase (decrease) in deferred revenue.............................. | 156 | 1,325 | (1,391) |
| Increase (decrease) in accrued liabilities................................ | 193 | (74) | 181 |
| Net cash provided by (used in) operating activities.................... | (1,033) | 8,938 | 7,868 |
| **Cash flows from investing activities:** | | | |
| Purchases of marketable securities......................................... | — | — | (20,450) |
| Proceeds from sales of marketable securities ............................ | — | — | 900 |
| Purchases of property and equipment.................................... | (100) | (52) | (441) |
| Net cash used in investing activities.................................. | (100) | (52) | (19,991) |
| **Cash flows from financing activities:** | | | |
| Payments made on note payable ......................................... | — | — | (143) |
| Payments made on note payable to related party ........................ | — | (25) | — |
| Proceeds from exercise of stock options ................................ | 33 | 11 | — |
| Net cash provided by (used in) financing activities ................. | 33 | (14) | (143) |
| Net increase (decrease) in cash and cash equivalents............... | (1,100) | 8,872 | (12,266) |
| Cash and cash equivalents, beginning of year .......................... | 16,762 | 15,662 | 24,534 |
| Cash and cash equivalents, end of year........................$ | 15,662 | $    24,534 | $    12,268 |
| **Supplemental disclosure of cash flow information:** | | | |
| Cash paid for interest...............................................$ | 358 | $    600 | $    601 |
| Cash paid for income taxes........................................$ | 125 | $    — | $    64 |
| **Non-cash investing and financing activities:** | | | |
| None | | | |

See accompanying notes to financial statements.

7

Exhibit 1
Page 99

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

**(1)  Summary of Significant Accounting Policies**

*(a) Description of Business Activities and Relationship with Ritz Camera Centers, Inc.*

Ritz Interactive, Inc. ("Ritz Interactive" or the "Company") is a specialty online retailer and e-commerce provider that operates a network of websites offering high quality, branded lifestyle products. The websites include, among others, RitzCamera.com, WolfCamera.com, CameraWorld.com, PhotoAlley.com and BoatersWorld.com. These websites offer products for purchase by consumers and businesses and include a broad array of digital cameras, as well as marine, boating and fishing products. Photography related net revenues for the years ended December 31, 2005, 2006 (as restated) and 2007 aggregated $14.3 million, $16.7 million and $16.1 million, respectively. Marine, boating and fishing related net revenues for the years ended December 31, 2005, 2006 (as restated) and 2007 aggregated $6.1 million, $6.5 million and $6.3 million, respectively. The Company also generates revenue through advertising and operates other lifestyle websites in different stages of development, including, but not limited to, ShopAtShark.com and RitzElectronics.com. In 2006, the Company began to sell general consumer electronics on its photography related websites rather than through RitzElectronics.com. Advertising, consumer electronics and other sources of revenue for the years ended December 31, 2005, 2006 (as restated) and 2007 aggregated $1.6 million, $4.7 million and $12.0 million, respectively. Ritz Interactive outsources nearly all fulfillment of its photography and marine related orders to Ritz Camera Centers, Inc. ("RCC"). General consumer electronics and other product categories are fulfilled by several third-party distributors. The Company operates in a single business segment and sells its products principally to customers in the United States.

Ritz Interactive was incorporated in Delaware in February 1999. The Company began offering products for sale through its website in October 1999.

The Company purchases substantially all of its inventory from RCC. RCC owns and operates photographic product and services retail stores and boating, marine and fishing product retail stores throughout the United States. At December 31, 2006 and 2007, RCC owned approximately 11% of the Company's outstanding common stock and various employees and stockholders of RCC and certain of their family members owned an additional approximately 57% of the Company's common stock. RCC's Chairman and its President hold two of the nine seats on the Company's board of directors. RCC and the Company maintain a perpetual agreement that covers not only the supplier relationship, but also grants to the Company an exclusive license to use certain of the primary trademarks of RCC, including Ritz Camera, Wolf Camera, Boater's World and related brands, and to sell online the products purchased from RCC. See also Note 9 below.

The Company's revenues fluctuate from period to period as a result of seasonality, as well as special promotional offers and the introduction of popular new products.

*(b) Service Fees and Revenue*

The Company applies the provisions of Securities and Exchange Commission ("SEC") Staff Accounting Bulletin ("SAB") No. 104, *Revenue Recognition in Financial Statements* ("SAB 104"), which provides guidance on the recognition, presentation and disclosure of revenue in financial statements filed with the SEC. SAB 104 outlines the basic criteria that must be met to recognize revenue and provides guidance for disclosure related to revenue recognition policies. The Company recognizes revenue when (i) persuasive evidence of an arrangement exists; (ii) delivery has occurred or services have been rendered; (iii) the sales price charged is fixed and determinable; and (iv) collection is reasonably assured.

The Company evaluates the criteria outlined in Emerging Issues Task Force ("EITF") Issue No. 99-19, *Reporting Revenue Gross as a Principal Versus Net as an Agent* ("EITF 99-19"), in determining whether it is appropriate to record as revenue the gross amount of product revenue and related costs or the net amount earned as service fees. The majority of revenue generated by the Company is derived from the sale by the Company of inventory purchased from RCC. With respect to these transactions, the Company takes title and possession of the inventory, coordinates shipping to its customers, has physical loss inventory risk, latitude in pricing and bears 100% of the credit risk. The Company, however, sells product under RitzCamera.com, BoatersWorld.com and other domain names pursuant to the Company's

8

Exhibit 1
Page 100

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

trademark license with RCC. As a result, Ritz Interactive customers may believe they are doing business with Ritz Camera Centers as opposed to Ritz Interactive. Given this and the related party nature of the relationship between RCC and the Company, the Company is not, for GAAP purposes, considered to be the primary obligor with respect to the sale of products purchased by the Company from RCC and as a result, these sales are recorded net of the related cost of goods as if the Company were generating a commission on each sale. Accordingly, such sales transactions are presented as net service fee revenues in the accompanying Statements of Operations. With respect to the Company's other revenue activity, if the Company is the primary obligor, has latitude in establishing prices and selecting suppliers, and bears the credit risk, revenue is recorded on a gross basis.

The Company classifies net revenues into two categories: net revenues from product sales and net service fee revenues. Net revenues from product sales represent sales by the Company of products sourced from suppliers other than RCC. Net revenues from product sales consists of product sales and fees from shipping, advertising and warranties, and are net of discounts, sales taxes paid by the Company on behalf of its customers and an allowance for returns. Net service fee revenues represent sales by the Company of products sourced from RCC, net of the related cost of goods sold, as if the Company were generating a commission from RCC on each sale. Net service fee revenues also include shipping and warranty revenue, and are net of discounts, sales taxes paid by the Company on behalf of its customers and an allowance for sales returns.

The Company recognizes net revenue when both title and risk of loss to the products has transferred to the customer, which the Company has determined to occur upon estimated date of receipt of products by the customer. Product is shipped to customers using F.O.B. destination point terms. The Company estimates the date of receipts of products by its customers through the calculation of average delivery days. The calculated average number of days for delivery is then used to determine the amount of revenue and service fees to defer at the end of any reporting period. See also Note 1(c) below. The Company's primary accepted method of payment is credit cards, and to a lesser extent, the Company grants credit to business customers on normal credit terms. The Company also accepts alternative methods of payment such as Google Checkout, Bill-Me-Later and PayPal.

The reserve for sales returns is determined based on historical experience using management's best estimates. The Company periodically provides incentive offers to its customers including percentage discounts off current purchases and such discounts are recorded as a reduction of the related purchase price at the time of sale. The Company also periodically offers coupons, based on minimum current purchase requirements, which can be used as discounts against future purchases. Because these coupons expire after 30 days, will not result in a loss on a sale, and future redemption rates cannot be estimated reliably, the coupons are recorded as reductions to the related sale to the customer when redeemed.

*(c) Deferred Service Obligation and Deferred Revenue*

On those transactions for which the Company records revenue on a net basis (see Service Fees and Revenue above) in accordance with EITF 99-19, the Company records a deferred service obligation equal to the value of inventory that has been purchased by the Company and is estimated to be in-transit to customers. When the Company's customers have received the in-transit inventory, the Company relieves the inventory and the related deferred service obligation. Deferred revenue primarily consists of service fees on sales of RCC products when the inventory is in-transit to the customer, gift certificates sold but not yet redeemed, and advertising fees paid in advance to the Company.

*(d) Cash and Cash Equivalents*

For the purposes of the statement of cash flows, the Company considers all highly liquid debt instruments with original maturity of three months or less to be cash equivalents.

9

Exhibit 1
Page 101

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

*(e) Marketable Securities*

Marketable securities are classified as available-for-sale and accordingly are recorded at fair value, based on quoted market rates, with unrealized gains and losses reflected as a separate component of stockholders' equity titled accumulated other comprehensive income (loss), net of tax, until realized or until a determination is made that an other-than-temporary decline in market value has occurred. Factors considered by management in assessing whether an other-than-temporary impairment has occurred include: the nature of the investment; whether the decline in fair value is attributable to specific adverse conditions affecting the investment; the financial condition of the investee; the severity and the duration of the impairment; and whether the Company has the ability to hold the investment to maturity. When it is determined that an other-than-temporary impairment has occurred, the investment is written down to its market value at the end of the period in which it is determined that an other-than-temporary decline has occurred. The cost of marketable securities sold is based upon the specific identification method. The Company determined that no impairment of its marketable securities existed at December 31, 2007. In addition, the Company classifies marketable securities as current or non-current based upon whether such assets are reasonably expected to be realized in cash or sold or consumed during the normal operating cycle of the business.

At December 31, 2007, the Company's marketable securities were comprised entirely of municipal obligations in the form of auction rate securities which are securities that are structured with short-term interest reset dates of generally less than 90 days, but with maturities generally greater than 10 years. At the end of each reset period, investors can attempt to sell or continue to hold the securities at par value. As of December 31, 2007, there were no auction rate securities in an unrealized loss or gain position and there were no failed auctions associated with the Company's auction rate securities through that date. Subsequent to December 31, 2007, the Company liquidated all of its auction rate securities at par.

*(f) Accounts Receivable*

Accounts receivable primarily consist of credit card and trade receivables arising in the normal course of business. Credit card receivables total $509,000 and $652,000 at December 31, 2006 and 2007, respectively. Goods sold to customers are shipped directly from the vendors' warehouse facilities. The Company typically does not bill customers' credit cards until the goods have been shipped. Accounts receivable are recorded at the invoiced amount and do not bear interest. The allowance for doubtful accounts is the Company's best estimate of the amount of probable credit losses in the Company's existing accounts receivable. The Company determines the allowance based on historical write-off experience and through analysis and consideration of accounts past due more than 30 days. In addition, the amounts due from credit card transactions are typically paid in one to three days and are deemed to be collectible. The Company believes it does not have any off-balance sheet credit exposure related to its customers.

*(g) Inventory*

The Company purchases its products from RCC and other suppliers. Inventory is stated at cost. Upon receipt of a customer order, the Company purchases the customer specific product and records it in inventory until it is delivered to the customer. At any point in time, the inventory recorded primarily represents products that are in transit to the customers. See also (b) and (c) above for related discussion on inventory.

*(h) Property and Equipment*

Property and equipment are stated at cost less accumulated depreciation. Depreciation on property and equipment is calculated using the straight-line method over the estimated useful lives of the assets. The Company also capitalizes computer software costs that meet both the definition of internal-use software and defined criteria for capitalization in accordance with Statement of Position No. 98-1, *Accounting for the Cost of Computer Software Developed or Obtained for Internal Use*. Total depreciation expense for the years ended December 31, 2005, 2006 and 2007 was $167,000, $103,000 and

10

Exhibit 1
Page 102

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

$158,000, respectively, and was recorded in general and administrative expense each year. Maintenance and repair expenditures are charged to operations as incurred.

Estimated useful lives used in computing depreciation of property and equipment are as follows:

| | |
|---|---|
| Computer software and equipment............................................. | two to three years |
| Furniture and fixtures................................................................ | five years |
| Leasehold improvements........................................................... | remaining life of the lease |

*(i) Long-Lived Assets*

In accordance with Statement of Financial Accounting Standards ("SFAS") No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets* ("SFAS 144,") long-lived assets, such as property and equipment, are reviewed for impairment on an annual basis or whenever events or changes in circumstances indicate that the carrying amount of an asset may not be recoverable. Recoverability of assets to be held and used is measured by a comparison of the carrying amount of the assets to an estimated undiscounted future cash flow to be generated by those assets. If the carrying amount of an asset exceeds its estimated future cash flows, an impairment charge is recognized by the amount by which the carrying amount of the asset exceeds the fair value of the asset. Assets to be disposed of would be separately presented in the balance sheet and reported at the lower of the carrying amount or fair value less costs to sell, and are no longer depreciated. The assets of a disposed group classified as held for sale would be presented separately in the appropriate asset and liability sections of the balance sheet.

*(j) Shipping and Handling Charges*

Outbound shipping and handling charges billed to customers are included in net service fee revenues or net revenues from product sales, as applicable, and amounted to $1,956,000, $2,338,000 and $1,815,000 for the years ended December 31, 2005, 2006 and 2007, respectively. Outbound shipping and handling charges incurred by the Company are included within marketing, merchandising and selling expense and amounted to $3,194,000, $3,503,000 and $4,056,000 for the years ended December 31, 2005, 2006 and 2007, respectively.

*(k) Advertising and Marketing Costs*

Advertising and marketing costs included in marketing, merchandising and selling expenses are expensed as incurred. Advertising and marketing costs include traditional online advertising, revenue share arrangements, newsletters and, to a lesser extent, offline advertising. For the years ended December 31, 2005, 2006 and 2007, these costs were $4,601,000, $5,575,000 and $6,437,000, respectively.

*(l) Income Taxes*

Income taxes are accounted for under the asset and liability method. Deferred tax assets and liabilities are recognized for the future tax consequences attributable to differences between the financial statement carrying amounts of existing assets and liabilities and their respective tax bases and operating loss and tax credit carryforwards. Deferred tax assets and liabilities are measured using enacted tax rates expected to apply to taxable income in the years in which those temporary differences are expected to be recovered or settled. The effect on deferred tax assets and liabilities of a change in tax rates is recognized in income in the period that includes the enactment date. A valuation allowance is provided for deferred tax assets when it is more likely than not that all or some portion of the deferred tax asset will not be realized.

11

Exhibit 1
Page 103

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

*(m) IPO Expenses*

On April 13, 2006, the Company made the decision to withdraw its proposed initial public offering. This withdrawal resulted in the Company having to expense costs that were directly attributable to the proposed offering that would have otherwise been deferred and subsequently charged against the gross proceeds of the offering. The Company expensed $1,174,000, $77,000 and $0 of these costs in 2005, 2006 and 2007, respectively.

*(n) Stock-Based Compensation*

On January 1, 2006, the Company adopted Statement of Financial Accounting Standard No. 123R, *Share-Based Payment*, or SFAS 123R. In accordance with SFAS 123R, the Company measures the cost of employee services received in exchange for an award of equity instruments based on the grant-date fair value of the award. That cost is recognized over the period during which an employee is required to provide service in exchange for the award – the requisite service period. No compensation cost is recognized for equity instruments for which employees do not render the requisite service. The Company determines the grant-date fair value of employee share options granted after the adoption of SFAS 123R using the Black-Scholes option-pricing model adjusted for the unique characteristics of these options.

Prior to adoption of SFAS 123R, the Company accounted for grants under the stock option plan using either the minimum value method as permitted for non-public entities in SFAS No. 123 *Accounting for Stock-Based Compensation*, or SFAS 123, for grants at the market price at the date of the grant or the intrinsic value method for grants issued below the market price at the date of the grant in accordance with Accounting Principles Board Opinion No. 25, *Accounting for Stock Issued to Employees*, or APB 25, adopting the disclosure only provisions of SFAS 123. Options accounted for under the intrinsic value method will continue to be expensed over the vesting period.

SFAS 123R, requires that nonpublic entities that used the minimum value method of measuring equity share options and similar instruments for either recognition or pro forma disclosure purposes under SFAS 123 apply SFAS 123R using the "prospective" method. Under the "prospective" method, SFAS 123R will only apply to new options granted or modified, repurchased or canceled starting in 2006. Accordingly, periods prior to the adoption of SFAS 123R will not be restated. The portion of awards outstanding as of December 31, 2005 will continue to be accounted for using the minimum value method under SFAS 123. Adoption of SFAS 123R did not have a material effect on the Company's financial statements.

The Company accounts for equity instruments issued to non-employees in accordance with the provisions of SFAS 123 and EITF No. 96-18, *Accounting for Equity Instruments That Are Issued to Other Than Employees for Acquiring, or in Conjunction with Selling, Goods or Services* ("EITF 96-18"). Under SFAS 123 and EITF 96-18, equity awards issued to non-employees are accounted for at fair value using the Black-Scholes option-pricing model. Management believes that the fair value of the stock options is more reliably measured than the fair value of the services received. The fair value of each non-employee stock option is re-measured each period until a commitment date is reached, which is generally the vesting date of the option. As of December 31, 2006 and 2007, the Company has outstanding stock options issued to non-employees, as defined by SFAS 123 and EITF 96-18, to purchase up to 1,725,000 and 1,755,000, respectively, of the Company's common stock. The Company recorded compensation expense for stock options issued to non-employees of $493,000, $72,000 and $0 for the years ended December 31, 2005, 2006 and 2007, respectively. See also Notes and 9(c) for related discussion on non-employee stock options.

Because there has been no public market for the Company's stock, the board of directors of the Company has determined the fair value of the Company's common stock based upon several factors, including, but not limited to the Company's operating and financial performance, valuations of comparable online retailers and a valuation analysis performed by an independent valuation firm. All stock options issued to employees were issued with an exercise price equal to or greater than the estimated fair value of the common stock at the date of grant.

12

Exhibit 1
Page 104

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

*(o) Concentration Risks*

The Company sells the majority of its products to customers that make payment via credit card. Accounts receivable potentially subject the Company to credit risk. The Company extends credit to selected commercial customers based upon an evaluation of the customer's financial condition and credit history. Two commercial customers represent 58.9% of the Company's net trade receivable balance at December 31, 2007. Subsequent to December 31, 2007, these two customers have paid the amounts that were outstanding at December 31, 2007. The Company has historically incurred minimal credit losses.

The Company maintains its cash balances in one financial institution, which at times may exceed federally insured limits. The Company has not experienced any losses in such account and believes it is not exposed to any significant credit risk on cash and cash equivalents.

A substantial majority of the Company's products are purchased under an agreement with RCC (see also Notes 1(a), 1(b) and 9). Loss of this vendor could have a materially adverse effect on the Company's operations.

*(p) Website Development Costs*

In accordance with the provisions of Statement of Position 98-1, *Accounting for Costs of Computer Software Developed for Internal Use*, the Company capitalizes direct costs incurred in the development and implementation phases of internally developed software and then amortizes those costs over the product's estimated useful life of two years. The Company expenses costs related to the planning and post implementation phases of its website efforts. Costs associated with minor enhancements and maintenance for the websites are included in general and administrative expense and are expensed as incurred.

*(q) Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America ("GAAP") requires management to make a number of estimates and assumptions relating to the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Significant items subject to such estimates and assumptions include the carrying amount of long-lived assets, sales returns and chargeback reserves, allowance for uncollectible receivables, and valuation allowance on deferred income tax assets. Actual results could differ from those estimates.

*(r) Fair Value of Financial Instruments*

The carrying amounts reported in the balance sheets for cash and cash equivalents, accounts receivable and payable and accrued liabilities approximated fair value due to the short-term nature of these items. The carrying value of the note payable approximates fair value as of December 31, 2007 based upon current rates offered to the Company for similar debt with the same remaining maturities. Marketable securities are recorded at fair value, based on quoted market rates (see also Note 1 (e)).

*(s) Recent Accounting Pronouncements*

In July 2006, the FASB issued FASB Interpretation No. 48, *Accounting for Uncertainty in Income Taxes* ("FIN 48"). FIN 48 is an interpretation of FASB Statement No. 109, *Accounting for Income Taxes*. FIN 48 prescribes how a company should recognize, measure, present and disclose in its financial statements uncertain tax positions that the company has taken or expects to take on a tax return. FIN 48 is effective for fiscal years beginning after December 15, 2007. We do not believe that the adoption of this statement will have a material impact on our results of operations or financial condition.

In September 2006, the FASB issued SFAS No. 157, *Fair Value Measurements* ("SFAS 157"). SFAS 157 establishes a common definition for fair value, establishes a framework for measuring fair value, and

13

Exhibit 1
Page 105

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

expands disclosure about such fair value measurements. SFAS 157 is effective for fiscal years beginning after November 15, 2007. In January 2008, the FASB issued FSP FAS 157-2 delaying the effective date of SFAS 157 by one year for nonfinancial assets and nonfinancial liabilities that are recognized or disclosed at fair value in the financial statements on a nonrecurring basis. For these items, SFAS 157 will go into effect in fiscal years beginning after November 15, 2008. The adoption of this statement is not expected to have a material impact on our results of operations or financial condition.

In February 2007, the FASB issued SFAS No. 159, *The Fair Value Option for Financial Assets and Financial Liabilities* ("SFAS 159"). SFAS 159 permits all entities to elect to measure certain financial instruments and other items at fair value with changes in fair value reported in earnings. SFAS 159 is effective as of the beginning of the first fiscal year that begins after November 15, 2007. The adoption of this statement is not expected to have a material impact on our consolidated results of operations or financial condition.

*(t) Other Comprehensive Income*

Comprehensive income is defined as the change in equity during a period from transactions and other events and circumstances, excluding those resulting from investments by and distributions to owners. Comprehensive income generally includes net income, foreign currency translation adjustments, minimum pension liability adjustments, and unrealized holding gains and losses on available-for-sale securities. For the years ended December 31, 2005, 2006 and 2007, the Company had no comprehensive income except for net income.

*(u) Reclassifications*

Certain reclassifications have been made to the prior years financial statements to conform to the 2007 presentation. Such reclassifications had no effect on previously reported results of operations; however, accounts receivable and deferred revenue increased by $404,000.

**(2) Prepaid Expenses and Other Current Assets**

The components of prepaid expenses and other current assets are as follows (in thousands):

|  | December 31, | |
| --- | --- | --- |
|  | 2006 | 2007 |
| Prepaid insurance and rent | $  68 | $  81 |
| Prepaid software licensing and maintenance | 66 | 73 |
| Deposits | 29 | 33 |
| Interest and other receivables | 438 | 392 |
| Prepaid income taxes | 17 | — |
| Other | 12 | 11 |
|  | $ 630 | $ 590 |

**(3) Property and Equipment, Net**

The components of property and equipment are as follows (in thousands):

|  | December 31, | |
| --- | --- | --- |
|  | 2006 | 2007 |
| Computer equipment | $   872 | $  1,148 |
| Furniture and fixtures | 210 | 210 |
| Software | 657 | 822 |
| Website development costs | 527 | 527 |
| Leasehold improvements | 62 | 62 |
|  | 2,328 | 2,769 |
| Less accumulated depreciation and amortization | (2,220) | (2,378) |
|  | $   108 | $   391 |

14

Exhibit 1
Page 106

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

**(4) Accrued Liabilities**

The components of accrued liabilities are as follows (in thousands):

|  | December 31, | |
|  | 2006 | 2007 |
|---|---|---|
| Sales taxes payable | $ 277 | $ 291 |
| Returns reserve | 188 | 205 |
| Charge back reserve | 140 | 318 |
| Bonus | 318 | 250 |
| Accrued payroll | 220 | 273 |
| Accrued payroll taxes | 20 | 33 |
| Deferred rent | 37 | 14 |
| Other | 5 | 2 |
|  | $ 1,205 | $ 1,386 |

**(5) Commitments and Contingencies**

*(a) Operating Leases*

The Company has non-cancelable operating leases for office space for its principal corporate offices, which expires in 2008 (see also Note 11), and a non-cancelable lease for office/warehouse space from a related party, which expires in 2015. Future minimum lease payments under these operating leases as of December 31, 2007 are as follows (in thousands):

Year ending December 31:

| 2008 | 159 |
|---|---|
| 2009 | 11 |
| 2010 | 11 |
| 2011 | 11 |
| 2012 | 11 |
| Thereafter | 22 |
|  | $ 225 |

Rent expense under operating lease agreements for the years ended December 31, 2005, 2006 and 2007 was $198,000, $228,000 and $255,000, respectively. See also Note 9(a) and 11 below.

*(b) Marketing Agreements*

In March 2000, the Company, RCC and America Online, Inc. ("AOL") entered into a strategic marketing agreement, pursuant to which the Company agreed to purchase promotions and integration on AOL properties valued at $50 million over a period of five years. Under this agreement, RCC received a $10 million recoupable advance from AOL for their participation in an AOL member acquisition program in RCC's store locations. Concurrent with the execution of this strategic marketing agreement, RCC advanced $5 million to the Company in the form of a note payable to RCC to supplement the Company's on-going working capital needs. In April 2000, AOL purchased 1,495,294 shares of the Company's Series A convertible redeemable preferred stock (the "Series A Stock") for total consideration of $10,004,000 (see also Note 7 below).

During June 2001, the Company renegotiated principle components of its strategic marketing agreement with AOL. As a result of this renegotiation, in July 2001, the Company, RCC and AOL entered into an amendment to the March 2000 strategic marketing agreement, pursuant to which the Company's advertising purchase commitment was reduced from $50.0 million to $7.0 million and the contract termination date was extended from April 2005 to June 2006 in consideration for a one-time payment of $3.3 million in addition to the $9.7 million that had previously been paid under the March 2000 agreement.

15

Exhibit 1
Page 107

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

In February 2002, the strategic marketing agreement was further renegotiated such that the Company and AOL entered into a mutual termination and settlement of the Company's advertising purchasing commitment.

*(c) Purchase Agreements*

In March 2002, the Company entered into an agreement with PhotoAlley, Inc. and CMA Business Credit Services to purchase the inventory, any rights to the URL/Internet sites and Internet related assets, which included customer email lists, of PhotoAlley, Inc. The Company paid approximately $394,000 for the inventory and website server, which was immediately resold to RCC at the Company's purchase price. The intangible assets were acquired for future consideration equal to a percentage of net merchandise sales generated from the site for the period of five years ending March 31, 2007. During 2005 and 2006 and the three months ended March 31, 2007, the Company recorded marketing expenses under this agreement of $21,000, $26,000 and $4,000, respectively. Net merchandise sales generated through the PhotoAlley.com website for the years ended December 31, 2005 and 2006 and for the three months ended March 31, 2007 were $416,000, $522,000 and $89,000, respectively.

In May 2002, the Company entered into an agreement with CameraWorld.com, Inc. and NACM-Oregon Service Company to purchase any rights to the URL/Internet sites and Internet related assets, which included customer email lists, of CameraWorld.com. This agreement required the Company to pay NACM a percentage of net merchandise sales generated from the CameraWorld.com website for the period of five years ending April 30, 2007. During 2005 and 2006 and the four months ended April 30, 2007, the Company recorded marketing expenses under this agreement of $197,000, $162,000 and $37,000, respectively. Net merchandise sales generated through the CameraWorld.com website for the years ended December 31, 2005 and 2006 and for the four months ended April 30, 2007 were $4.0 million, $3.2 million and $0.7 million, respectively.

In August 2004, the Company entered into an agreement with eAngler, Inc. to purchase any rights to the eAngler.com URL/Internet sites and Internet related assets, which included customer email lists of eAngler.com. This agreement requires that the Company pay eAngler $75,000 at closing, $25,000 two years from the closing date (net of any post closing obligations), a percentage of net merchandise sales generated from the site if merchandise sales from the site exceed approximately $1.4 million within three years from the closing date, and 100,000 shares of the Company's common stock. As a result of exceeding the $1.4 million merchandise sales threshold, the Company released the $25,000 contingent payment and paid an incremental $29,000 in 2006 and an incremental $38,000 in 2007. The Company's common stock had a value of $0.71 per share at the date of the closing of this acquisition. At December 31, 2006 and 2007, the Company has an intangible asset of $171,000 pertaining to this agreement. Management has determined that the intangible asset has an indefinite life and, as such, the intangible asset will be evaluated on an annual basis for impairment, or in the event of an impairment indicator, and will not be subject to amortization in accordance with SFAS No. 142, *Goodwill and Other Intangible Assets*.

*(d) State Sales and Use Tax Matters*

The Company has sales and use tax nexus in California, Georgia, Kansas and Maryland, the four states in which the Company maintains a physical presence. The Company remits sales and use taxes to the appropriate taxing authorities on sales of products shipped to customers in those states.

The Company's policy for sales and use tax activities is based on interpretation of decisions of the U.S. Supreme Court that restrict a state's ability to impose sales and use tax collection and remittance obligations to those retailers that have a physical presence in, or substantial nexus with, the state. Each state and local taxing authority has its own interpretation of these Supreme Court decisions, and the interpretations have not always been consistent. Accordingly, although the Company believes that these Supreme Court decisions currently restrict state and local taxing authorities outside of California, Georgia, Kansas and Maryland from requiring it to collect and remit sales and use taxes from customers located within their jurisdictions, it is possible that other taxing authorities could disagree with the Company's interpretation of these decisions and assert a deficiency.

16

Exhibit 1
Page 108

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

The Company has received inquiries from 21 states and the Multistate Tax Commission ("MTC") as to whether the scope of its operations in those states subjects it to sales, use or other tax collection obligations in those states. After review by those states, 4 of such states have notified the Company that they would not challenge its position that its sales in their state were not subject to sales and use tax while 2 other states have sent generic correspondence about their sales tax nexus laws but have not claimed the Company has nexus or requested a response from the Company. In 12 of the 21 states, the Company has responded to oral or written inquiries from such states and has not received further correspondence from those states on this matter during 2007. In May of 2005, the state of Washington confirmed to the Company that its photography websites were not subject to sales and use tax. In spite of this, in October of 2005, the Company received written correspondence from the state of Washington claiming that the Company's marine, boating and fishing websites were subject to sales and use tax in Washington state.  The Company responded in November 2005 and in February 2007 received a letter from Washington state which outlined the state's reasoning for the nexus claim.  The Company believes the state's nexus claim to be based on inaccurate data and assumptions and has communicated this to the state.  No correspondence has been received from Washington state since April 2007. In Illinois, the Company is one of many retailer-defendants in a lawsuit brought by a private citizen under a whistle-blower act alleging that the defendants owe Illinois sales or use taxes. See also Note 5(e) below. In Texas, the state conducted a sales tax audit in November of 2005. The state issued an assessment in June 2007 for which the Company has requested a redetermination.  The state of Texas has not yet set a hearing date for the redetermination.   In January 2007, the MTC sent correspondence claiming the Company has sales in use tax nexus in twelve states that they are representing plus Washington D.C. This list erroneously includes one state in which the Company has been registered and remitting sales and use taxes since Company inception due to a physical presence in that state.  Of the remaining eleven states, the Company has previously corresponded with six of them.   The Company has had no correspondence with the MTC since September 2007.   In Washington, Illinois and Texas, the Company has generated merchandise sales from inception in 1999 through December 31, 2007 of $80.0 million. If sales taxes were charged on these merchandise sales at each state's respective base sales tax rate, the possible resulting obligation to the Company for back taxes over this period (excluding any interest or penalties) would be approximately $5.1 million. Additional states, including those states from which the Company has received no further correspondence as discussed above, or parties could contact the Company or initiate actions related to back sales and use taxes, which could result in substantial additional obligations to the Company. The accompanying financial statements do not include an accrual for potential losses, if any, related to these sales and use tax inquires.

*(e) Legal*

The Company is currently a defendant, along with RCC, in a suit brought under the Illinois Whistleblower Act in January 2002. The suit is one of approximately 60 nearly identical suits brought on behalf of the State of Illinois by Beeler, Schad & Diamond, P.C. ("Beeler"), a plaintiffs' class action law firm, against various retailers and Internet retailers under the Whistleblower Act. Illinois has intervened to prosecute the case along with Beeler.

Illinois and Beeler allege that the defendants committed reverse false claims violations by failing to keep records and remit sales tax on Internet purchases made by Illinois consumers, which defrauded Illinois out of sales tax proceeds. The suit further alleges that out-of-state Internet retailers should pay sales tax to Illinois because their affiliations with entities that have brick and mortar stores in Illinois creates a sufficient physical presence or nexus to permit local taxation. Under the Whistleblower Act, Illinois and Beeler seek recovery of back taxes, interest, penalties up to $10,000 per violation of the Act and attorneys' fees. If Illinois and Beeler are successful, the Company could be found liable for back taxes in excess of $1.3 million. The accompanying financial statements do not include an accrual for potential losses, if any, related to this lawsuit.

The Company is also involved from time to time in certain legal actions and claims arising in the ordinary course of its business. Management believes that the outcome of such litigation and claims will not have a material adverse effect on the financial position, results of operation or cash flows of the Company.

17

Exhibit 1
Page 109

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

**(6) Income Taxes**

The provision (benefit) for income taxes consists of the following for the years ended December 31 (in thousands):

|  | 2005 | 2006 | 2007 |
|---|---|---|---|
|  |  | (as restated) |  |
| Current: |  |  |  |
| Federal | $    16 | $    73 | $    39 |
| State and local | 11 | 17 | 20 |
|  | 27 | 90 | 59 |
| Deferred: |  |  |  |
| Federal | — | (3,983) | 676 |
| State and local | — | (929) | 100 |
|  | — | (4,912) | 776 |
| Net provision (benefit) for income taxes | $    27 | $(4,822) | $    835 |

The provision (benefit) for income taxes differed from the amount computed by applying the U.S. federal statutory rate to income before income taxes due to the effects of the following:

|  | 2005 | 2006 | 2007 |
|---|---|---|---|
|  |  | (as restated) |  |
| Expected taxes at federal statutory tax rate | 34.0% | 34.0% | 34.0% |
| Increase (reduction) in income taxes resulting from: |  |  |  |
| State income taxes, net of Federal tax benefit | 6.9 | 3.7 | 4.0 |
| Nondeductible expenses and others | 1.8 | 0.1 | 3.4 |
| Change in valuation allowance | (37.4) | (189.0) | (37.4) |
| Income tax expense | 5.3% | (151.2)% | 41.4% |

The tax effects of temporary differences that give rise to significant portions of the deferred tax assets as of December 31, 2006 and 2007, are presented below (in thousands):

|  | 2006 | 2007 |
|---|---|---|
|  | (as restated) |  |
| **Deferred Tax Assets** |  |  |
| Net operating loss carryforwards | $    4,377 | $    3,545 |
| Temporary nondeductible reserves and accruals | 304 | 295 |
| Stock-based compensation | 329 | 387 |
| Depreciation and other | 191 | 174 |
|  | 5,201 | 4,401 |
| **Deferred Tax Liabilities** |  |  |
| State taxes | (287) | (247) |
| Intangibles | — | (16) |
|  | (287) | (263) |
| Net deferred tax asset | $4,914 | $4,138 |

In assessing the realizability of deferred tax assets, management considers whether it is more likely than not that some portion or all of the deferred tax assets will not be realized. The ultimate realization of deferred tax assets is dependent upon the generation of future taxable income during the periods in which those temporary differences become deductible. Management considers the scheduled reversal of deferred tax liabilities, projected future taxable income and tax planning strategies in making this assessment. At December 31, 2006, the Company recorded a reduction of $4.9 million in its previously

18

Exhibit 1
Page 110

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

existing valuation allowance, as the Company believes it is more likely than not that it will generate sufficient taxable income in future years to utilize its deferred tax assets, including net operating loss carryforwards, within any applicable carryover periods.

At December 31, 2007, the Company had federal and state net operating loss ("NOL") carryforwards of approximately $8.5 million and $8.0 million, respectively, which are available to offset future taxable income. The federal NOLs will expire from 2020 through 2022 and the state NOLs will expire from 2012 through 2022.

### (7) Note Payable

During 2000, the Company issued 1,495,294 shares of Series A Stock to AOL at an issuance price of $6.69 per share for total consideration of $10,004,000 (see also Note 5(b)). Each share of Series A Stock was convertible into one share of common stock at the option of the holder at any time and was automatically converted into shares of common stock upon the consummation of a firm commitment underwritten public offering of common stock at a price per share not less than $2.34 and that generates net proceeds to the Company of at least $25 million. The conversion price was initially set at the original issue price, subject to certain anti dilution provisions.

On May 27, 2005, the Company entered into a securities purchase agreement with AOL, pursuant to which the Company repurchased all of the 1,495,294 outstanding shares of the Series A Stock from AOL by issuing AOL a Company a promissory note in the original principal amount of $10,004,000. The note was originally due the earlier of the closing of a public offering by the Company of its common stock, a change in control of the Company (as defined therein) or December 31, 2006. This note accrues interest at the rate of 6% per annum, which is payable monthly. This note contains certain negative and affirmative covenants for which the Company is in compliance at December 31, 2007. On February 15, 2006, the Company and AOL executed an amendment to the $10,004,000 promissory note due to AOL and the related securities purchase agreement. The amendment changed the maturity date of the principal from December 31, 2006 to December 31, 2007. The promissory note was subsequently amended again on January 30, 2007 to change the maturity date to November 1, 2012. The promissory note, as amended, provides for monthly principal and interest payments of $193,396 commencing December 1, 2007. As of the date of this report, the Company has made all payments required by the promissory note. Consistent with the original promissory note, the principal is due on the earlier of the maturity date, the closing of a public offering by the Company of its common stock or a change in control of the Company (as defined therein). The Company recorded approximately $600,000 of interest expense relating to the note in each of 2006 and 2007.

Future minimum principal payments under the AOL Promissory Note as of December 31 are as follows (in thousands):

Year ending December 31:

| | |
|---|---:|
| 2008 | $1,777 |
| 2009 | 1,887 |
| 2010 | 2,004 |
| 2011 | 2,127 |
| 2012 | 2,065 |
| | $9,860 |

19

Exhibit 1
Page 111

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

### (8) Stock Option Plan

In 1999, the Company adopted the 1999 Stock Option Plan (as amended to date, the "Plan") to promote the interests of the Company and its stockholders. The Plan provides for the grant of options to purchase up to 4,500,000 (increased from 2,750,000 in December 2003) shares of the Company's common stock. Under the Plan, stock options can be granted to employees and directors with an exercise price less than, equal to or greater than the fair market value of the underlying common stock at the date of grant. All stock options granted under the Plan have ten-year terms and vest and become fully exercisable after varying periods but typically three years from the date of grant.

At December 31, 2005, 2006 and 2007, there were 697,500, 475,000 and 382,500 additional shares available for grant under the Plan.

Under the prospective transition method prescribed by SFAS 123R, the Company is required to record compensation expense for all awards granted after the date of adoption. The Company measured stock based compensation using the Black-Scholes option pricing model based on the following assumptions:

|  | 2005 | 2006 | 2007 |
|---|---|---|---|
| Risk free interest rates | 4.0% | 4.4% | 4.5% |
| Expected dividend yield | none | none | none |
| Expected lives (years) | 4.0 | 4.0 | 4.0 |
| Expected volatility | 0% | 58% | 58% |
| Forfeiture rate | none | 35% | 35% |
| Weighted-average grant date fair value | $0.10 | $0.70 | $0.62 |

Expected volatility is based upon an appropriate peer group within the Company's industry sector. The expected life of the awards represents the period of time that management estimates that options granted will be outstanding.

The Company used historical information to estimate forfeitures within the valuation model. The risk-free interest rate for periods within the expected life of the option is based on implied yields on U.S. Government Issues in effect at the time of grant. Compensation cost is recognized over the vesting period using the straight-line attribution method and is net of estimated forfeitures.

Using the prospective transition method prescribed by SFAS 123R, the Company recognized in the statement of operations $9,000 and $147,000 of stock based compensation for the years ended December 31, 2006 and 2007, respectively, which is included in general and administrative expenses in our Statements of Operations. As of December 31, 2007, there was approximately $120,000 of total employee unrecognized compensation expense related to nonvested grants under the Plan which is expected to be recognized over a weighted average period of approximately 2.8 years.

We received cash from options exercised during fiscal 2006 and 2007 of $11,200 and $0, respectively. The impact of these cash receipts is included in financing activities in the accompanying Statements of Cash Flows.

Stock option activity during the periods indicated is as follows:

|  | Options Outstanding | |
|---|---|---|
|  | Number of Shares | Weighted Average Exercise Price |
| Outstanding at December 31, 2004 | 2,957,500 | 0.79 |
| Granted | 790,000 | 1.33 |
| Exercised | (112,500) | 0.29 |
| Forfeited | (20,000) | 1.30 |

20

Exhibit 1
Page 112

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

| | | |
|---|---:|---:|
| Outstanding at December 31, 2005 | 3,615,000 | 0.92 |
| Granted | 327,500 | 1.50 |
| Exercised | (25,000) | 0.45 |
| Forfeited | (105,000) | 2.43 |
| Outstanding at December 31, 2006 | 3,812,500 | 0.93 |
| Granted | 312,500 | 1.50 |
| Exercised | -- | -- |
| Forfeited | (220,000) | 1.30 |
| Outstanding at December 31, 2007 | 3,905,000 | $ 0.96 |

The following table summarizes information about stock options outstanding at December 31, 2007:

| | | Options Outstanding | | | Options Exercisable | |
|---|---|---|---|---|---|---|
| Exercise Prices | Number of Shares | Weighted Average Remaining Contractual Life (Years) | Weighted Average Exercise Price | | Number of Shares | Weighted Average Exercise Price |
| $0.04 | 25,000 | 1.69 | $ 0.04 | | 25,000 | $ 0.04 |
| 0.50-0.60 | 2,515,000 | 5.71 | 0.59 | | 2,515,000 | 0.59 |
| 1.05-1.50 | 1,195,000 | 8.01 | 1.40 | | 595,000 | 1.37 |
| 3.40 | 170,000 | 2.25 | 3.40 | | 170,000 | 3.40 |
| | 3,905,000 | 6.24 | $ 0.96 | | 3,305,000 | $ 0.87 |

**(9) Related Party Transactions**

*(a) Supply, Fulfillment and Other Arrangements*

In August 1999, the Company entered into an agreement with RCC, a stockholder which owned approximately 11% of the Company's common stock as of December 31, 2006 and 2007. Under this agreement, as amended and restated in August 2005, RCC provides the Company with the photographic, fishing and boating and marine supplies and products for sale on the Company's websites. The agreement requires that the Company purchase at least 51% of its aggregate annual purchases of photography, boating, fishing and marine products from RCC. The purchase price for RCC products is based on a fixed percentage of RCC's average cost of product, as defined in the agreement. For the years ended December 31, 2005, 2006 and 2007, the Company purchased $61.2 million, $71.1 million $76.6 million of products from RCC, respectively. In connection with this agreement, the Company pays to RCC a licensing fee representing a percentage of the sales of RCC products, net of discounts, returns and sales taxes, made by the Company and the sale of advertising on the Company's Internet sites. License fee expenses incurred under this agreement were $792,000, $916,000 and $967,000 for the years ended December 31, 2005, 2006 and 2007, respectively. In addition, the Company pays RCC a specified fulfillment charge for each package fulfilled by RCC for a customer of the Company. The fulfillment charges incurred under this agreement were $928,000, $1,054,000 and $1,017,000 for the years ended December 31, 2005, 2006 and 2007, respectively. The license fees are included in marketing, merchandising and selling expenses and the fulfillment charges are included in customer support and fulfillment expenses. Per the terms of this agreement, the Company holds an exclusive right to market and sell photographic and marine products online under the Ritz Camera and Boaters' World names. This agreement continues for an indefinite period of time provided that the Company is not in breach of the terms and conditions of the agreement.

The Company also recorded approximately $10,000 in each year ended December 31, 2005, 2006 and 2007 as rent expense paid to RCC for space leased in their three warehouses and for office space for the Company's merchandising personnel, for which the lease terms were annual through December 31, 2004. Effective January 1, 2005, the Company entered into an amended operating lease related to the use of the warehouse and office space which expires on January 1, 2015 and requires minimum annual rent payments of approximately $10,000 adjusted for the Consumer Price Index on January 1st of each year.

21

Exhibit 1
Page 113

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

In July 2002, the Company entered into an agreement with RCC where the Company pays a monthly fee to RCC to be included in advertising inserts for the Company's photo-oriented websites in a periodic photography magazine. This agreement was terminated as of March 31, 2006. The advertising expenses incurred under this agreement were $120,000 and $30,000 for the years ended December 31, 2005 and 2006.

In April 2005, the Company entered into an oral agreement with RCC, whereby the Company agreed to advertise and promote certain of RCC's websites, online printing products and services through Company websites, in exchange for the promotion of Company websites on the RCC websites the Company promoted. Each party would pay the other a fixed percentage of merchandise sales generated through such promotion. For the years ended December 31, 2005, 2006 and 2007, the Company received net payments from RCC totaling $43,000, $69,000 and $42,000, respectively. The terms of this arrangement were incorporated into the Company's principal agreement with RCC upon the execution of an amended and restated version of that agreement in August 2005.

*(b) Accounts Payable to Related Party*

As of December 31, 2006 and 2007, accounts payable to RCC was $18.0 million and $27.1 million, respectively, relating to the agreements described above. These amounts due to RCC are non-interest bearing and generally provide for 45-day payment terms.

*(c) Services*

In December 2003, the Company entered into an endorsement agreement with one of its Directors. Under this agreement, the board member was granted an option to purchase 1,500,000 shares of the Company's common stock, of which 150,000 shares were deemed to be Board compensation and the remaining 1,350,000 shares were in exchange for endorsement services expected to be received by the Company through December 2008. The option vests monthly over 36 months commencing on the date of grant. The Company has accounted for the options issued under the endorsement agreement as a non-employee stock award in accordance with SFAS 123 and EITF 96-18. The Company recorded stock-based compensation expense for this option of $471,000 for the year ended December 31, 2005. On April 22, 2005, the Company amended this option agreement to immediately vest the remaining unvested shares under this agreement.

In December 2003, the Company entered into an agreement with Greg Norman Interactive, LLC ("GNI"). One of the Company's Directors is the Chairman and Chief Executive Officer of GNI's parent company. Under this agreement, the Company operates and promotes certain websites for GNI, over which the Company sells products provided by GNI. This agreement provides that the Company will pay GNI a fixed percentage of the net merchandise sales generated by the GNI websites. The Company has made payments to GNI of $62,000, $33,000 and $39,000 for the years ended December 31, 2005, 2006 and 2007, respectively.

**(10) Employee Benefit Plan**

The Company sponsors a 401(k) Profit Sharing Plan (the "Profit Sharing Plan"), which covers all eligible employees. The Profit Sharing Plan is a qualified defined contribution plan in which all eligible employees may elect to have a percentage of their pretax compensation contributed to the Profit Sharing Plan, subject to certain guidelines by the Internal Revenue Service. The Company can match contributions made by participating employees based on a percentage of what they contribute to the Profit Sharing Plan per pay-period. The Company made matching contributions to the Profit Sharing Plan of $20,000, $19,000 and $25,000 in the years ended December 31, 2005, 2006 and 2007, respectively.

22

Exhibit 1
Page 114

Ritz Interactive, Inc.
NOTES TO FINANCIAL STATEMENTS

### (11) Subsequent Events

On May 1, 2008, the Company entered into an amendment to its operating lease for its principal corporate offices. The amendment extended the term for 63 months through October 2013. Future minimum lease payments during the term of this operating lease aggregate $1,647,000.

### (12) Restatement

During 2007, management identified a cut-off error in its calculation of deferred revenue, which resulted in the inadvertent recording of certain 2007 net revenues as 2006 net revenues. The effect of this correction decreased net revenues in 2006. This correction resulted in changes to net revenues from product sales, net service fee revenues, net revenues, income from operations, income before benefit for income taxes, net income, deferred revenue, and accumulated deficit. Accordingly, the accompanying balance sheet and statement of operations as of and for the year ended December 31, 2006 have been restated as summarized below:

| Effect of Cut-off Error on Net Revenues | As Previously Reported | Restatement Adjustment | As Restated |
|---|---|---|---|
| **At December 31, 2006 (in thousands)** | | | |
| - Deferred revenue | $ 1,266 | $ 481 | $ 1,747 |
| - Accumulated deficit | $ (8,539) | $ (289) | $ (8,828) |
| - Total stockholder's deficit | $ (4,576) | $ (289) | $ (4,865) |
| | | | |
| **Year 2006 (in thousands)** | | | |
| - Net revenues from product sales | $ 4,746 | $ (19) | $ 4,727 |
| - Net service fee revenues | $ 23,670 | $ (462) | $ 23,208 |
| - Net revenues | $ 28,416 | $ (481) | $ 27,935 |
| - Income from operations | $ 3,854 | $ (481) | $ 3,373 |
| - Income before benefit for income taxes | $ 3,704 | $ (481) | $ 3,223 |
| - Net income | $ 8,334 | $ (289) | $ 8,045 |

23

Exhibit 1
Page 115

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit D**
[Most Recently Filed Postpetition Operating Report]
[Summary of Postpetition Operating Reports]

_(Note: None filed as of August 30, 2011)

36

Exhibit 1
Page 116

B 25C (Official Form 25C) (12/08)

# UNITED STATES BANKRUPTCY COURT

## Central District of California

In re  Ritz Interactive, Inc._____ ,           Case No.  8:11-21690

Debtor

Small Business Case under Chapter 11

### SMALL BUSINESS MONTHLY OPERATING REPORT

Month:  August 20 - 31, 2011                Date filed:  September 25,

Line of Business:  Internet Retail             NAISC Code:  454111

IN ACCORDANCE WITH TITLE 28, SECTION 1746, OF THE UNITED STATES CODE, I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED THE FOLLOWING SMALL BUSINESS MONTHLY OPERATING REPORT AND THE ACCOMPANYING ATTACHMENTS AND, TO THE BEST OF MY KNOWLEDGE, THESE DOCUMENTS ARE TRUE, CORRECT AND COMPLETE.

RESPONSIBLE PARTY:

_____
Original Signature of Responsible Party

Scott Neamand
_____
Printed Name of Responsible Party

| | Questionnaire: *(All questions to be answered on behalf of the debtor.)* | Yes | No |
|---|---|---|---|
| 1. | IS THE BUSINESS STILL OPERATING? | ☑ | ☐ |
| 2. | HAVE YOU PAID ALL YOUR BILLS ON TIME THIS MONTH? | ☑ | ☐ |
| 3. | DID YOU PAY YOUR EMPLOYEES ON TIME? | ☑ | ☐ |
| 4. | HAVE YOU DEPOSITED ALL THE RECEIPTS FOR YOUR BUSINESS INTO THE DIP ACCOUNT THIS MONTH? | ☑ | ☐ |
| 5. | HAVE YOU FILED ALL OF YOUR TAX RETURNS AND PAID ALL OF YOUR TAXES THIS MONTH | ☑ | ☐ |
| 6. | HAVE YOU TIMELY FILED ALL OTHER REQUIRED GOVERNMENT FILINGS?  See Exhibit | ☐ | ☑ |
| 7. | HAVE YOU PAID ALL OF YOUR INSURANCE PREMIUMS THIS MONTH? | ☑ | ☐ |
| 8. | DO YOU PLAN TO CONTINUE TO OPERATE THE BUSINESS NEXT MONTH? | ☑ | ☐ |
| 9. | ARE YOU CURRENT ON YOUR QUARTERLY FEE PAYMENT TO THE U.S. TRUSTEE? | ☑ | ☐ |
| 10. | HAVE YOU PAID ANYTHING TO YOUR ATTORNEY OR OTHER PROFESSIONALS THIS MONTH? | ☐ | ☑ |
| 11. | DID YOU HAVE ANY UNUSUAL OR SIGNIFICANT UNANTICIPATED EXPENSES THIS MONTH? | ☐ | ☑ |
| 12. | HAS THE BUSINESS SOLD ANY GOODS OR PROVIDED SERVICES OR TRANSFERRED ANY ASSETS TO ANY BUSINESS RELATED TO THE DIP IN ANY WAY? | ☐ | ☑ |
| 13. | DO YOU HAVE ANY BANK ACCOUNTS OPEN OTHER THAN THE DIP ACCOUNT? * | ☑ | ☐ |

*Pursuant to court order (Docket 42), we have maintained three lock box accounts which receive our deposits

Exhibit 1
Page 117

Page 2

B 25C (Official Form 25C) (12/08)

14.  HAVE YOU SOLD ANY ASSETS OTHER THAN INVENTORY THIS MONTH?   ☐ ☑

15.  DID ANY INSURANCE COMPANY CANCEL YOUR POLICY THIS MONTH?   ☐ ☑

16.  HAVE YOU BORROWED MONEY FROM ANYONE THIS MONTH?   ☐ ☑

17.  HAS ANYONE MADE AN INVESTMENT IN YOUR BUSINESS THIS MONTH?   ☐ ☑

18.  HAVE YOU PAID ANY BILLS YOU OWED BEFORE YOU FILED BANKRUPTCY?   ☐ ☑

## TAXES

DO YOU HAVE ANY PAST DUE TAX RETURNS OR PAST DUE POST-PETITION TAX   ☑ ☐
OBLIGATIONS?

IF YES, PLEASE PROVIDE A WRITTEN EXPLANATION INCLUDING WHEN SUCH RETURNS WILL
BE FILED, OR WHEN SUCH PAYMENTS WILL BE MADE AND THE SOURCE OF THE FUNDS FOR
THE PAYMENT.

*(Exhibit A)*

## INCOME

PLEASE SEPARATELY LIST ALL OF THE INCOME YOU RECEIVED FOR THE MONTH.  THE LIST
SHOULD INCLUDE ALL INCOME FROM CASH AND CREDIT TRANSACTIONS. *(THE U.S. TRUSTEE
MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| TOTAL INCOME | $ | 521,854.94 |

**SUMMARY OF CASH ON HAND**

| | | |
|---|---|---|
| Cash on Hand at Start of Month | $ | 512,575.38 |
| Cash on Hand at End of Month | $ | 632,924.52 |
| PLEASE PROVIDE THE TOTAL AMOUNT OF CASH CURRENTLY AVAILABLE TO YOU    TOTAL | $ | 632,924.52 |

*(Exhibit B)*

## EXPENSES

PLEASE SEPARATELY LIST ALL EXPENSES PAID BY CASH OR BY CHECK FROM YOUR BANK
ACCOUNTS THIS MONTH.  INCLUDE THE DATE PAID, WHO WAS PAID THE MONEY, THE
PURPOSE AND THE AMOUNT. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

| | | |
|---|---|---|
| TOTAL EXPENSES | $ | 401,505.80 |

*(Exhibit C)*

## CASH PROFIT

| | | |
|---|---|---|
| INCOME FOR THE MONTH *(TOTAL FROM EXHIBIT B)* | $ | 521,854.94 |
| EXPENSES FOR THE MONTH *(TOTAL FROM EXHIBIT C)* | $ | 401,505.80 |
| *(Subtract Line C from Line B)*    **CASH PROFIT FOR THE MONTH** | $ | 120,349.14 |

Exhibit 1
Page 118

B 25C (Official Form 25C) (12/08)

## UNPAID BILLS

PLEASE ATTACH A LIST OF ALL DEBTS (INCLUDING TAXES) WHICH YOU HAVE INCURRED
SINCE THE DATE YOU FILED BANKRUPTCY BUT HAVE NOT PAID. THE LIST MUST INCLUDE
THE DATE THE DEBT WAS INCURRED, WHO IS OWED THE MONEY, THE PURPOSE OF THE
DEBT AND WHEN THE DEBT IS DUE. *(THE U.S. TRUSTEE MAY WAIVE THIS REQUIREMENT.)*

**TOTAL PAYABLES** $    232,378.00

*(Exhibit D)*

## MONEY OWED TO YOU

PLEASE ATTACH A LIST OF ALL AMOUNTS OWED TO YOU BY YOUR CUSTOMERS FOR WORK
YOU HAVE DONE OR THE MERCHANDISE YOU HAVE SOLD. YOU SHOULD INCLUDE WHO
OWES YOU MONEY, HOW MUCH IS OWED AND WHEN IS PAYMENT DUE. *(THE U.S. TRUSTEE MAY
WAIVE THIS REQUIREMENT.)*

**TOTAL RECEIVABLES** $    54,579.34

*(Exhibit E)*

## BANKING INFORMATION

PLEASE ATTACH A COPY OF YOUR LATEST BANK STATEMENT FOR EVERY ACCOUNT YOU
HAVE AS OF THE DATE OF THIS FINANCIAL REPORT OR HAD DURING THE PERIOD COVERED
BY THIS REPORT.

*(Exhibit F)*

## EMPLOYEES

| | |
|---|---|
| NUMBER OF EMPLOYEES WHEN THE CASE WAS FILED? | 31 |
| NUMBER OF EMPLOYEES AS OF THE DATE OF THIS MONTHLY REPORT? | 28 |

## PROFESSIONAL FEES

*BANKRUPTCY RELATED:*

PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID DURING THIS REPORTING
PERIOD?                                                                                $    0.00

TOTAL PROFESSIONAL FEES RELATING TO THE BANKRUPTCY CASE PAID SINCE THE FILING
OF THE CASE?                                                                            $    0.00

*NON-BANKRUPTCY RELATED:*

PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID DURING THIS
REPORTING PERIOD?                                                                       $    0.00

TOTAL PROFESSIONAL FEES NOT RELATING TO THE BANKRUPTCY CASE PAID SINCE THE
FILING OF THE CASE?                                                                     $    0.00

Exhibit 1
Page 119

Page 4

B 25C (Official Form 25C) (12/08)

## PROJECTIONS**

COMPARE YOUR ACTUAL INCOME AND EXPENSES TO THE PROJECTIONS FOR THE FIRST 180
DAYS OF YOUR CASE PROVIDED AT THE INITIAL DEBTOR INTERVIEW.

|  | Projected | Actual | Difference |
|---|---|---|---|
| INCOME | $ 1,339,000.00 | $ 521,854.94 | $ 817,145.06 |
| EXPENSES | $ 570,570.00 | $ 401,505.80 | $ 169,064.20 |
| CASH PROFIT | $ 768,430.00 | $ 120,349.14 | $ 648,080.86 |

| | |
|---|---|
| TOTAL PROJECTED INCOME FOR THE NEXT MONTH: | $ 2,741,000.00 |
| TOTAL PROJECTED EXPENSES FOR THE NEXT MONTH: | $ 2,866,841.00 |
| TOTAL PROJECTED CASH PROFIT FOR THE NEXT MONTH: | $ -125,841.00 |

** The projections provided to the court were on a weekly basis commencing August 20, 2011.  As such, there is
not an

### ADDITIONAL INFORMATION

**PLEASE ATTACH ALL FINANCIAL REPORTS INCLUDING AN INCOME STATEMENT AND BALANCE SHEET
WHICH YOU PREPARE INTERNALLY.**    See Exhibit

Exhibit 1
Page 120

# EXHIBIT A

Exhibit 1
Page 121

**EXHIBIT A**

Filing of the Ritz Interactive 2010 state and federal income tax returns has
been delayed pending the filing and court approval of the Grant Thornton
employment application.

Exhibit 1
Page 122

# EXHIBIT B

Exhibit 1
Page 123

**RITZ INTERACTIVE, INC.**
**DAILY CASH INCOME**
**AUGUST 20 - 31, 2011**
**DIP CHECKING ACCT. #    8099**

| Posted Date | Amount | Description |
|---|---|---|
| **CASH INCOME:** | | |
| 8/22/2011 | $    28,004.77 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/22/2011 | $  122,796.09 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/23/2011 | $    4,318.64 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/23/2011 | $    33,227.60 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/24/2011 | $    924.98 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/24/2011 | $    52,532.20 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/25/2011 | $    8,636.54 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/25/2011 | $    75,884.34 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/26/2011 | $    3,415.78 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/26/2011 | $    30,342.42 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/29/2011 | $    23,636.13 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/29/2011 | $    56,663.04 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/30/2011 | $    4,906.58 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/30/2011 | $    43,026.02 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| 8/31/2011 | $    1,429.77 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 |
| 8/31/2011 | $    32,110.04 | AUTOMATIC TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 |
| **Total Cash Income** | **$  521,854.94** | |

Exhibit 1
Page 124

# EXHIBIT C

Exhibit 1
Page 125

**RITZ INTERACTIVE, INC.**
**DAILY CASH EXPENSES**
**AUGUST 20 - 31, 2011**
**DIP CHECKING ACCT. #    8099**

| Posted Date | Amount | Description | Payee | Type of Payment |
|---|---|---|---|---|
| CASH EXPENSES: | | | | |
| 8/23/2011 | $ (798.97) | CHECK | Nhan Cao | Payroll |
| 8/23/2011 | $ (65,000.00) | DOMESTIC WIRE | Almo | Inventory |
| 8/24/2011 | $ (40,384.44) | DOMESTIC WIRE | Almo | Inventory |
| 8/25/2011 | $ (972.96) | CHECK | Daniel Soto | Payroll |
| 8/25/2011 | $ (16,494.00) | DOMESTIC WIRE | D&H | Inventory |
| 8/25/2011 | $ (6,833.92) | DOMESTIC WIRE | Melton | Inventory |
| 8/26/2011 | $ (63,853.19) | DOMESTIC WIRE | Almo | Inventory |
| 8/26/2011 | $ (24,484.94) | DOMESTIC WIRE | Almo | Inventory |
| 8/26/2011 | $ (2,721.39) | DOMESTIC WIRE | Melton | Inventory |
| 8/26/2011 | $ (925.00) | DOMESTIC WIRE | SED | Inventory |
| 8/26/2011 | $ (312.88) | DOMESTIC WIRE | Northern Wholesale | Inventory |
| 8/26/2011 | $ (161.72) | DOMESTIC WIRE | Rothman | Inventory |
| 8/29/2011 | $ (51,805.05) | DOMESTIC WIRE | Almo | Inventory |
| 8/30/2011 | $ (22,835.16) | DOMESTIC WIRE | Almo | Inventory |
| 8/30/2011 | $ (20,766.97) | DOMESTIC WIRE | Petra | Inventory |
| 8/30/2011 | $ (10,146.30) | DOMESTIC WIRE | Synnex | Inventory |
| 8/30/2011 | $ (3,567.24) | DOMESTIC WIRE | Melton | Inventory |
| 8/30/2011 | $ (1,359.14) | DOMESTIC WIRE | Ingram Micro | Inventory |
| 8/31/2011 | $ (50,137.91) | DOMESTIC WIRE | ADP | Payroll |
| 8/31/2011 | $ (16,854.35) | DOMESTIC WIRE | D&H | Inventory |
| 8/31/2011 | $ (1,090.27) | DOMESTIC WIRE | Melton | Inventory |
| **Total Cash Expenses** | **$ (401,505.80)** | | | |

Exhibit 1
Page 126

# EXHIBIT D

Exhibit 1
Page 127

RITZ INTERACTIVE

**POST-PETITON ACCOUNTS PAYABLE AS OF 8/31/2011**

| | Aug 31, 2011 | Date Incurred | Date Due | Purpose |
|---|---|---|---|---|
| @once | 1,524.04 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| AAFES | 490.40 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Accertify | 4,780.64 | Standard monthly billing - August | 9/30/2011 | Services |
| Akamai Technologies | 541.94 | Standard monthly billing - August | 9/30/2011 | Services |
| Almo Corporation | -135,016.95 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| AT&T- AZ | 1,248.85 | Standard monthly billing - August | 9/30/2011 | Services |
| AT&T- Data | 2,940.95 | Standard monthly billing - August | 9/30/2011 | Services |
| AT&T TeleConference Services | 31.56 | Standard monthly billing - August | 9/30/2011 | Services |
| Become | 65.70 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| BloomReach, Inc. | 2,213.13 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Brown, Vance | 108.58 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Cardinal Commerce | 290.30 | Standard monthly billing - August | 9/30/2011 | Services |
| Cell Business Equipment | 32.66 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Chang, James | 79.80 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Channel Intelligence | 4.25 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| ChannelAdvisor | 696.77 | Standard monthly billing - August | 9/30/2011 | Services |
| Chen, Haiying | 24.00 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Commission Junction | 3,365.05 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Cor-O-Van | 48.00 | Standard monthly billing - August | 9/30/2011 | Services |
| Criteo Corp. | 282.00 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| CSC Corporate Domains | 36.00 | Standard monthly billing - August | 9/30/2011 | Services |
| CWR Electronics Corporation | 30,915.81 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| D & H Distributing Co. | 3,537.47 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Deer Park Water | 12.10 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Dynamic Network Services, Inc. | 385.16 | Standard monthly billing - August | 9/30/2011 | Services |
| E4X, Inc. | 175.91 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| eBay, Inc | 986.40 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Ekaria, LLP | 1,306.36 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Entertainment Publications, LLC | 29.43 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Federal Express | 1,196.24 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Services |
| Fisheries Supply, Inc. | 4,680.32 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Google | 2,390.09 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Hansen Wholesale | 318.32 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Ingram Micro, Inc. | 3,745.12 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Ken Rockwell, Inc. | 701.91 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Land N Sea | 158.69 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| LinkConnector Corporation | 359.36 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Lynn Vick Products | 579.67 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| M Rothman & Co, Inc. | -72.27 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Melton Tackle | 972.20 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Mesa Safe Company | 692.10 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| N.E.W.Customer Service Companies, Inc. | 332.01 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Navarre Corporation | 1,852.52 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| NexTag.com | 2.40 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Northern Wholesale Supply | 1,364.32 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Notions Marketing Corporation | 55,096.60 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Optimum Fulfillment | 1,146.04 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Oracle | 661.94 | Standard monthly billing - August | 9/30/2011 | Services |
| Paradise Galleries | 86.97 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Parcel Insurance Plan | 787.62 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Parking Concepts, Inc. | 890.32 | Standard monthly billing - August | 9/30/2011 | Services |
| Passport Unlimited Inc. | 15.67 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Petra Industries Inc. | 7,810.36 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Power Reviews | 9.91 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| PriceGrabber.com | 71.58 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Professional Staffing Resources | 249.60 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Promark International, Inc. | 367.20 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Pronto | 20.35 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| RCI admin | -532.91 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Ritz Camera and Image, LLC | 107,531.64 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Savvis, Inc. | 3,132.11 | Standard monthly billing - August | 9/30/2011 | Services |
| SBC-California | 32.54 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| SED International, Inc. | 527.49 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| ShopAtShark.com | 2,537.87 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| ShopLocal, LLC | 387.10 | Standard monthly billing - August | 9/30/2011 | Services |
| Shopping.com | 1,044.28 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Shorenstein | 46,741.25 | Standard monthly billing - August | 9/10/2011 | Services |
| Sportsman Supply | 499.00 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| StreetPrices.com | 3.28 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Synnex Corporation | -7,104.44 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Taylor Gerald | 137.99 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| TeleCheck Service Inc. | 79.88 | Standard monthly billing - August | 9/30/2011 | Services |
| Time Warner Telecom | 1,070.79 | Standard monthly billing - August | 9/30/2011 | Services |
| UPS - Web Sites | 278.85 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Vcommerce | 2,253.75 | Standard monthly billing - August | 9/30/2011 | Services |
| Wadds, Elissa C. | 127.50 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Wynit Inc. | -38.89 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Yahoo / Overture Inc. | 1,233.40 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| **TOTAL** | **$ 167,566** | | | |

**POST-PETITON ACCRUED PAYABLES AS OF 8/31/2011**

| | | | | |
|---|---|---|---|---|
| Bill-Me-Later | 19.82 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Bill-Me-Later | 100.02 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| CA Recycle tax | 200.00 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Bill-Me-Later | 207.40 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Bill-Me-Later | 268.48 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| CNB | 300.00 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Co 10 Commission | 362.48 | Various dates from 8/20 to 8/31 | 10/31/2011 | Services |
| Google | 381.34 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Rent-Beltsville-Rent | 400.00 | Standard monthly billing - August | 9/30/2011 | Services |
| Delaware Secretary of State | 1,000.00 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Bill-Me-Later | 1,163.67 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| AMEX | 1,291.30 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Various Expense Reports | 2,000.00 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| Ingram | 3,000.00 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Goods |
| Merchant eSolutions | 7,717.18 | Various dates from 8/20 to 8/31 | 9/30/2011 | Services |
| MindEye | 11,400.00 | Various dates from 8/20 to 8/31 | 9/20/2011 | Services |
| FedEx | 35,000.00 | Various dates from 8/20 to 8/31 | Various dates in Sept. | Services |
| | **$ 64,812** | | | |

| **TOTAL POST-PETITION TRADE PAYABLES & ACCRUALS** | **$ 232,378** | | | |

Exhibit 1
Page 128

# EXHIBIT E

Exhibit 1
Page 129

**ACCOUNTS RECEIVABLE AS OF 8/31/2011**

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL | Due Date |
|---|---|---|---|---|---|---|---|
| **SOUTHERN VALLEY SCHOOL** | $    101.82 | $         - | $  - | $  - | $  - | $      101.82 | 9/30/2011 |
| **VIRGINIA TECH UNIVERSITY** | $    863.86 | $         - | $  - | $  - | $  - | 863.86 | 9/30/2011 |
| **AMERICAN TRAFFIC SOLUTIONS INC** | $         - | $ 17,960.00 | $  - | $  - | $  - | $  17,960.00 | 8/31/2011 |
| **Total Accounts Receivable at 8/31/2011** | $ 965.68 | $ 17,960.00 | $  - | $  - | $  - | $ 18,925.68 | |

**OTHER RECEIVABLE AS OF 8/31/2011**

| | | |
|---|---|---|
| FlipFlopShops.com | $ 24,800.22 | 9/30/2011 |
| Casio MDF | $   6,000.00 | 9/30/2011 |
| New Tech Data | $   2,200.00 | 9/30/2011 |
| Land N Sea | $   2,200.00 | 9/30/2011 |
| Winbuyer | 453.44 | 9/30/2011 |
| **Total Other Receivables as of 8/31/2011** | $ 35,653.66 | |

| | |
|---|---|
| **Total A/R and Other Receivables as of 8/31/2011** | $      54,579 |

Exhibit 1
Page 130

# EXHIBIT F

Exhibit 1
Page 131



**CITY NATIONAL BANK**

The way up.®

| | |
|---|---|
| Page 1 | (2) |
| **Account #:** | 8099 |

This statement: August 31, 2011
Last statement: August 11, 2011

Contact us:
800 773-7100

Irvine Office
9 Executive Circle
Irvine CA 92614

cnb.com

402                                    0830L

RITZ INTERACTIVE, INC
DEBTOR IN POSSESSION (GENERAL ACCOUNT)
CASE# 8:11BK-21690-ES
2010 MAIN ST SUITE 550
IRVINE CA 92614

TRAVELING ABROAD? GET THE CASH YOU NEED BEFORE YOU LEAVE. WE CAN PROVIDE POPULAR FOREIGN CURRENCIES, OFTEN ON THE SAME DAY. CONTACT YOUR RELATIONSHIP MANAGER OR NEAREST BANKING OFFICE FOR RATES AND DETAILS.

## Checking Account

| Account Summary | | Account Activity | | | |
|---|---|---|---|---|---|
| Account number | 8099 | Beginning balance (8/11/2011) | | | $0.00 |
| Minimum balance | $0.00 | | | | |
| Average balance | $312,873.31 | Credits  Deposits     (0) | | + 0.00 | |
| Avg. collected balance | $309,317.00 | Electronic cr  (0) | | + 0.00 | |
| | | Other credits (18) | | + 1,034,430.32 | |
| | | Total credits | | | + $1,034,430.32 |
| | | | | | |
| | | Debits  Checks paid  (2) | | - 1,771.93 | |
| | | Electronic db (19) | | - 399,733.87 | |
| | | Other debits (0) | | - 0.00 | |
| | | Total debits | | | - $401,505.80 |
| | | | | | |
| | | Ending balance (8/31/2011) | | | $632,924.52 |

### OTHER CREDITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-22 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 28,004.77 |
| 8-22 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 122,796.09 |
| 8-22 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0402141786 | | 506,315.38 |
| 8-23 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 4,318.64 |
| 8-23 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 33,227.60 |
| 8-24 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 924.98 |
| 8-24 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 52,532.20 |
| 8-24 | Transfer Credit TRANSFER FROM DEPOSIT ACCOUNT 0402150068 | | 6,260.00 |
| 8-25 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 8,636.54 |
| 8-25 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 75,884.34 |
| 8-26 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 3,415.78 |
| 8-26 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 30,342.42 |
| 8-29 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 23,636.13 |
| 8-29 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 56,663.04 |
| 8-30 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 4,906.58 |
| 8-30 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 43,026.02 |
| 8-31 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402141697 | | 1,429.77 |
| 8-31 | Automatic TRANSFER FROM DEPOSIT SYSTEM ACCOUNT 0402150041 | | 32,110.04 |

Exhibit 1
Page 132

RITZ INTERACTIVE, INC
August 31, 2011

Page 2
Account #:      8099

## CHECKS PAID

| Number | Date | Amount | Number | Date | Amount | Number | Date | Amount | Number | Date | Amount |
|--------|------|--------|--------|------|--------|--------|------|--------|--------|------|--------|
| 900 | 8-25 | 972.96 | 902 * | 8-23 | 798.97 | * Skip in check sequence | | | | | |

## ELECTRONIC DEBITS

| Date | Description | Debits |
|------|-------------|--------|
| 8-23 | Domestic Wire | 65,000.00 |
| 8-24 | Domestic Wire | 40,384.44 |
| 8-25 | Domestic Wire | 6,833.92 |
| 8-25 | Domestic Wire | 16,494.00 |
| 8-26 | Domestic Wire | 161.72 |
| 8-26 | Domestic Wire | 312.88 |
| 8-26 | Domestic Wire | 925.00 |
| 8-26 | Domestic Wire | 2,721.39 |
| 8-26 | Domestic Wire | 24,484.94 |
| 8-26 | Domestic Wire | 63,853.19 |
| 8-29 | Domestic Wire | 51,805.05 |
| 8-30 | Domestic Wire | 1,359.14 |
| 8-30 | Domestic Wire | 3,567.24 |
| 8-30 | Domestic Wire | 10,146.30 |
| 8-30 | Domestic Wire | 20,766.97 |
| 8-30 | Domestic Wire | 22,835.16 |
| 8-31 | Domestic Wire | 1,090.27 |
| 8-31 | Domestic Wire | 16,854.35 |
| 8-31 | Domestic Wire | 50,137.91 |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|------|--------|
| 8-22 | 657,116.24 | 8-24 | 648,196.25 | 8-26 | 649,715.33 | 8-30 | 667,467.24 |
| 8-23 | 628,863.51 | 8-25 | 708,416.25 | 8-29 | 678,209.45 | 8-31 | 632,924.52 |

Thank you for banking with Irvine Office

Exhibit 1
Page 133



**CITY NATIONAL BANK**

The way up.®

| | |
|---|---|
| Page 1 | (0) |
| **Account #:** | 8285 |

This statement: August 31, 2011
Last statement: August 18, 2011

**Contact us:**
800 773-7100

Irvine Office
9 Executive Circle
Irvine CA 92614

cnb.com

402                                    0830N
RITZ INTERACTIVE, INC.
DEBTOR-IN POSSESSION  (PAYROLL ACCOUNT)
CASE #:8:11-BK-21690-ES
2010 MAIN ST SUITE 550
IRVINE CA 92614

TRAVELING ABROAD?  GET THE CASH YOU NEED BEFORE YOU LEAVE.  WE CAN PROVIDE POPULAR FOREIGN CURRENCIES, OFTEN ON THE SAME DAY.  CONTACT YOUR RELATIONSHIP MANAGER OR NEAREST BANKING OFFICE FOR RATES AND DETAILS.

## Checking Account

| Account Summary | | Account Activity | |
|---|---|---|---|
| Account number | 8285 | Beginning balance  (8/18/2011) | $0.00 |
| Minimum balance | $0.00 | | |
| Average balance | $0.00 | Credits | + $0.00 |
| Avg. collected balance | $0.00 | Debits | $0.00 |
| | | Ending balance  (8/31/2011) | $0.00 |

**\*\* No activity this statement period \*\***

Thank you for banking with Irvine Office

Exhibit 1
Page 134



CITY NATIONAL BANK
The way up.®

Page 1          (O)

Account #:          8293

This statement: August 31, 2011
Last statement: August 18, 2011

Contact us:
800 773-7100

Irvine Office
9 Executive Circle
Irvine CA 92614

402                    0830N
RITZ INTERACTIVE, INC.
DEBTOR-IN POSSESSION (TX ACCOUNT)
CASE # 8:11-BK-21690-ES
2010 MAIN ST SUITE 550
IRVINE CA 92614

cnb.com

TRAVELING ABROAD? GET THE CASH YOU NEED BEFORE YOU LEAVE. WE CAN PROVIDE POPULAR FOREIGN CURRENCIES, OFTEN ON THE SAME DAY. CONTACT YOUR RELATIONSHIP MANAGER OR NEAREST BANKING OFFICE FOR RATES AND DETAILS.

## Checking Account

| Account Summary | | Account Activity | |
|---|---|---|---|
| Account number | 8293 | Beginning balance (8/18/2011) | $0.00 |
| Minimum balance | $0.00 | | |
| Average balance | $0.00 | Credits | + $0.00 |
| Avg. collected balance | $0.00 | Debits | - $0.00 |
| | | Ending balance (8/31/2011) | $0.00 |

**\* \* No activity this statement period \* \***

Thank you for banking with Irvine Office

Exhibit 1
Page 135



**CITY NATIONAL BANK**
The way up.®

| | |
|---|---|
| Page 1 | (0) |
| Account #: | 0041 |

This statement: August 31, 2011
Last statement: July 29, 2011

Contact us:
800 773-7100

Irvine Office
9 Executive Circle
Irvine CA 92614

402                    0830N
RITZ INTERACTIVE, INC
DBA RITZCAMERA.COM
DBA BOATERSWORLD.COM
2010 MAIN ST SUITE 550
IRVINE CA 92614

cnb.com

TRAVELING ABROAD? GET THE CASH YOU NEED BEFORE YOU LEAVE. WE CAN PROVIDE POPULAR FOREIGN CURRENCIES, OFTEN ON THE SAME DAY. CONTACT YOUR RELATIONSHIP MANAGER OR NEAREST BANKING OFFICE FOR RATES AND DETAILS.

## Analyzed Business Checking

| Account Summary | | Account Activity | | |
|---|---|---|---|---|
| Account number | 0041 | Beginning balance (7/29/2011) | | $0.00 |
| Minimum balance | $0.00 | | | |
| Average balance | $305.35 | Credits  Deposits       (6) | + 108,020.28 | |
| Avg. collected balance | $305.00 | Electronic cr  (439) | + 1,636,564.11 | |
| | | Other credits (1) | + 2,000.00 | |
| | | Total credits | | + $1,746,584.39 |
| | | Debits  Checks paid  (0) | - 0.00 | |
| | | Electronic db (132) | - 60,565.27 | |
| | | Other debits (24) | - 1,683,800.29 | |
| | | Total debits | | - $1,744,365.56 |
| | | Ending balance (8/31/2011) | | $2,218.83 |

### DEPOSITS

| Date | Description | Reference | Credits |
|---|---|---|---|
| 8-1 | Deposit | | 25,570.17 |
| 8-12 | Deposit | | 4,964.40 |
| 8-12 | Deposit | | 10,445.92 |
| 8-12 | Deposit | | 21,205.11 |
| 8-24 | Deposit | | 29,074.20 |
| 8-31 | Deposit | | 16,760.48 |

### ELECTRONIC CREDITS

| Date | Description | Credits |
|---|---|---|
| 8-1 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110801 6450024 | 18.23 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097675 | 21.89 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 1045666328 | 25.93 |
| 8-1 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110801 6442062 | 29.30 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5049019292 | 35.65 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097432 | 41.95 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110801 000941000097431 | 43.89 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 1044957561 | 67.76 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 2010MAINST | 84.89 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097432 | 101.87 |

Exhibit 1
Page 136

RITZ INTERACTIVE, INC
August 31, 2011

Page 2
Account #:    0041

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|--------:|
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097675 | 106.25 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 2010MAINST | 109.94 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097430 | 157.98 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 1040187189 | 223.83 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5049019292 | 300.94 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 305.19 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097675 | 446.08 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097430 | 451.89 |
| 8-1 | Preauthorized Credit PAYPAL TRANSFER 110801 4SU2254DZQ3SY | 1,545.76 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 1,614.53 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 1,662.48 |
| 8-1 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110801 6442782 | 1,712.25 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5042760371 | 1,760.05 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 1,789.30 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097430 | 3,282.61 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 3,317.75 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5042082669 | 4,491.48 |
| 8-1 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110731 601101300519434 | 4,539.15 |
| 8-1 | Preauthorized Credit FNBO PYMT PROC 110801 0010313169 | 4,616.84 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5042760371 | 4,885.49 |
| 8-1 | Preauthorized Credit FNBO PYMT PROC 110801 0010313169 | 5,204.25 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5042082669 | 6,047.32 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5042751479 | 6,278.66 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097430 | 6,466.35 |
| 8-1 | Preauthorized Credit PAYPAL TRANSFER 110801 4SU2254AK5GHC | 6,883.06 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 7,165.05 |
| 8-1 | Preauthorized Credit PAYPAL TRANSFER 110801 4SU2254CELABU | 10,809.83 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 24,289.93 |
| 8-1 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 37,731.47 |
| 8-1 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110801 5042751479 | 42,131.54 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 5.64 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097432 | 26.95 |
| 8-2 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110802 1044957561 | 60.20 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 123.88 |
| 8-2 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110802 7957592 | 231.11 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 257.61 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097675 | 263.03 |
| 8-2 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110802 2010MAINST | 293.18 |
| 8-2 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110802 7955980 | 409.94 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 528.25 |
| 8-2 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110802 7950938 | 582.03 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 598.95 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097430 | 622.02 |
| 8-2 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110802 601101300519434 | 721.95 |
| 8-2 | Preauthorized Credit PAYPAL TRANSFER 110802 4SU2254GHDRQQ | 1,408.31 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 2,085.03 |
| 8-2 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110802 5042082669 | 2,420.53 |
| 8-2 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110802 601101300519434 | 2,454.01 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097430 | 2,640.57 |
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097430 | 2,997.28 |
| 8-2 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110802 7956693 | 3,080.00 |
| 8-2 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110802 5042760371 | 4,333.94 |
| 8-2 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110802 5042751479 | 6,403.03 |

Exhibit 1
Page 137



CITY NATIONAL BANK
The way up.

| RITZ INTERACTIVE, INC | Page 3 |
| August 31, 2011 | Account #:      0041 |

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|---------|
| 8-2 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 23,920.40 |
| 8-3 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110803 5042751479 | 54.71 |
| 8-3 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110803 000941000097430 | 80.89 |
| 8-3 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110803 5042082669 | 109.78 |
| 8-3 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110803 000941000097431 | 139.99 |
| 8-3 | Preauthorized Credit PAYPAL TRANSFER 110803 4SU2254KDM2E4 | 10,326.28 |
| 8-3 | Preauthorized Credit FNBO PYMT PROC 110803 0010313169 | 16,803.60 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097675 | 23.89 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097431 | 94.99 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097675 | 173.27 |
| 8-4 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110804 4539835 | 280.05 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110804 000941000097431 | 379.89 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097432 | 482.49 |
| 8-4 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110804 4541757 | 798.10 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097430 | 823.41 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097430 | 2,099.88 |
| 8-4 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110804 601101300519434 | 4,193.79 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097431 | 6,663.80 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097430 | 6,667.79 |
| 8-4 | Preauthorized Credit FNBO PYMT PROC 110804 0010313169 | 7,044.30 |
| 8-4 | Preauthorized Credit PAYPAL TRANSFER 110804 4SU2254MUQRF6 | 9,132.92 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097431 | 9,380.78 |
| 8-4 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097431 | 40,386.27 |
| 8-5 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110805 5546020 | 18.23 |
| 8-5 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110805 5542000 | 63.36 |
| 8-5 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110805 1045600038 | 64.76 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097431 | 102.47 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097430 | 110.77 |
| 8-5 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110805 601101300519434 | 133.25 |
| 8-5 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110805 2010MAINST | 204.94 |
| 8-5 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110805 5049019292 | 218.12 |
| 8-5 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110805 5544903 | 264.32 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097675 | 483.45 |
| 8-5 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110805 5042082669 | 3,788.19 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097431 | 4,845.46 |
| 8-5 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110805 5042760371 | 4,918.51 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097431 | 5,634.39 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097430 | 10,684.51 |
| 8-5 | Preauthorized Credit FNBO PYMT PROC 110805 0010313169 | 12,771.82 |
| 8-5 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097431 | 13,781.40 |
| 8-5 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110805 5042751479 | 18,161.69 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097675 | 21.80 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042797282 | 31.75 |
| 8-8 | Preauthorized Credit GOOGLE DEPOSIT EANGLER 110808 0723732 | 41.78 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097430 | 44.03 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 1044957561 | 69.69 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5049019292 | 104.00 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 1044957561 | 136.30 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 162.77 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 195.02 |
| 8-8 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110808 0722887 | 253.35 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097432 | 390.20 |
| 8-8 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110808 0722164 | 391.32 |

Exhibit 1
Page 138

RITZ INTERACTIVE, INC       Page 4
August 31, 2011       Account #:   0041

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|--------:|
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097430 | 396.44 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097675 | 417.04 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 777.02 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 1,089.65 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 2010MAINST | 1,181.06 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042760371 | 1,252.32 |
| 8-8 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110808 0728323 | 1,483.19 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042082669 | 1,657.57 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 2010MAINST | 1,676.93 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097675 | 1,769.75 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042082669 | 1,960.80 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 2,069.02 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 3,164.96 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097430 | 3,977.40 |
| 8-8 | Preauthorized Credit FNBO PYMT PROC 110808 0010313169 | 4,640.77 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097430 | 4,699.72 |
| 8-8 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110807 601101300519434 | 5,639.78 |
| 8-8 | Preauthorized Credit FNBO PYMT PROC 110808 0010313169 | 6,888.32 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042760371 | 6,976.06 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 7,586.03 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042751479 | 10,684.43 |
| 8-8 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110808 5042751479 | 16,480.83 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 20,094.24 |
| 8-8 | Preauthorized Credit PAYPAL TRANSFER 110808 4SU2254VB53SA | 20,564.40 |
| 8-8 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 46,865.16 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 5042797282 | 16.55 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097431 | 38.18 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097430 | 74.83 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 1040187189 | 169.75 |
| 8-9 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110809 3497783 | 225.12 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097432 | 302.39 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 1044957561 | 328.20 |
| 8-9 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110809 3509532 | 609.88 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 2010MAINST | 756.82 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097675 | 880.73 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 5042760371 | 1,675.20 |
| 8-9 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110809 3500694 | 1,747.52 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 5042082669 | 2,157.59 |
| 8-9 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110809 601101300519434 | 2,278.27 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097431 | 2,300.42 |
| 8-9 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110809 601101300519434 | 2,919.26 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097431 | 6,184.88 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097430 | 6,886.16 |
| 8-9 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110809 5042751479 | 11,739.37 |
| 8-9 | Preauthorized Credit PAYPAL TRANSFER 110809 4SU2254ZDNR6G | 29,434.92 |
| 8-9 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097431 | 34,191.26 |
| 8-10 | Preauthorized Credit AMERICAN EXPRESS AXP DISCNT 110810 5042760371 | .31 |
| 8-10 | Preauthorized Credit AMERICAN EXPRESS AXP DISCNT 110810 5042751479 | 14.53 |
| 8-10 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110810 000941000097431 | 33.89 |
| 8-10 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110810 000941000097431 | 10,064.13 |
| 8-10 | Preauthorized Credit FNBO PYMT PROC 110810 0010313169 | 15,599.29 |
| 8-11 | Preauthorized Credit AMERICAN EXPRESS AXP DISCNT 110811 5042760371 | 7.71 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097431 | 22.09 |

Exhibit 1
Page 139



**CITY NATIONAL BANK**

The way up.®

RITZ INTERACTIVE, INC.                                Page 5
August 31, 2011                                      **Account #:**      0041

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|--------:|
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097430 | 75.50 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097432 | 107.90 |
| 8-11 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110811 2010MAINST | 142.94 |
| 8-11 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110811 5042082669 | 145.78 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097430 | 199.55 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097675 | 247.72 |
| 8-11 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110811 5042751479 | 273.67 |
| 8-11 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110811 5010702 | 282.17 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110811 000941000097431 | 541.20 |
| 8-11 | Preauthorized Credit BUY.COM DIRECT DEP 110811 | 715.18 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097431 | 1,268.58 |
| 8-11 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110811 601101300519434 | 4,704.81 |
| 8-11 | Preauthorized Credit FNBO PYMT PROC 110811 0010313169 | 4,813.45 |
| 8-11 | Preauthorized Credit PAYPAL TRANSFER 110811 4SU22555SPDUG | 6,013.02 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097431 | 8,690.70 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097430 | 10,242.84 |
| 8-11 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097431 | 44,037.84 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 1045666302 | 19.94 |
| 8-12 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110812 6693721 | 26.08 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 5049019292 | 41.95 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097675 | 91.83 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097430 | 109.53 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097432 | 117.40 |
| 8-12 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110812 6684568 | 169.82 |
| 8-12 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110812 6687285 | 403.25 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 1040187189 | 495.66 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097675 | 577.97 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 2010MAINST | 683.77 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110812 000941000097431 | 849.99 |
| 8-12 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110812 6689376 | 924.44 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097430 | 1,551.89 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097431 | 1,921.34 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 5042760371 | 2,673.60 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 5042082669 | 3,392.13 |
| 8-12 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110812 601101300519434 | 3,558.79 |
| 8-12 | Preauthorized Credit FNBO PYMT PROC 110812 0010313169 | 3,646.68 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097430 | 5,367.43 |
| 8-12 | Preauthorized Credit PAYPAL TRANSFER 110812 4SU22557UUZNS | 7,496.71 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097431 | 12,245.92 |
| 8-12 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110812 5042751479 | 17,902.96 |
| 8-12 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110812 000941000097431 | 18,432.17 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 1040187189 | 13.88 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS AXP DISCNT 110815 2010MAINST | 24.34 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 1044957561 | 53.02 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110815 000941000097430 | 80.92 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 1044957561 | 83.26 |
| 8-15 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110815 7512733 | 120.21 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 1040187189 | 130.32 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097432 | 190.60 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097432 | 207.94 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097430 | 221.60 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097675 | 234.06 |

Exhibit 1
Page 140

RITZ INTERACTIVE, INC
August 31, 2011

Page 6
Account #:     0041

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|--------:|
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097430 | 307.68 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 322.99 |
| 8-15 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110815 7509920 | 460.26 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097675 | 679.78 |
| 8-15 | Preauthorized Credit PAYPAL TRANSFER 110815 4SU2255DKJ3NA | 1,109.28 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 2010MAINST | 1,425.95 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 1,804.90 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110815 000941000097431 | 2,036.92 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 5042760371 | 2,342.09 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 5042082669 | 2,392.86 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 2,397.70 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 5042751479 | 2,482.42 |
| 8-15 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110814 601101300519434 | 2,822.58 |
| 8-15 | Preauthorized Credit FNBO PYMT PROC 110815 0010313169 | 2,919.04 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 5042760371 | 3,344.19 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097430 | 3,419.75 |
| 8-15 | Preauthorized Credit FNBO PYMT PROC 110815 0010313169 | 3,465.21 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097430 | 3,467.35 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 3,867.13 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 5042082669 | 4,222.90 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 7,015.57 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 8,637.95 |
| 8-15 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110815 5042751479 | 9,119.00 |
| 8-15 | Preauthorized Credit PAYPAL TRANSFER 110815 4SU2255BYJZ7S | 9,256.46 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 18,105.11 |
| 8-15 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110815 000941000097431 | 26,319.12 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097431 | 35.89 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097675 | 51.40 |
| 8-16 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110816 5049019292 | 55.95 |
| 8-16 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110816 1044957561 | 56.46 |
| 8-16 | Preauthorized Credit FNBO PYMT PROC 110816 0010313169 | 113.53 |
| 8-16 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110816 7880156 | 115.92 |
| 8-16 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110816 7865401 | 149.39 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097430 | 239.88 |
| 8-16 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110816 2010MAINST | 448.76 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097431 | 464.87 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097432 | 477.54 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097675 | 546.55 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110816 000941000097431 | 876.93 |
| 8-16 | Preauthorized Credit PAYPAL TRANSFER 110816 4SU2255FQRJ8C | 1,073.90 |
| 8-16 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110816 5042751479 | 1,079.41 |
| 8-16 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110816 5042082669 | 1,215.75 |
| 8-16 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110816 5042760371 | 1,328.38 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097431 | 1,823.79 |
| 8-16 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110816 601101300519434 | 2,499.79 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097431 | 3,031.45 |
| 8-16 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110816 601101300519434 | 4,318.71 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097430 | 4,582.19 |
| 8-16 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097431 | 8,144.94 |
| 8-17 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110817 5042082669 | 41.89 |
| 8-17 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110817 000941000097431 | 231.76 |
| 8-17 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110817 000941000097431 | 465.19 |
| 8-17 | Preauthorized Credit FNBO PYMT PROC 110817 0010313169 | 12,893.23 |

Exhibit 1
Page 141

# CITY NATIONAL BANK
### The way up.®

RITZ INTERACTIVE, INC
August 31, 2011

Page 7
Account #:  0041

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|--------:|
| 8-17 | Preauthorized Credit PAYPAL TRANSFER 110817 4SU2255J9TCYA | 13,166.73 |
| 8-18 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110818 3077449 | 22.16 |
| 8-18 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110818 3074900 | 27.98 |
| 8-18 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110818 3070685 | 31.97 |
| 8-18 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110818 5042760389 | 50.00 |
| 8-18 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110818 5042082669 | 56.83 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097675 | 57.94 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110818 000941000097430 | 73.89 |
| 8-18 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110818 5042751479 | 100.00 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097675 | 219.03 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097432 | 331.55 |
| 8-18 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110818 3071407 | 632.70 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097430 | 656.42 |
| 8-18 | Preauthorized Credit BUY.COM DIRECT DEP 110818 | 889.86 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097431 | 7,726.93 |
| 8-18 | Preauthorized Credit PAYPAL TRANSFER 110818 4SU2255LTCBU8 | 8,902.12 |
| 8-18 | Preauthorized Credit FNBO PYMT PROC 110818 0010313169 | 9,912.18 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097430 | 10,272.00 |
| 8-18 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097431 | 30,626.99 |
| 8-19 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110819 4594067 | 156.55 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097430 | 167.00 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097430 | 187.79 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097432 | 246.59 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097675 | 247.25 |
| 8-19 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110819 4584506 | 308.94 |
| 8-19 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110819 4586231 | 1,165.00 |
| 8-19 | Preauthorized Credit FNBO PYMT PROC 110819 0010313169 | 4,255.16 |
| 8-19 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110819 601101300519434 | 4,533.76 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097430 | 5,462.68 |
| 8-19 | Preauthorized Credit PAYPAL TRANSFER 110819 4SU2255P9USTY | 8,145.96 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097431 | 9,856.26 |
| 8-19 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110819 000941000097431 | 30,034.25 |
| 8-22 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110822 5698613 | 18.23 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042797282 | 28.89 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097432 | 66.95 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 70.83 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097432 | 85.35 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097675 | 104.91 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 1044957561 | 111.65 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 1040187189 | 163.83 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 2010MAINST | 169.94 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042760389 | 179.97 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 1044957561 | 184.31 |
| 8-22 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110822 5703761 | 223.13 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 1040187189 | 257.87 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110822 000941000097431 | 314.99 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000098641 | 323.00 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097675 | 344.52 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5049019292 | 463.70 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097675 | 485.24 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 541.36 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 613.73 |
| 8-22 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110822 5695534 | 684.59 |

Exhibit 1
Page 142

RITZ INTERACTIVE, INC                    Page 8
August 31, 2011                          Account #:      0041

**ELECTRONIC CREDITS (Continued)**

| Date | Description | Credits |
|------|-------------|--------:|
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 766.57 |
| 8-22 | Preauthorized Credit PAYPAL TRANSFER 110822 4SU2255V657GW | 988.21 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 1,353.12 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 1,475.18 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 1,499.21 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 1,823.73 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 2,109.78 |
| 8-22 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110821 601101300519434 | 2,369.24 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042082669 | 2,472.73 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042760371 | 3,013.21 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 2010MAINST | 3,121.14 |
| 8-22 | Preauthorized Credit FNBO PYMT PROC 110822 0010313169 | 3,319.91 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 3,545.32 |
| 8-22 | Preauthorized Credit PAYPAL TRANSFER 110822 4SU2255RLWVUJ | 4,437.68 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042760371 | 4,898.69 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 5,728.57 |
| 8-22 | Preauthorized Credit PAYPAL TRANSFER 110822 4SU2255TKHY9G | 6,596.17 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 7,793.92 |
| 8-22 | Preauthorized Credit FNBO PYMT PROC 110822 0010313169 | 8,879.04 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042082669 | 9,930.37 |
| 8-22 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097431 | 10,215.74 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042751479 | 11,994.82 |
| 8-22 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110822 5042751479 | 20,846.44 |
| 8-23 | Preauthorized Credit GOOGLE DEPOSIT SCRAPBOOKA 110823 7068778 | 12.59 |
| 8-23 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110823 5049019292 | 51.95 |
| 8-23 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110823 7068258 | 151.73 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097675 | 173.31 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097431 | 197.67 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097432 | 206.90 |
| 8-23 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110823 7071367 | 213.14 |
| 8-23 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110823 1044957561 | 242.87 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH CHBK 110823 000941000097431 | 399.99 |
| 8-23 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110823 601101300519434 | 1,359.09 |
| 8-23 | Preauthorized Credit PAYPAL TRANSFER 110823 4SU2255XFKG6J | 1,425.57 |
| 8-23 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110823 5042760371 | 2,352.60 |
| 8-23 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110823 2010MAINST | 2,402.91 |
| 8-23 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110823 5042082669 | 2,478.68 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097431 | 2,825.58 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097430 | 2,833.66 |
| 8-23 | Preauthorized Credit AMERICAN EXPRESS SETTLEMENT 110823 5042751479 | 3,091.28 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097431 | 4,220.05 |
| 8-23 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110823 000941000097431 | 9,131.31 |
| 8-24 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110824 000941000097431 | 159.72 |
| 8-24 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110824 000941000097431 | 627.94 |
| 8-24 | Preauthorized Credit PAYPAL TRANSFER 110824 4SU2255Z69QU | 9,877.54 |
| 8-24 | Preauthorized Credit FNBO PYMT PROC 110824 0010313169 | 12,249.52 |
| 8-25 | Preauthorized Credit GOOGLE DEPOSIT SHOPATSHAR 110825 0372381 | 149.99 |
| 8-25 | Preauthorized Credit GOOGLE DEPOSIT WOLFCAMERA 110825 0376612 | 238.64 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097430 | 253.76 |
| 8-25 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110825 0376859 | 287.69 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097430 | 309.82 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097432 | 434.39 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097430 | 453.86 |

Exhibit 1
Page 143



**CITY NATIONAL BANK**

The way up.®

RITZ INTERACTIVE, INC                    Page 9
August 31, 2011                          Account #:        0041

### ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|--------:|
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097431 | 668.51 |
| 8-25 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110825 0371378 | 947.98 |
| 8-25 | Preauthorized Credit BUY.COM DIRECT DEP 110825 | 2,680.59 |
| 8-25 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110825 601101300519434 | 2,932.70 |
| 8-25 | Preauthorized Credit FNBO PYMT PROC 110825 0010313169 | 3,580.98 |
| 8-25 | Preauthorized Credit PAYPAL TRANSFER 110825 4SU22564DKR4S | 5,747.79 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097430 | 8,289.58 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097431 | 8,791.59 |
| 8-25 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110825 000941000097431 | 40,121.05 |
| 8-26 | Preauthorized Credit GOOGLE DEPOSIT EANGLER 110826 1973163 | 24.51 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097675 | 66.49 |
| 8-26 | Preauthorized Credit GOOGLE DEPOSIT CAMERAWORL 110826 1973407 | 80.33 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097430 | 129.94 |
| 8-26 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110826 1971308 | 172.44 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097432 | 174.96 |
| 8-26 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110826 601101300519434 | 288.99 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097432 | 499.90 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097431 | 748.55 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097675 | 1,343.22 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097430 | 1,633.83 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097431 | 2,631.43 |
| 8-26 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110826 000941000097431 | 7,148.65 |
| 8-26 | Preauthorized Credit PAYPAL TRANSFER 110826 4SU22566X46WA | 7,829.82 |
| 8-26 | Preauthorized Credit FNBO PYMT PROC 110826 0010313169 | 8,481.44 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097675 | 41.83 |
| 8-29 | Preauthorized Credit GOOGLE DEPOSIT SCRAPBOOKA 110829 3646035 | 50.10 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097432 | 83.90 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097432 | 96.95 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097430 | 319.83 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097430 | 341.32 |
| 8-29 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110829 3646440 | 612.32 |
| 8-29 | Preauthorized Credit PAYPAL TRANSFER 110829 4SU2256CM5LF6 | 616.41 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097431 | 867.55 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097430 | 1,112.15 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097430 | 1,206.41 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097675 | 1,446.68 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097430 | 1,523.42 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097431 | 1,538.00 |
| 8-29 | Preauthorized Credit FNBO PYMT PROC 110829 0010313169 | 1,968.32 |
| 8-29 | Preauthorized Credit DISCOVER NETWORK SETTLEMENT 110828 601101300519434 | 2,055.16 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097431 | 2,310.14 |
| 8-29 | Preauthorized Credit PAYPAL TRANSFER 110829 4SU2256964TJA | 2,722.64 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097430 | 4,680.64 |
| 8-29 | Preauthorized Credit PAYPAL TRANSFER 110829 4SU2256BE2VPE | 5,386.14 |
| 8-29 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110829 000941000097431 | 14,808.71 |
| 8-29 | Preauthorized Credit FNBO PYMT PROC 110829 0010313169 | 16,029.94 |
| 8-30 | Preauthorized Credit GOOGLE DEPOSIT EANGLER 110830 2672567 | 22.20 |
| 8-30 | Preauthorized Credit GOOGLE DEPOSIT BOATERSWOR 110830 2667004 | 74.74 |
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097430 | 436.90 |
| 8-30 | Preauthorized Credit GOOGLE DEPOSIT RITZCAMERA 110830 2669127 | 488.43 |
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097675 | 851.37 |
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097431 | 1,424.99 |
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097430 | 3,286.96 |

Exhibit 1
Page 144

RITZ INTERACTIVE, INC
August 31, 2011

Page 10
Account #:          0041

## ELECTRONIC CREDITS (Continued)

| Date | Description | Credits |
|------|-------------|---------|
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097431 | 4,842.74 |
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097431 | 5,073.11 |
| 8-30 | Preauthorized Credit MERCHE-SOLUTIONS MERCH DEP 110830 000941000097431 | 23,391.83 |
| 8-31 | Preauthorized Credit PAYPAL TRANSFER 110831 4SU2256HC7YHE | 8,416.60 |
| 8-31 | Preauthorized Credit FNBO PYMT PROC 110831 0010313169 | 8,438.30 |

## OTHER CREDITS

| Date | Description | Reference | Credits |
|------|-------------|-----------|---------|
| 8-1 | Deposit Adj-Credit | | 2,000.00 |

## ELECTRONIC DEBITS

| Date | Description | Debits |
|------|-------------|--------|
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 1045666328 | .75 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5049019292 | 1.03 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 1044957561 | 1.97 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 2010MAINST | 2.46 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 2010MAINST | 3.19 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 1040187189 | 6.49 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5049019292 | 8.73 |
| 8-1 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110801 000941000097431 | 26.95 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5042760371 | 51.04 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5042082669 | 130.25 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5042760371 | 141.67 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5042082669 | 175.37 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5042751479 | 182.08 |
| 8-1 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110801 000941000097431 | 849.99 |
| 8-1 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110801 5042751479 | 1,221.81 |
| 8-2 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110802 1044957561 | 1.75 |
| 8-2 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110802 2010MAINST | 8.50 |
| 8-2 | Preauthorized Debit MERCHE-SOLUTIONS BILLING 110802 000941000098641 | 21.44 |
| 8-2 | Preauthorized Debit FNBO PYMT PROC 110802 0007557116 | 50.00 |
| 8-2 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110802 5042082669 | 70.20 |
| 8-2 | Preauthorized Debit MERCHE-SOLUTIONS BILLING 110802 000941000097432 | 74.74 |
| 8-2 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110802 5042760371 | 125.68 |
| 8-2 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110802 5042751479 | 185.69 |
| 8-2 | Preauthorized Debit MERCHE-SOLUTIONS BILLING 110802 000941000097675 | 260.45 |
| 8-2 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110802 000941000097431 | 998.94 |
| 8-2 | Preauthorized Debit DISCOVER NETWORK SETTLEMENT 110802 601101300519434 | 1,762.80 |
| 8-2 | Preauthorized Debit MERCHE-SOLUTIONS BILLING 110802 000941000097430 | 3,470.87 |
| 8-2 | Preauthorized Debit FNBO PYMT PROC 110802 0010313169 | 8,367.57 |
| 8-2 | Preauthorized Debit MERCHE-SOLUTIONS BILLING 110802 000941000097431 | 21,131.00 |
| 8-3 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110803 5042751479 | 1.59 |
| 8-3 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110803 5042082669 | 3.18 |
| 8-3 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110803 000941000097431 | 817.89 |
| 8-3 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110803 000941000097431 | 926.93 |
| 8-3 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110803 000941000097431 | 926.93 |
| 8-3 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110803 000941000097431 | 926.94 |
| 8-4 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110804 000941000097431 | 1,780.29 |
| 8-5 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110805 1045600038 | 1.88 |
| 8-5 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110805 2010MAINST | 5.94 |
| 8-5 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110805 5049019292 | 6.33 |
| 8-5 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110805 000941000097432 | 80.00 |
| 8-5 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110805 5042082669 | 109.86 |

Exhibit 1
Page 145



**CITY NATIONAL BANK**

The way up.

RITZ INTERACTIVE, INC                                      Page 11
August 31, 2011                                  Account #:        0041

## ELECTRONIC DEBITS (Continued)

| Date | Description | Debits |
|------|-------------|--------|
| 8-5 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110805 5042760371 | 142.64 |
| 8-5 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110805 5042751479 | 526.69 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042797282 | .92 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 1044957561 | 2.02 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5049019292 | 3.02 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 1044957561 | 3.95 |
| 8-8 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097430 | 9.17 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 2010MAINST | 34.25 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042760371 | 36.32 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042082669 | 48.07 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 2010MAINST | 48.63 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042082669 | 56.86 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042760371 | 197.21 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042751479 | 309.85 |
| 8-8 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097431 | 453.51 |
| 8-8 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110808 5042751479 | 477.94 |
| 8-8 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110808 000941000097430 | 504.57 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 5042797282 | .48 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 1040187189 | 4.92 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 1044957561 | 9.52 |
| 8-9 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097675 | 17.52 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 2010MAINST | 21.95 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 5042760371 | 48.58 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 5042082669 | 62.25 |
| 8-9 | Preauthorized Debit FNBO PYMT PROC 110809 0010313169 | 144.88 |
| 8-9 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110809 000941000097430 | 210.06 |
| 8-9 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110809 5042751479 | 340.44 |
| 8-9 | Preauthorized Debit FNBO PYMT PROC 110809 0010313169 | 418.15 |
| 8-10 | Preauthorized Debit AMERICAN EXPRESS COLLECTION 110810 5042760371 | 10.74 |
| 8-10 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110810 000941000097430 | 80.92 |
| 8-10 | Preauthorized Debit AMERICAN EXPRESS COLLECTION 110810 5042760371 | 500.94 |
| 8-10 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110810 000941000097431 | 876.93 |
| 8-11 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110811 2010MAINST | 4.15 |
| 8-11 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110811 5042082669 | 4.23 |
| 8-11 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110811 5042751479 | 7.94 |
| 8-11 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097431 | 189.40 |
| 8-11 | Preauthorized Debit AMERICAN EXPRESS COLLECTION 110811 5042760371 | 265.94 |
| 8-11 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110811 000941000097430 | 324.49 |
| 8-11 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110811 000941000097431 | 2,036.92 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 1045666302 | .58 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 5049019292 | 1.22 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 1040187189 | 14.37 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 2010MAINST | 19.83 |
| 8-12 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110812 000941000097430 | 73.89 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 5042760371 | 77.53 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 5042082669 | 98.37 |
| 8-12 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110812 5042751479 | 519.19 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 1040187189 | .40 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 1044957561 | 1.54 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 1040187189 | 2.42 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 1040187189 | 3.78 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 2010MAINST | 41.35 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 5042760371 | 67.92 |

Exhibit 1
Page 146

RITZ INTERACTIVE, INC                    Page 12
August 31, 2011                          Account #:        0041

## ELECTRONIC DEBITS (Continued)

| Date | Description | Debits |
|------|-------------|-------:|
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 5042082669 | 69.39 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 5042751479 | 71.99 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 5042760371 | 96.98 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 5042082669 | 122.46 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110815 5042751479 | 264.45 |
| 8-15 | Preauthorized Debit AMERICAN EXPRESS COLLECTION 110815 2010MAINST | 839.16 |
| 8-16 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110816 5049019292 | 1.62 |
| 8-16 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110816 1044957561 | 1.64 |
| 8-16 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110816 000941000097430 | 7.30 |
| 8-16 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110816 2010MAINST | 13.01 |
| 8-16 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110816 5042751479 | 31.30 |
| 8-16 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110816 5042082669 | 35.26 |
| 8-16 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110816 5042760371 | 43.62 |
| 8-17 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110817 5042082669 | 1.21 |
| 8-17 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110817 000941000097431 | 314.99 |
| 8-17 | Preauthorized Debit MERCHE-SOLUTIONS MERCH CHBK 110817 000941000097431 | 399.99 |
| 8-17 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110817 000941000097431 | 455.92 |
| 8-18 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110818 5042760389 | 1.45 |
| 8-18 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110818 5042082669 | 1.65 |
| 8-18 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110818 5042751479 | 2.90 |
| 8-18 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097431 | 163.94 |
| 8-18 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110818 000941000097431 | 1,524.77 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042797282 | .84 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 1044957561 | 3.24 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 1040187189 | 4.75 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 2010MAINST | 4.93 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042760389 | 5.22 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 1044957561 | 5.35 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 1040187189 | 7.48 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5049019292 | 13.45 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042082669 | 71.71 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042760371 | 87.39 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 2010MAINST | 90.51 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042760371 | 142.06 |
| 8-22 | Preauthorized Debit MERCHE-SOLUTIONS MERCH DEP 110822 000941000097430 | 142.44 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042082669 | 287.98 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042751479 | 347.85 |
| 8-22 | Preauthorized Debit AMERICAN EXPRESS AXP DISCNT 110822 5042751479 | 604.54 |

## OTHER DEBITS

| Date | Description | Reference | Debits |
|------|-------------|-----------|-------:|
| 8-1 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 215,565.00 |
| 8-2 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 19,938.21 |
| 8-3 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 23,911.79 |
| 8-4 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 86,845.33 |
| 8-5 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 75,376.30 |
| 8-8 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 173,648.70 |
| 8-9 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 103,638.55 |
| 8-10 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 24,242.62 |
| 8-11 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 79,904.46 |
| 8-12 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 118,511.70 |
| 8-15 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 123,522.59 |
| 8-16 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 32,597.63 |

Exhibit 1
Page 147

# CITY NATIONAL BANK
The way up.

RITZ INTERACTIVE, INC                    Page 13
August 31, 2011                          Account #:        0041

## OTHER DEBITS (Continued)

| Date | Description | Reference | Debits |
|------|-------------|-----------|--------|
| 8-17 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 25,626.69 |
| 8-18 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 68,895.84 |
| 8-19 | Automatic TRANSFER TO ZBA TRANSFER 0402141786 | | 64,767.19 |
| 8-22 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 122,796.09 |
| 8-23 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 33,227.60 |
| 8-24 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 52,532.20 |
| 8-25 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 75,884.34 |
| 8-26 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 30,342.42 |
| 8-29 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 56,663.04 |
| 8-29 | Deposit Return Item EUGENE LEE FORD | | 225.94 |
| 8-30 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 43,026.02 |
| 8-31 | Automatic TRANSFER TO ZBA TRANSFER 0402168099 | | 32,110.04 |

## DAILY BALANCES

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|------|--------|
| 7-29 | .00 | 8-8 | .00 | 8-16 | .00 | 8-24 | .00 |
| 8-1 | .00 | 8-9 | .00 | 8-17 | .00 | 8-25 | 4.58 |
| 8-2 | .00 | 8-10 | .00 | 8-18 | .00 | 8-26 | 916.66 |
| 8-3 | .00 | 8-11 | .00 | 8-19 | .00 | 8-29 | 3,846.24 |
| 8-4 | .00 | 8-12 | .00 | 8-22 | .00 | 8-30 | 713.49 |
| 8-5 | .00 | 8-15 | .00 | 8-23 | 543.28 | 8-31 | 2,218.83 |

---

ADVICE FOR UNPAID DEPOSITED ITEMS                              Page 1 of 1
TT2908116-133        FOR ACCOUNT NO.        0041-0                08/29/2011

THE FOLLOWING ITEMS HAVE BEEN RETURNED.

WE ARE CHARGING YOUR ACCOUNT FOR ITEMS            # ITEMS:        1
RETURNED UNPAID AS LISTED BELOW.                 AMOUNT:    $225.94
FEES MAY BE ASSESSED SEPARATELY
AND WILL BE REFLECTED ON YOUR STATEMENT.         TOTAL:    $225.94

Reason: ACCOUNT CLOSED                    Drawn By: EUGENE LEE FORD
Comments: M                               Drawn On: 16-66

RITZ INTERACTIVE, INC                    CITY NATIONAL BANK
DBA RITZCAMERA.COM                       1801 West Olympic Blvd.
DBA BOATERSWORLD.COM                     Los Angeles CA    90006
2010 MAIN ST SUITE 550
IRVINE CA 92614

Thank you for banking with Irvine Office

Exhibit 1
Page 148

**IMPORTANT NOTICE**

Please examine your statement at once. You are in the best position to find errors or unauthorized transactions and you must tell us at once. If nothing is reported to us promptly this statement will be considered correct and any liability we may have to you may be limited.

**In case of errors or questions about your electronic funds transfers:** Call or write us at the telephone number or address shown on the front of this statement if you think your statement or receipt is wrong or you need more information about a transfer listed on the statement or receipt.

**For Consumer accounts:** We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. (1) Tell us your name and account number. (2) Tell us the dollar amount of the suspected error. (3) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information. We will investigate your complaint and will correct any error promptly. If we take more that 10 business days (20 business days for new accounts), we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**For Business and other non- Consumer accounts:** We must hear from you at once if there is an error on your account or you think a transaction is unauthorized. We will investigate promptly. Failure to contact us may prevent us from blocking further unauthorized transactions or recovering money for you. If we made an error we will correct your account at the conclusion of our investigation.

**Direct Deposits:** If you have arranged to have direct deposits (e.g. Social Security) made to your consumer account at least once every 60 days from the same person or company, you can call us at the telephone number on the front of this statement to find out whether the deposit has been made.

You may obtain a form to help you **balance** your account at www.cnb.com/reconcile or call us at the telephone number shown on the front of this statement to have a form mailed to you.

All items credited are subject to final payment. See your *Account Agreement and Disclosures* or *Treasury Management Disclosure and Agreement* and *Fee Schedules* for other terms and conditions applicable to your account.

City National Bank, Member FDIC                                      Equal Housing Lender 
ID 23001E (Rev 01/2011)

Exhibit 1
Page 149

**RITZ INTERACTIVE**

| Date | Bank ID | ID Type | Acct Num | Acct Type |
|---|---|---|---|---|
| 8/20/2011 thru 8/31/2011 | 122016066 | ABA | 697 | Deposit |

| Balance Type | Balance Amount |
|---|---|
| Today's Starting Balance | $        - |
| Current Balance | $        - |
| Net Activity Today | $        - |
| Interest accrued cycle to date | $        - |

| Serial Number | Origination Date | Posted Date | Amount | Name | Description | Running Balance |
|---|---|---|---|---|---|---|
| | | 8/31/2011 | $ (1,429.77) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | $        - |
| | | 8/31/2011 | $ 1,429.77 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#345450V3OG9O 8L | $ 1,429.77 |
| | | 8/30/2011 | $ (4,906.58) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/30/2011 | $ 3,498.95 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#L7AGK9S5ABAAI VU | $ 4,906.58 |
| | | 8/30/2011 | $ 1,407.63 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#MNXY9A68IGZF2 AA | $ 1,407.63 |
| | | 8/29/2011 | $ (23,636.13) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/29/2011 | $ 21,019.86 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#NXZXPEU823C8Q MP | $ 23,636.13 |
| | | 8/29/2011 | $ 2,616.27 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#U9E0ZT1ZWNULX MK | $ 2,616.27 |
| | | 8/26/2011 | $ (3,415.78) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/26/2011 | $ 3,415.78 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#TV47808H61G7M S1 | $ 3,415.78 |
| | | 8/25/2011 | $ (8,636.54) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/25/2011 | $ 8,636.54 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#WIXK7H09ZDJ3V AX | $ 8,636.54 |
| | | 8/24/2011 | $ (924.98) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/24/2011 | $ 924.98 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#V8Z6MOY3BGPZG BB | $ 924.98 |
| | | 8/23/2011 | $ (4,318.64) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/23/2011 | $ 2,193.46 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#DRXC9K4MQ5BFJ CD | $ 4,318.64 |
| | | 8/23/2011 | $ 2,102.91 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#MQDZKQF3RN3K3 I3 | $ 2,125.18 |
| | | 8/23/2011 | $ 22.27 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#M30PLVNXCE4XH 8F | $ 22.27 |
| | | 8/22/2011 | $ (28,004.77) | | AUTOMATIC TRANSFER TO ZBA TRANSFER  0402168099 | |
| | | 8/22/2011 | $ 9,742.23 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#UTH1A9B85Y69R H1 | $ 28,004.77 |
| | | 8/22/2011 | $ 6,499.20 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#GK5J64GT0F62G FG | $ 18,262.54 |
| | | 8/22/2011 | $ 6,206.24 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#O6G5K4VFP6E9X BB | $ 11,763.34 |
| | | 8/22/2011 | $ 5,421.51 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#XKJT5DT8R5AN1 1R | $ 5,557.10 |
| | | 8/22/2011 | $ 135.59 | | PREAUTHORIZED CREDIT AMAZON.COM RETAIL DIS PAYMENTS.AMAZON.CO M ID#BWPT39QKA1863 T4 | $ 135.59 |

Exhibit 1
Page 150

RITZ INTERACTIVE

| Date | Bank ID | ID Type | Acct Num | Acct Type |
|------|---------|---------|----------|-----------|
| 8/20/2011 THRU 8/31/2011 | 122016066 | ABA | 0068 | CHECKING |

| Balance Type | Balance Amount |
|--------------|----------------|
| Today's Starting Balance | $ - |
| Current Balance | $ - |
| Net Activity Today | $ - |
| Interest accrued cycle to date | $ - |

| Serial Number | Origination Date | Posted Date | Amount | Name | Description | Running Balance |
|---------------|------------------|-------------|--------|------|-------------|-----------------|
| | | 8/30/2011 | $ 6,325.00 | | INCOMING WIRE-DOM | $ 6,325.00 |
| | | 8/24/2011 | $ (6,260.00) | | TRANSFER DEBIT TRANSFER TO DEPOSIT ACCOUNT 0402168099 | |

Exhibit 1
Page 151

# EXHIBIT G

Exhibit 1
Page 152

**RITZ INTERACTIVE**

**INCOME STATEMENT (Accrual Basis)**

**For the period from 8/20/2011 (day after filing) through 8/31/2011**

| | Aug 20 - 31, 2011 |
|---|---|
| **Ordinary Income/Expense** | |
| **Income** | |
| 4000 · Sales | $ 530,189 |
| **Total Income** | 530,189 |
| **Cost of Goods Sold** | |
| 5000 · Cost of Goods Sold | 479,907 |
| **Total COGS** | 479,907 |
| **Gross Profit** | 50,282 |
| **Expense** | |
| 6080 · Marketing Program | 28,506 |
| 6130 · Bank Charges | 300 |
| 6145 · Call Center Operations | 11,400 |
| 6150 · Consultants/Contractors | 152 |
| 6170 · Credit Card Processing | 17,436 |
| 6180 · Charge Back | (264) |
| 6200 · Depreciation Expense | 1,503 |
| 6250 · e Mail | 662 |
| 6280 · Employee Expense | 99,373 |
| 6340 · Equipment & Other Rental | 108 |
| 6380 · Insurance | 2,876 |
| 6600 · Professional Fees | 93 |
| 6630 · Rent | 13,564 |
| 6680 · Supplies | 294 |
| 6700 · Taxes (property & franchise) | 1,200 |
| 6750 · Telephone | 2,385 |
| 6780 · Travel & Ent | 2,080 |
| 6900 · Web Site Management | 11,880 |
| **Total Expense** | 193,548 |
| **Net Ordinary Income** | (143,266) |
| **Net Income** | $ (143,266) |

Exhibit 1
Page 153

**RITZ INTERACTIVE**
**BALANCE SHEET (Accrual Basis)**
**As of August 31, 2011**

| | Aug 31, 2011 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| 1009 · CNB Checking 402168099 | $ 632,555 |
| 1013 · CNB Incoming Wire 402 150068 | 6,325 |
| 1022 · CNB New Deposit-402150041 | 2,219 |
| **Total Checking/Savings** | 641,099 |
| **Accounts Receivable** | |
| 1200 · Accounts Receivable | 18,926 |
| **Total Accounts Receivable** | 18,926 |
| **Other Current Assets** | |
| 1120 · Inventory Asset | 169,000 |
| 1205 · Other Receivable | 35,654 |
| 1212 · Credit Card Clearing Accts | 64,283 |
| 1310 · Deposits | 101,072 |
| 1313 · Manual  Payroll Check | 16,604 |
| 1320 · Prepaid Expenses | 355,407 |
| 1325 · Short-Term Deferred Tax Asset | 322,202 |
| **Total Other Current Assets** | 1,064,222 |
| **Total Current Assets** | 1,724,246 |
| **Fixed Assets** | |
| 1500 · Fixed Asset | 37,423 |
| **Total Fixed Assets** | 37,423 |
| **Other Assets** | |
| 1600 · Intangibles | 671,000 |
| 1620 · Long-Term Deferred Tax Asset | 3,186,163 |
| **Total Other Assets** | 3,857,163 |
| **TOTAL ASSETS** | $ 5,618,832 |

Exhibit 1
Page 154

**RITZ INTERACTIVE**
**BALANCE SHEET (Accrual Basis)**
**As of August 31, 2011**

|  | Aug 31, 2011 |
|---|---:|
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| 2000 · Accts Payable- Pre Petition | $  5,045,134 |
| 2001 · Accts Payable- Post Petition | 167,566 |
| 2020 · Accrued Accts Pay- Pre Petition | 932,078 |
| 2021 · Accrued Acct Pay-Post Petition | 64,812 |
| **Total Accounts Payable** | 6,209,590 |
| **Other Current Liabilities** | |
| 2015 · Unearned Revenue | 213,000 |
| 2030 · Sales Taxes Payable (Mzrt) | 25,148 |
| 2032 · Deferred Rent | 91,734 |
| 2033 · Accrued Payroll | 112,595 |
| 2035 · Payroll Taxes Payable | 13,715 |
| 2045 · Gift Certificate Liability | 295,753 |
| 2050 · Prepaid Order Liability (Mzrt) | (41,279) |
| 2055 · Electronic Checks Refunds Due | 16,639 |
| 2061 · Returns Reserve | 75,000 |
| 2062 · Charge Back Reserve | 75,000 |
| 2075 · Other Short Term Liability | 2,646,517 |
| **Total Other Current Liabilities** | 3,523,821 |
| **Total Current Liabilities** | 9,733,411 |
| **Long Term Liabilities** | |
| 2510 · Long-Term Note Payable | 5,283,142 |
| **Total Long Term Liabilities** | 5,283,142 |
| **Total Liabilities** | 15,016,553 |
| **Equity** | |
| 3100 · Common Stock | 28,431 |
| 3200 · Additional Paid In Capital | 4,390,139 |
| 3300 · Treasury Stock | (147,529) |
| 3500 · Retained Earnings | (11,577,294) |
| Net Income | (2,091,467) |
| **Total Equity** | (9,397,720) |
| **TOTAL LIABILITIES & EQUITY** | $  5,618,832 |

Exhibit 1
Page 155

**Miscellaneous:**

8:11-bk-21690-ES Ritz Interactive Inc

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 8 (Santa Ana) |
| Assets: y | Judge: ES | Case Flag: PlnDue, DsclsDue |

## U.S. Bankruptcy Court

## Central District Of California

Notice of Electronic Filing

The following transaction was received from Lauren N Gans entered on 9/26/2011 at 1:06 PM PDT and filed on 9/26/2011

**Case Name:**       Ritz Interactive Inc
**Case Number:**    8:11-bk-21690-ES
**Document Number:** 61

**Docket Text:**
Monthly Operating Report. Operating Report Number: 1. For the Month Ending August 31, 2011 Filed by Debtor Ritz Interactive Inc. (Gans, Lauren)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** C:\fakepath\MOR (Aug)-73248.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=9/26/2011] [FileNumber=49514568-0] [21e8712308b7b8a295824af8fef0cf4af122397d617e0dd38eb510abc9eded6d4e 99937eca2d773a44b141be3ba0459ca141395f340025f64f0348f8b251c240]]

**8:11-bk-21690-ES Notice will be electronically mailed to:**

Frank Cadigan on behalf of U.S. Trustee United States Trustee (SA)
frank.cadigan@usdoj.gov

Ana Damonte on behalf of Creditor SRI Nine Main Plaza LLC
ana.damonte@pillsburylaw.com

Lauren N Gans on behalf of Debtor Ritz Interactive Inc
lgans@pwkllp.com

Scott F Gautier on behalf of Debtor Ritz Interactive Inc
sgautier@pwkllp.com

Leib M Lerner on behalf of Interested Party Courtesy NEF
leib.lerner@alston.com

Daniel H Reiss on behalf of Creditor Customer Focus, LLC
dhr@lnbyb.com

Adam M Starr on behalf of Creditor Ritz Camera & Image, LLC
starra@gtlaw.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

**8:11-bk-21690-ES Notice will not be electronically mailed to:**

Andre Brysha
120 Via Trieste
Newport Beach, CA 92663

TW Telecom
c/o Linda Boyle
10475 Park meadows Drive #400
Littleton, CO 80124

Exhibit 1
Page 157

**Exhibit E**
Liquidation Analysis

*Plan Proponent's Estimated Liquidation Value of Assets*

**Assets**

| | | |
|---|---|---|
| a. | Cash on hand | $ 750,000 |
| b. | Accounts receivable | $ 50,000 |
| c. | Inventory | $ 0 |
| d. | Office furniture & equipment | $ 40,000 |
| e. | Machinery & equipment | $ 0 |
| f. | Automobiles | $ 0 |
| g. | Building & Land | $ 0 |
| h. | Customer list | $ 0 |
| i. | Investment property  (such as stocks, bonds or other financial assets) | $ 0 |
| j. | Lawsuits or other claims against third-parties | $ 0 |
| k. | Other intangibles (such as avoiding powers actions) | **$ 1,000,000** |

| | |
|---|---|
| **Total Assets at Liquidation Value** | **$1,840,000** |
| **Less:** | |
| Secured creditors' recoveries | **$ 3,500,000** |
| **Less:** | |
| Chapter 7 trustee fees and expenses | $ 125,000 |
| **Less:** | |
| Chapter 11 administrative expenses | $ 200,000 |
| **Less:** | |
| Priority claims, excluding administrative expense claims | $ 500,000 |
| (1) Balance for unsecured claims | $ 0 |
| (2) Total dollar amount of unsecured claims | $1,500,000 |
| ***Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:*** | $0 |
| ***Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:*** | ____20% |

38

Exhibit 1
Page 158

**Exhibit F**
Cash on hand on the effective date of the Plan

**Cash on hand on effective date of the Plan**:                          $ 900,000

*Less* в
    Amount of  administrative expenses payable on effective date of          -      700,000
    the Plan

    Amount of statutory costs and charges                                   **-       13,000**

    Amount of cure payments for executory contracts                         -            0

    Other Plan Payments due on effective date of the Plan                   -_____0

        Balance after paying these amounts...............                 $___187,000

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

| | | |
|---|---|---|
| $  650,000 | | Cash in Debtor's bank account |
| +  250,000 | | Additional cash Debtor will accumulate from net earnings between now and effective date of the Plan according to Debtor's cash flow projections |
| +      0 | | Borrowing |
| +      0 | | Capital Contributions |
| +      0 | | Other |
| $  900,000 | | Total |

1

Exhibit 1
Page 159

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit G**
Projections of Cash Flow and Earnings for Post-Confirmation Period

2

Exhibit 1
Page 160

RITZ INTERACTIVE
P&L & Cashflow by Mth 2012-2013

| | 1/31/2012 | 2/29/2012 | 3/31/2012 | 4/30/2012 | 5/31/2012 | 6/30/2012 | 7/31/2012 | 8/31/2012 | 9/30/2012 | 10/31/2012 | 11/30/2012 | 12/31/2012 | 1/31/2013 | 2/28/2013 | 3/31/2013 | 4/30/2013 | 5/31/2013 | 6/30/2013 | 7/31/2013 | 8/31/2013 | 9/30/2013 | 10/31/2013 | 11/30/2013 | 12/31/2013 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Income | | | | | | | | | | | | | | | | | | | | | | | | |
| Total COGS | | | | | | | | | | | | | | | | | | | | | | | | |
| Gross Profit | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6060 - Marketing Program | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6140 - Call Center Operations | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6150 - Credit Card Processing | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6240 - Payment to Partners (sites/branches) | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6280 - Employee Expense | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6380 - Insurance | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6410 - Interest Expense | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6050 - Postage and Delivery | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6080 - Professional Fees | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6630 - Rent | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6680 - Repairs & Maintenance | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6140 - Supplies & Temp Help | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6700 - Taxes (property & franchise) | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6790 - Telephone | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6740 - Travel & Ent. | | | | | | | | | | | | | | | | | | | | | | | | |
| Total 6900 - Web Site Management | | | | | | | | | | | | | | | | | | | | | | | | |
| Total Expense | | | | | | | | | | | | | | | | | | | | | | | | |
| Net Profit | | | | | | | | | | | | | | | | | | | | | | | | |
| Cash Flow Adjustments: | | | | | | | | | | | | | | | | | | | | | | | | |
| Timing of Payments on COGS | | | | | | | | | | | | | | | | | | | | | | | | |
| 7 day terms on COGS | | | | | | | | | | | | | | | | | | | | | | | | |
| 15 day terms on below the line expenses | | | | | | | | | | | | | | | | | | | | | | | | |
| Adjusted Weekly Cash | | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | | | | | | | | | | | | | | | | | | | | | | | | |
| Ending Cash Balance | | | | | | | | | | | | | | | | | | | | | | | | |

Exhibit 1
Page 161

# EXHIBIT 2

<table>
<tr><td>

Scott F. Gautier (State Bar No. 211742)

Peitzman, Weg & Kempinsky LLP

2029 Century Park East, Suite 3100

Los Angeles, CA 90067

Telephone: (310) 552-3100

Fax: (310) 552-3101

☒ Attorney for Plan Proponent <u>Ritz Interactive, Inc.</u>
<u>Debtor and Debtor in Possession</u>

</td><td>

FOR COURT USE ONLY

</td></tr>
</table>

| **UNITED STATES BANKRUPTCY COURT** <br><br> **CENTRAL DISTRICT OF CALIFORNIA** | CHAPTER 11 <br><br> CASE No.: 8:11-bk-21690-ES |
|---|---|
| In re: <br> RITZ INTERACTIVE, INC., a Delaware corporation, <br><br>         Debtor and Debtor-in-Possession. | DATE:  December 6, 2011 <br> TIME:  10:30 a.m. <br> CTRM:  Courtroom 5A <br>     411 West Fourth Street <br>     Santa Ana, California 92701 |

**CLASS 2 BALLOT FOR ACCEPTING OR REJECTING
PLAN OF REORGANIZATION**

    Ritz Interactive, Inc. (the "Debtor") filed a plan of reorganization dated September 20, 2011 (the "Plan") for the Debtor in this case.  The Court has approved a disclosure statement with respect to the Plan (the "Disclosure Statement").  The Disclosure Statement provides information to assist you in deciding how to vote your ballot.  If you do not have a Disclosure Statement, you may obtain a copy from: Peitzman, Weg & Kempinsky LLP, c/o Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles CA 90067.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

    **You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claim has been placed in Class 2 under the Plan.  If you hold claim(s) or equity interest(s) in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.**

    **Votes in favor of acceptance of the Plan from Class 2 must be delivered to Peitzman, Weg & Kempinsky LLP, c/o Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles CA 90067, prior to 5:00 PM (PST), <u>November 25, 2011</u> (the "<u>Voting Deadline</u>").  If your ballot is not received by the Voting Deadline, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan, unless the Bankruptcy Court otherwise determines that a non-vote will be treated as a rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

Exhibit 2
Page 162

## ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned is the holder of a Class 2 claim against the Debtor in the principal amount of
$ _____ (For purposes of this Ballot, it is not necessary and you should not adjust the principal amount for any accrued or unmatured interest).

**The undersigned** *[check one box only]*:

☐    **ACCEPTS THE PLAN**        ☐        **REJECTS THE PLAN**

Dated: _____

Name *[Print or type]*: _____

Signature: _____

Title *[if corporation or partnership]*: _____

Address: _____

_____

_____

Telephone No.: _____

Fax No.: _____

### RETURN THIS BALLOT TO:

Peitzman, Weg & Kempinsky LLP
c/o Lauren Gans
2029 Century Park East
Suite 3100
Los Angeles, CA 90067

Exhibit 2
Page 163

| | |
|---|---|
| Scott F. Gautier (State Bar No. 211742)<br>Peitzman, Weg & Kempinsky LLP<br>2029 Century Park East, Suite 3100<br>Los Angeles, CA 90067<br>Telephone: (310) 552-3100<br>Fax: (310) 552-3101<br><br>☒ Attorney for Plan Proponent <u>Ritz Interactive, Inc.</u><br><u>Debtor and Debtor in Possession</u> | FOR COURT USE ONLY |
| **UNITED STATES BANKRUPTCY COURT**<br><br>**CENTRAL DISTRICT OF CALIFORNIA** | CHAPTER 11<br><br>CASE No.: 8:11-bk-21690-ES |
| In re:<br>RITZ INTERACTIVE, INC., a Delaware corporation,<br><br>           Debtor and Debtor-in-Possession. | DATE:  December 6, 2011<br>TIME:  10:30 a.m.<br>CTRM:  Courtroom 5A<br>     411 West Fourth Street<br>     Santa Ana, California 92701 |

## CLASS 4 BALLOT FOR ACCEPTING OR REJECTING
## PLAN OF REORGANIZATION

Ritz Interactive, Inc. (the "Debtor") filed a plan of reorganization dated September 20, 2011 (the "Plan") for the Debtor in this case.  The Court has approved a disclosure statement with respect to the Plan (the "Disclosure Statement").  The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from: Peitzman, Weg & Kempinsky LLP, c/o Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles CA 90067.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

**You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claim has been placed in Class 4 under the Plan.  If you hold claim(s) or equity interest(s) in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.**

**Votes in favor of acceptance of the Plan from Class 4 must be delivered to Peitzman, Weg & Kempinsky LLP, c/o Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles CA 90067, prior to 5:00 PM (PST), <u>November 25, 2011</u> (the "<u>Voting Deadline</u>").  If your ballot is not received by the Voting Deadline, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan, unless the Bankruptcy Court otherwise determines that a non-vote will be treated as a rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

Exhibit 2
Page 164

## ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned is the holder of a Class 4 claim against the Debtor in the principal amount of $ _____* (For purposes of this Ballot, it is not necessary and you should not adjust the principal amount for any accrued or unmatured interest).

*If your claim exceeds $15,000 in principal amount, please contact the Debtor's counsel, Lauren Gans at (310) 552-3100, to request a Class 5 ballot.

**The undersigned** *[check one box only]*:

☐    **ACCEPTS THE PLAN**        ☐        **REJECTS THE PLAN**

Dated: _____

Name *[Print or type]*: _____

Signature: _____

Title *[if corporation or partnership]*: _____

Address: _____

_____

_____

Telephone No.: _____

Fax No.: _____

## RETURN THIS BALLOT TO:

Peitzman, Weg & Kempinsky LLP
c/o Lauren Gans
2029 Century Park East
Suite 3100
Los Angeles, CA 90067

Exhibit 2
Page 165

| | |
|---|---|
| Scott F. Gautier (State Bar No. 211742)<br>Peitzman, Weg & Kempinsky LLP<br>2029 Century Park East, Suite 3100<br>Los Angeles, CA 90067<br>Telephone: (310) 552-3100<br>Fax: (310) 552-3101<br><br>☒ Attorney for Plan Proponent <u>Ritz Interactive, Inc.</u><br><u>Debtor and Debtor in Possession</u> | FOR COURT USE ONLY |
| **UNITED STATES BANKRUPTCY COURT**<br><br>**CENTRAL DISTRICT OF CALIFORNIA** | CHAPTER 11<br><br>CASE No.: 8:11-bk-21690-ES |
| In re:<br>RITZ INTERACTIVE, INC., a Delaware corporation,<br><br>           Debtor and Debtor-in-Possession. | DATE:  December 6, 2011<br>TIME:  10:30 a.m.<br>CTRM:  Courtroom 5A<br>     411 West Fourth Street<br>     Santa Ana, California 92701 |

## CLASS 5 BALLOT FOR ACCEPTING OR REJECTING
## PLAN OF REORGANIZATION

    Ritz Interactive, Inc. (the "Debtor") filed a plan of reorganization dated September 20, 2011 (the "Plan") for the Debtor in this case.  The Court has approved a disclosure statement with respect to the Plan (the "Disclosure Statement").  The Disclosure Statement provides information to assist you in deciding how to vote your ballot. If you do not have a Disclosure Statement, you may obtain a copy from:  Peitzman, Weg & Kempinsky LLP, c/o Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles CA 90067.  Court approval of the Disclosure Statement does not indicate approval of the Plan by the Court.

    **You should review the Disclosure Statement and the Plan before you vote.  You may wish to seek legal advice concerning the Plan and your classification and treatment under the Plan.  Your claim has been placed in Class 5 under the Plan.  If you hold claim(s) or equity interest(s) in more than one Class, you will receive a ballot for each Class in which you are entitled to vote.**

    **Votes in favor of acceptance of the Plan from Class 5 must be delivered to Peitzman, Weg & Kempinsky LLP, c/o Lauren Gans, 2029 Century Park East, Suite 3100, Los Angeles CA 90067, prior to 5:00 PM (PST), <u>November 25, 2011</u> (the "<u>Voting Deadline</u>").  If your ballot is not received by the Voting Deadline, and such deadline is not extended, your vote will not count as either an acceptance or rejection of the Plan, unless the Bankruptcy Court otherwise determines that a non-vote will be treated as a rejection of the Plan.**

**If the Plan is confirmed by the Bankruptcy Court, it will be binding on you whether or not you vote.**

Exhibit 2
Page 166

## ACCEPTANCE OR REJECTION OF THE PLAN

The undersigned is the holder of a Class 5 claim against the Debtor in the principal amount of
$ _____.


## VOLUNTARY ELECTION TO BE TREATED IN CLASS 4 – CONVENIENCE CLASS

By checking this box ☐ and voting to ACCEPT the Plan (below) (**NOTE that this election shall be VOID unless the undersigned has also voted to ACCEPT the Plan**), the undersigned hereby elects to waive its Class 5 claim, to be treated in the Class 4 "Convenience Class" and to receive payment of 100% of the allowed amount of its claim, up to $15,000. **To the extent that the undersigned holder's allowed Class 5 claim exceeds $15,000, the undersigned holder acknowledges and agrees, by checking the box above, that upon confirmation of the Plan it will receive no more than $15,000 in full satisfaction of its allowed claim.**

**The undersigned** *[check one box only]*:

☐   **ACCEPTS THE PLAN**        ☐   **REJECTS THE PLAN**


Dated: _____


Name *[Print or type]*: _____

Signature: _____

Title *[if corporation or partnership]*: _____

Address: _____

_____

_____

Telephone No.: _____

Fax No.: _____


### RETURN THIS BALLOT TO:

Peitzman, Weg & Kempinsky LLP
c/o Lauren Gans
2029 Century Park East
Suite 3100
Los Angeles, CA 90067

Exhibit 2
Page 167

# EXHIBIT 3

1  Scott F. Gautier (State Bar No. 211742)
   *sgautier@pwkllp.com*
2  Lauren N. Gans (State Bar No. 247542)
   *lgans@pwkllp.com*
3  PEITZMAN, WEG & KEMPINSKY LLP
   2029 Century Park East, Suite 3100
4  Los Angeles, CA  90067
   Telephone: (310) 552-3100
5  Facsimile: (310) 552-3101

6  Attorneys for Debtor and Debtor in Possession

7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                   **SANTA ANA DIVISION**

11

12  In re:                                      Case No.:  8:11-bk-21690-ES

13  RITZ INTERACTIVE, INC.,                     Chapter 11

14          Debtor and Debtor-in-Possession.
                                                **NOTICE OF HEARING ON PLAN
15                                              CONFIRMATION**

16                                              **Plan Confirmation Hearing**
                                                Date: December 6, 2011
17                                              Time: 10:30 a.m.
                                                Place: Courtroom 5A
18                                                     411 West Fourth Street
                                                       Santa Ana, CA 92701
19

20      **TO THE HONORABLE ERITHE A, SMITH, UNITED STATES BANKRUPTCY**

21      **JUDGE, THE UNITED STATES TRUSTEE AND ALL CREDITORS AND PARTIES**

22      **IN INTEREST:**

23          **PLEASE TAKE NOTICE** that on December 6, 2011 at 10:30 a.m. (the "Confirmation

24  Hearing"), or as soon thereafter as the matter can be heard, before the Honorable Erithe A. Smith,

25  United States Bankruptcy Judge, in Courtroom 5A, located at 411 West Fourth Street, Santa Ana,

26  California, the Bankruptcy Court will consider confirmation of the Debtor's Plan of Reorganization,

27  Dated as of September 20, 2011 (the "Plan").[1]

28  _____

    1 Capitalized terms used herein, and not defined, shall have the meaning ascribed to them in the Plan.

                                            1

Exhibit 3
Page 171

1  **PLEASE TAKE FURTHER NOTICE** that if you have received only this Notice and not the

2  Plan and the Disclosure Statement summarizing the Plan, the Debtor's records reflect that you are not a

3  creditor of the Debtor whose claims are affected by the Plan, and are not entitled to vote on the Plan.

4  Upon written request to the Debtor's bankruptcy counsel, Lauren Gans, Esq., Peitzman, Weg &

5  Kempinsky LLP, 2029 Century Park East, Ste. 3100, Los Angeles, CA 90067, facsimile 310-552-3101,

6  the Disclosure Statement and Plan (and a ballot, if appropriate) will be transmitted to you.

7  **PLEASE TAKE FURTHER NOTICE** that, if you are a creditor of the Debtor, your rights

8  may be "impaired" under the Plan.  If you have received a voting package, please review and consider

9  carefully and return your ballot accepting or rejecting the Plan promptly and timely.

10  **PLEASE TAKE FURTHER NOTICE** that if you are the holder of a Claim that has been

11  objected to or was scheduled by the Debtor as contingent, unliquidated, or disputed, you are not

12  entitled to vote on the Plan unless you file and serve a motion for an order temporarily allowing the

13  Claim for voting purposes under Federal Rule of Bankruptcy Procedure 3018(a).

14  **PLEASE TAKE FURTHER NOTICE** that the <u>confirmation of the Plan will enjoin all</u>

15  <u>holders of Claims and Equity Interests from asserting against the Reorganized Debtor or any of its</u>

16  <u>assets or properties, any other or further Claim or Equity Interest based upon any act or omission,</u>

17  <u>transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or</u>

18  <u>not such holder has filed a proof of Claim or proof of Equity Interest.</u>

19  **PLEASE TAKE FURTHER NOTICE** that any objections to the confirmation of the Plan,

20  must be filed with the Bankruptcy Court and served  upon the following parties no later than 5:00 p.m.

21  (PST), on November 25, 2011: (a) counsel for the Debtor: Lauren Gans, Peitzman, Weg & Kempinsky

22  LLP, 2029 Century Park East, Suite 3100, Los Angeles, CA 90067, fax: (310) 552-3101; (b) counsel

23  for RCI: Adam M. Starr, Greenberg Traurig, LLP, 2450 Colorado Avenue, Suite 400E, Santa Monica,

24  CA 90404; and (c) the Office of the United States Trustee: Frank Cadigan, Office of the U.S. Trustee,

25  411 West Fourth Street, Suite 9041, Santa Ana, CA  92701-8000, fax: (714) 338-3422.

26  **PLEASE TAKE FURTHER NOTICE** that the last day for the receipt of ballots accepting or

27  rejecting the Plan is November 25, 2011, at 5:00 p.m. (PST) (the "Voting Deadline").  For a ballot to

28  be counted it must be actually received prior to the Voting Deadline by the Debtor's counsel at the

2

Exhibit 3
Page 172

following:

            If by fax:     (310) 552-3101

            If by e-mail:  lgans@pwkllp.com

            If by mail:   Peitzman, Weg & Kempinsky LLP

                           c/o Lauren Gans

                           2029 Century Park East

                           Suite 3100

                           Los Angeles, CA 90067

Dated:  September 27, 2011             PEITZMAN, WEG & KEMPINSKY LLP

                           By:   /s/ Scott F. Gautier
                                 Scott F. Gautier
                                 Lauren N. Gans

                           Attorneys for Debtor and Debtor in Possession

3

Exhibit 3
Page 173

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**PEITZMAN, WEG & KEMPINSKY LLP**
**2029 Century Park East, Suite 3100**
**Los Angeles, CA 90067**

A true and correct copy of the foregoing document described **Motion Of The Debtor For Order Approving Disclosure Statement And Solicitation, Voting, And Confirmation Procedures; Memoranum Of Points And Authorities; Declaration Of Fred H. Lerner** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 27, 2011,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:


- Frank Cadigan      frank.cadigan@usdoj.gov
- Ana Damonte      ana.damonte@pillsburylaw.com
- Lauren N Gans      lgans@pwkllp.com
- Scott F Gautier      sgautier@pwkllp.com
- Leib M Lerner      leib.lerner@alston.com
- Daniel H Reiss      dhr@lnbyb.com
- Adam M Starr      starra@gtlaw.com
- United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov


☐  Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **September 27, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Served by U.S. Mail**
Honorable Erithe Smith
United States Bankruptcy Court
411 West Fourth Street, Ste. 5041
Santa Ana, CA 92701

**Served by U.S. Mail**
Office of the United States Trustee
Frank Cadigan
411 West Fourth Street, Ste. 9041
Santa Ana, CA  92701-4593

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                **F 9013-3.1.PROOF.SERVICE**

**Served by U.S. Mail:**
Securities and Exchange Commission
5670 Wilshire Blvd., 11th Floor
Los Angeles, CA  90036

☐ Service information continued on attached page

**III.   SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 27, 2011 | Lauren N. Gans | **/s/** Lauren N. Gans |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*

**F 9013-3.1.PROOF.SERVICE**